Raymond J. Tittmann, No. 191298
Jodi K. Swick No. 228634
Edward Valdespino, No. 272754
**EDISON, McDOWELL & HETHERINGTON LLP**
1 Kaiser Plaza, Suite 340
Oakland, CA 94612
Telephone:   510.628.2145
Facsimile:   510.628.2146
Email:        raymond.tittmann@emhllp.com
              jodi.swick@emhllp.com
              edward.valdespino@emhllp.com


Attorneys for Plaintiff
FIRST MERCURY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA –SAN JOSE DIVISION

| | |
|---|---|
| FIRST MERCURY INSURANCE COMPANY;<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>GREAT DIVIDE INSURANCE COMPANY; and DOES 1 through 50, inclusive<br><br>　　　　Defendants | Case No. 5:16-cv-02114<br><br>**FIRST MERCURY INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF**<br><br>Complaint Filed: April 21, 2016 |

Plaintiff First Mercury Insurance Company ("First Mercury"), represented by the undersigned attorneys, bring this action for declaratory relief and allege as follows:

## I.    INTRODUCTION

1.    By way of this Complaint, First Mercury seeks a declaratory judgment that Great Divide Insurance Company ("Great Divide") should share in the defense and indemnity of the San Francisco 49ers in the underlying lawsuit ("Underlying Lawsuit") brought by Kiran Patel and Amish Patel (the "Underlying Plaintiffs"), because, among other reasons, Great Divide Insurance Company issued primary insurance that provides defense and indemnity for the San Francisco Forty Niners Defendants' (defined below) alleged negligence in the Underlying Action. Thus, Great Divide should share with First Mercury in the defense of the Underlying

Action, owes a duty to settle the Underlying Action and should share with First Mercury in any indemnity in the Underlying Action.

## II.    THE PARTIES

2.    First Mercury is, and at all relevant times was, a corporation incorporated in the State of Delaware with its principal place of business in the State of Michigan. At all times relevant, First Mercury was and is an approved foreign surplus lines insurer in California, and is transacting the business of insurance in the State of California, where First Mercury's insured Elite Services is located and the First Mercury policy to Elite Services was entered and issued.

3.    First Mercury is informed and believes that Defendant Great Divide Insurance Company is, and at all relevant times was, a corporation incorporated in the State of North Dakota with its principal place of business in the State of North Dakota.

4.    First Mercury is informed and believes that DOES 1-50 are insurers who insured the named defendants in the Underlying Action and have an obligation to defend or indemnify the defendants in the Underlying Action.

## III.    JURISDICTION AND VENUE

5.    The Court has personal jurisdiction over all defendants to this action because they are either citizens of the State of California or have purposefully availed themselves of the State of California by committing such acts and omissions within the State of California such that they could reasonably expect to have court actions filed against them within the jurisdiction, sufficient to satisfy 28 U.S.C. § 1331.

6.    The Court has jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs, and under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202 which grant the United States District Courts jurisdiction to declare the "rights and other legal relations of any interested party making such a declaration, whether or not further relief is or could be sought."

7.    Venue is proper for this action pursuant to 28 U.S.C. § 1391 because "a substantial part of the events or omissions giving rise to this claim" for declaratory relief occurred within the

Northern District of California, San Jose Division.

## IV.   FACTUAL BACKGROUND

### A.   The Policies

8.     First Mercury issued a primary commercial general liability policy to Elite Show Services Inc. ("Elite") under policy number SE-CGL-0000047473-01, effective September 21, 2014 to September 21, 2015 (the "First Mercury Policy"). The First Mercury Policy has a limit of $1 million per occurrence and a $2 million general aggregate limit. The First Mercury Policy describes the insured's business as "Security & Patrol Agencies." Liquor Liability is excluded under the First Mercury Policy. A true and correct copy of the First Mercury Policy is attached as Exhibit A.

9.     Great Divide Insurance Company issued a primary commercial general liability policy to, among others, the San Francisco Forty Niners Football Company, the San Francisco Forty Niners Limited, the San Francisco Forty Niners II LLC, the San Francisco Forty Niners Foundation, the Forty Niners Stadium LLC, the Forty Niners Stadium Management Company, LLC, the Forty Niners SC Stadium Company LLC (collectively, the " San Francisco Forty Niners Defendants") under policy number CG-E22-AS-0107, effective March 1, 2014 to March 1, 2015 (the "Great Divide Policy"). The Great Divide Policy includes a Liquor Liability Coverage Part with a $1 million common cause limit and a $1 million aggregate limit.  The Great Divide Policy lists the insureds' business as "Professional Football Team" and, in summary, contains endorsements that insure persons or organizations that the insured agrees to indemnify by contract, any township, municipality, county, state policy, sheriff or other law enforcement department, and any manager or lessor of the insured's premises. A true and correct copy of the Great Divide Policy is attached as Exhibit B.

10.     First Mercury is informed and believes that Elite and the Forty Niners Stadium Management entered into an Agreement For the Performance of Services ("Service Agreement"), whereby Elite would provide security services at the San Francisco Forty Niners football stadium in the manner requested and regulated by the Forty Niners Stadium Management. A true and correct copy if the Service Agreement is attached as Exhibit C.

11.     In relevant part, the Service Agreement required generally that Elite's services be subject to the prior approval and guidance of the Forty-Niner's Stadium Management. Service Agreement ¶¶ 2.D and 7.A. Specifically, the Service Agreement provided that the Forty-Niner's Stadium Management had sole discretion to determine appropriate security staffing at each event. Stadium Agreement, Ex. A, ¶ 1.

12.     The Service Agreement contained the following Indemnification provision in Section 22:

> Contractor [Elite] shall indemnify, defend and hold harmless the Authority [City of Santa Clara and Santa Clara Stadium Authority], Stadium Manager [Forty-Niner's Stadium Management Company LLC] and the Additional Indemnitees, and their respective officers, directors, managers, members, partners, owners and employees ("Indemnified Parties") from and against all losses, costs, suits, actions, claims, damages, amounts paid in settlement, liabilities, costs and expenses, including reasonable attorneys' fees (collectively, "Losses"), resulting to, imposed upon, asserted against or incurred by any of them (including in any action between the parties) in connection with or arising out of (i) any breach by Contractor under this Agreement, (ii) any activity, inactivity, work or thing done or permitted by Contractor or its employees, agents or contractors in or upon the Stadium or Related Areas, including the performance of the Services, or (iii) any injury or damage to any person or to the property of any Person caused by an action or omission of Contractor or its employees, agents or contractors.

13.     In addition, the insurance requirement, found in Section 23 and Exhibit C of the Service Agreement, provides as follows:

> At all times during the term hereof, Contractor shall keep and maintain in full force and effect the following types of insurance coverage and/or bonds:
>
> 1. Commercial general liability insurance, including property damage, against liability for personal injury, bodily injury, death and damage to property occurring in or about the property in the amount of One Million Dollars ($1,000,000) per occurrence and Five Million Dollars ($5,000,000) in the aggregate.
>
> ***
>
> The above stated limits may be achieved by a combination of primary and excess/umbrella coverage. Any deductible or self-insured retention amounts are the sole responsibility of the Contractor. Any deductibles or self-insured retention amounts must be disclosed to Stadium Manager. Contractor agrees to indemnify Stadium Manager for any loss it may incur as a result of the deductible or self-insured retention.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

At Stadium Manager's request from time to time (and in any event not less than 15 (fifteen) days prior to the expiration dates of any expiring policies or bonds furnished by Contractor), Contractor shall furnish to Stadium Manager certified copies or duplicate originals of all policies of insurance and bonds then maintained by Stadium Manager hereunder, or a certificate supplied by each such insurer and surety showing that the insurance and bonds required hereunder are in full force and effect and showing the limits thereof and that all such policies and bonds contain the provisions and endorsements required hereunder.

All insurance policies and bonds required to be maintained by Contractor shall be issued by insurers or sureties (as the case may be) reasonably satisfactory to client, authorized to do business in the state of California and having an AM Best rating and financial size category of A-/VII or better. All policies of the vendor shall be (i) primary and non-contributing with respect to any policies carried by client; (ii) with respect to liability insurance only (except employer's liability), a provision including Stadium Manager, Santa Clara Stadium Authority, Forty Niners SC Stadium Company LLC and Forty Niners Football Company LLC as Additional Insured; (iii) a waiver by the insurer of any right to subrogate against Stadium Manager; (iv) a severability of interest or endorsement; (v) a provision that the insurer will not cancel or change the coverage provided by such without giving the Stadium manager thirty (30) days' prior written notice; and (vi) general liability be an "occurrence form" policy. Any policy of insurance required to be carried by Contractor that names Stadium Manager as Additional Insured shall not be subject to a deductible or self-insured retention, it being the intent of the parties that such insurance shall fully and completely insure such additional insured entities for all loss or expense.

14.     Elite procured the insurance required by Exhibit C of the Service Agreement from First Mercury.  Elite, the San Francisco Forty Niner Defendants, the City of Santa Clara and the Santa Clara Stadium Authority are all being defended in the Underlying Lawsuit (defined below) solely by First Mercury.

**B.     The Underlying Lawsuit**

15.     First Mercury is informed and believes that, on or about October 5, 2014, Amish Patel and Kiran Patel (again, the "Underlying Plaintiffs") attended a football game at the San Francisco Forty Niners football stadium in Santa Clara, California.  While allegedly waiting in line to use the restroom at the football stadium, the Underlying Plaintiffs were injured during a purported physical altercation with Dario Rebollero and Amador Rebollero.

16.     The Underlying Plaintiffs claim that the negligent acts and omissions by Elite, the

San Francisco Forty Niner Defendants, the City of Santa Clara and the Santa Clara Stadium Authority (collectively, the "Underlying Defendants") are responsible for the injuries of the Underlying Plaintiffs.

17.     On September 25, 2015, the Underlying Plaintiff's filed the underlying lawsuit: *Patel et al. v. San Francisco Forty Niners Limited et al.* in the Superior Court for the State of California, County of Santa Clara.  Among other things the Underlying Lawsuit alleges the San Francisco Forty Niner Defendants, the City of Santa Clara, and the Santa Clara Stadium Authority were responsible for and negligent in selecting, hiring, supervising, evaluating, and retaining security personnel for the football stadium on NFL game days. The Underlying Lawsuit alleges further the Underlying Defendants (1) knew patrons often got intoxicated before, during and after games, creating an unreasonable risk of injury; (2) had a duty to prohibit entry of or eject intoxicated patrons; and (3) that visibly intoxicated patrons attacked Plaintiff's resulting in serious and permanent personal injuries.

### C.     Great Divide Must Share Defense and Indemnity Costs for the Underlying Lawsuit

18.     Upon receiving notice of the Underlying Lawsuit, the San Francisco Forty Niner Defendants requested defense and indemnity from Elite's insurer First Mercury for the Underlying Lawsuit for, not only, the San Francisco Forty Niner Defendants but also for the City of Santa Clara and the Santa Clara Stadium Authority.

19.     Under a full reservation of rights, First Mercury accepted the defense for Elite in the Underlying Lawsuit as well as the San Francisco Forty Niner Defendants, the City of Santa Clara and the Santa Clara Stadium Authority.  First Mercury appointed defense counsel for its insured Elite.  In addition, First Mercury appointed different defense counsel for the San Francisco Forty Niner Defendants, the City of Santa Clara, and the Santa Clara Stadium Authority.

20.     Under the terms of the Service Agreement, at best, Elite only agreed to indemnify The City of Santa Clara, Santa Clara Stadium Authority, and San Francisco Forty Niner Defendants *for liability arising from the acts or omissions of Elite*. Similarly, the insurance

coverage afforded by First Mercury only extends as far as the terms of the Service Agreement.

21.     Nonetheless, the Great Divide Policy provides coverage for bodily injury or property damage for which the San Francisco Forty Niner Defendants become legally obligated to pay with a limit of $1,000,000 per occurrence and a $2,000,000 general aggregate limit.  As stated above, the Great Divide Policy also contains endorsements that insure persons or organizations that the insured agrees to indemnify by contract, any township, municipality, county, state policy, sheriff or other law enforcement department, and any manager or lessor of the insured's premises. The Great Divide Policy has a separate Liquor Liability Coverage Form with a $1 million common cause limit and a $1 million aggregate limit. The Liquor Liability Coverage form provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage . . .

22.     Here, the Underlying Complaint contains allegations of negligence and wrongdoing that only apply to the San Francisco Forty Niner Defendants, the City of Santa Clara and the Santa Clara Stadium Authority. The Underlying Complaint alleges that the San Francisco Forty Niner Defendants, City of Santa Clara, and Santa Clara Stadium Authority negligently selected, hired, supervised, evaluated, and retained security personnel. This allegation is not made as to Elite.  This is consistent with the Service Agreement that provides the San Francisco Forty Niner's Stadium Management has sole discretion to determine appropriate security staffing at each event.

23.     The Underlying Lawsuit also alleges injuries resulting from the service of alcohol. Under the terms of the Service Agreement, Elite did not maintain responsibility for serving alcohol or regulating the service of alcohol to patrons. Indeed, the First Mercury Policy specifically excludes liquor liability coverage where the Great Divide Policy provides it.

24.     Finally, the Underlying Lawsuit's second cause of action is alleged only against the City of Santa Clara and the Santa Clara Stadium Authority for creating a dangerous condition on

public property pursuant to California Government Code section 835 *et seq*. Only public entities may be liable under this section. CAL. GOV. CODE § 835. Elite is not a public entity.

25.     Because there is the potential that San Francisco Forty Niner Defendants, the City of Santa Clara and the Santa Clara Stadium Authority may be liable for their *own* negligence, rather than solely due to the negligence of Elite, their insurers—including Great Divide and DOES 1-50—have a parallel and complete duty to defend and indemnify in the Underlying Action.

## FIRST CAUSE OF ACTION

(Declaratory Relief—Defense against Great Divide and DOES 1-50)

26.     First Mercury incorporates each and every allegation of the preceding paragraphs, 1-25, as if set forth herein.

27.     An actual controversy now exists between First Mercury on the one hand and Great Divide and DOES 1-50 on the other hand as to whether these primary insurers owe a duty to defend the Underlying Defendants with respect to the Underlying Lawsuits.

28.     First Mercury seeks a declaration that Great Divide and DOES 1-50 should share with First Mercury in the defense costs with equal shares, or, in the alternative, the Court should order an appropriate allocation for sharing of defense costs in the Underlying Action.

29.     First Mercury also seeks a declaration as to any other terms and conditions in the First Mercury Policy, Great Divide Policy, Service Agreement and other document or doctrine that precludes or limits the insurers' defense obligations as to any of the Underlying Defendants with respect to the Underlying Lawsuit.

30.     First Mercury further seeks declaratory relief, costs, and all other relief permitted by law.

## SECOND CAUSE OF ACTION

(Declaratory Relief—Settlement against Great Divide and DOES 1-50)

31.     First Mercury incorporates each and every allegation of the preceding paragraphs, 1-30, as if set forth herein.

32.     An actual controversy now exists between First Mercury on the one hand and Great

Divide and DOES 1-50 on the other hand as to whether Great Divide or any other insurer owes a duty to participate in settlement discussions related to the Underlying Lawsuit in good faith.

33.     First Mercury seeks a declaration that Great Divide and DOES 1-50 must participate in settlement discussions related to the Underlying Lawsuit in good faith.

34.     First Mercury also seeks a declaration as to any other terms and conditions in the First Mercury Policy, Great Divide Policy, Service Agreement or any other document or doctrine that precludes or limits Great Divide's or DOES 1-50's duty to participate in settlement discussions in good faith with respect to the Underlying Lawsuit.

35.     First Mercury further seeks declaratory relief, costs, and all other relief permitted by law.

## THIRD CAUSE OF ACTION

(Declaratory Relief—Indemnity against Great Divide and DOES 1-50)

36.     First Mercury incorporates each and every allegation of the preceding paragraphs, 1-35, as if set forth herein.

37.     An actual controversy now exists between First Mercury on the one hand and Great Divide and DOES 1-50 on the other hand as to whether Great Divide and DOES 1-50 owe a duty to indemnify the Underlying Defendants with respect to the Underlying Lawsuit.

38.     First Mercury seeks a declaration that Great Divide and DOES 1-50 should share in indemnity with First Mercury beginning with the first dollar of any proposed or final settlement.

39.     First Mercury seeks a declaration that Great Divide and DOES 1-50 should share with First Mercury beginning with the first dollar of the indemnity in equal shares, or, in the alternative, the Court should order an appropriate allocation for sharing of indemnity in the Underlying Lawsuit.

40.     First Mercury also seeks a declaration as to any other terms and conditions in the First Mercury Policy, Great Divide Policy, Service Agreement or any other document or doctrine that precludes or limits contributions to indemnity with respect to the Underlying Lawsuit.

41.     First Mercury further seeks declaratory relief, costs, and all other relief permitted by law.

1

Dated:  April 21, 2016                          EDISON, McDOWELL & HETHERINGTON LLP

2

3

4                                                        By: ____/s/ Jodi K. Swick_____
                                                              Raymond J. Tittmann

5                                                             Jodi K. Swick
                                                              Edward Valdespino

6

7                                                        Attorneys for Plaintiff
                                                        FIRST MERCURY INSURANCE COMPANY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

I certify that the attached document is a true and complete copy of

Policy Number: SE-CGL-0000047473-01_____effective_9/21/2014 TO 9/21/2015_____

_____ Date: October 21, 2015_____

Christopher N. Ballantyne
Vice President Claims
First Mercury Insurance Company

# FIRST MERCURY INSURANCE COMPANY

### (A STOCK COMPANY)
### STATUTORY HOME OFFICE: 200 SOUTH WACKER DRIVE, SUITE 2390, CHICAGO, IL 60606
### ADMINISTRATIVE OFFICE: 26600 TELEGRAPH RD., SOUTHFIELD, MI 48033
## GENERAL LIABILITY POLICY RENEWAL DECLARATIONS

*Serviced by:* CoverX Specialty

**POLICY NUMBER** SE-CGL-0000047473-01

**RENEWAL OF:** SE-CGL-0000017815-02

| NAMED INSURED AND MAILING ADDRESS | BROKER NAME AND ADDRESS |
|---|---|
| Elite Show Services Inc ESS Management Inc (DBA) Elite Training Corporation | El Dorado Insurance Agency |
| 2878 Camino Del Rio South  Suite 260<br>San Diego, CA 92108 | 3673 Westcenter Dr<br>Houston, TX 77042 |

**POLICY PERIOD**     From:  9/21/2014     To:   9/21/2015
             AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

IN RETURN FOR THE PAYMENT OF THE PREMIUM,  AND SUBJECT TO ALL THE TERMS OF THIS POLICY,  WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**LIMITS OF INSURANCE:** *Defense Costs are outside the limits of Liability*

| | | | |
|---|---|---|---|
| Each Occurrence Limit: | $1,000,000 | Employee Benefits Liability: | $1,000,000 |
| Personal & Advertising Injury Limit: | Amendment of Limits Endorsement | Employee Benefits Aggregate Limit: | $1,000,000 |
| General Aggregate Limit: | $2,000,000 | Liquor Liability Limit: | Excluded |
| Products-Completed Operations Aggregate Limit: | Included in General Aggregate | Liquor Liability Aggregate: | Excluded |
| Damage To Premises Rented To You: | $500,000 | | |
| Medical Payment Limit: | $10,000 | | |

# TRUE & COMPLETE COPY  10/20/2015

**RETAINED LIMIT:**  See form FMIC GL 2015 (01/14)

**PREMIUM COMPUTATION:**     Premium: $249,900          Processing Fee:  $150

Coverage for certified acts of terrorism has been rejected; exclusion attached.     [X]
(Per TRIA Disclosure Notice.)

**DEPOSIT PREMIUM:**     $249,900

**DESCRIPTION OF BUSINESS:** Security & Patrol Agencies

FORM OF BUSINESS:

| | | |
|---|---|---|
| [ ] INDIVIDUAL | [ ] PARTNERSHIP | [X] ORGANIZATION, INCLUDING A CORPORATION (BUT NOT |
| [ ] JOINT VENTURE | [ ] LIMITED PARTNERSHIP | INCLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED |
| | [ ] LIMITED LIABILITY COMPANY | LIABILITY COMPANY) |

**ENDORSEMENTS ATTACHED TO THIS POLICY:**     See Schedule FMIC-END - Schedule of Forms and Endorsements

"This insurance is issued pursuant to the CA Insurance Code, Sections 1760 through 1780, and is placed in an insurer or insurers not holding a Certificate of Authority from or regulated by the California Insurance Commissioner."

**IMPORTANT!  Please carefully examine your policy as it may contain significant coverage modifications or exclusions.**
**If this policy is a renewal, it may not contain the same precise terms and conditions as the prior policy.**

**Date:**  10/8/2014     **Authorized Representative:** *Marc J Adee*

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S)
AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.                    FMIC-GL-DS-0001 (12/10)

**EXTENSION OF DECLARATIONS**

Policy Number: SE-CGL-0000047473-01

**Location of Premises:**

1   2878 CAMINO DEL RIO S SUITE 260 SAN DIEGO CALIFORNIA 92108

**Classification and Premium:**

| Classification | Code No. | Exposure Basis | Exposure Amount | Rate | Deposit Premium |
|---|---|---|---|---|---|
| 98751-Security & Patrol Agencies ; ushering, ticket takers, traffic control, valet parking clerical, cashiers (at trade shows). | 98751 | Payroll | $8,994,421 | $27.3280/Per $1,000 of Payroll | $245,802 |
| Uninsured Subcontractors | 99992 | Contractor Cost | $0 | $30.1470/Per $1,000 of Contract Cost | $0 |

Policy Number: SE-CGL-0000047473-01

| | | | | |
|---|---|---|---|---|
| 99996-Blanket Additional Insured , Blanket Waiver of Subrogation and Blanket Primary Wording. | 99996 | 0.00 | $0.0000/Included | $0 |
| 99999-Additional Insured The following entities are listed as additional insureds on this policy: Hyatt Corp, HST San Diego HH LP, The City of Carlsbad, Jsix Restaurant and Jsix Bar, Hotel Salomar, Kimpton Hotel & Restaurant Group and Soul Driver, Lessee. | 99999 | 0.00 | $0.0000/Included | $0 |

Policy Number: SE-CGL-0000047473-01

| | | | | | |
|---|---|---|---|---|---|
| 99995 - Flat Charge - Not Otherwise Classified Group Labor | 99995 | Payroll | $300,000 | $13.6600/Per $1,000 of Payroll | $4,098 |

Insured: Elite Learning Corporation (DBA)

Policy Number:   SE-CGL-0000047473-01

# SCHEDULE OF FORMS AND ENDORSEMENTS

(other than applicable forms shown elsewhere in the policy)

Forms and Endorsements applying to and made part of this policy at the time of issuance:

CG 00 01 (01/96) - COMMERCIAL GENERAL LIABILITY COVERAGE FORM
FMIC LEGAL (04/14) - SERVICE OF SUIT
FMIC GL 2253 (03/12) - AMENDMENT OF POLICY LANGUAGE ENDORSEMENT
CG 00 57 (09/99) - AMENDMENT OF INSURING AGREE - KNOWN INJURY OR DAM
CG 00 62 (12/02) - WAR LIABILITY EXCLUSION
CG 04 35 (03/05) - EMPLOYEE BENEFITS LIABILITY COVERAGE
CG 20 10 (07/04) - ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS
CG 20 10 (07/04) - ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS
CG 20 10 (07/04) - ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS
CG 20 10 (07/04) - ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS
CG 20 10 (07/04) - ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS
CG 20 10 (07/04) - ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS
CG 20 10 (07/04) - ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS
CG 20 10 (07/04) - ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS
CG 20 10 (07/04) - ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS
CG 21 47 (12/07) - EMPLOYMENT RELATED PRACTICES EXCLUSION
CG 21 49 (01/96) - TOTAL POLLUTION EXCLUSION ENDORSEMENT
CG 25 03 (03/97) - DESIGNATED CONSTRUCTION PROJECTS GENERAL AGG LIMIT
CG 24 04 (05/09) - WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHER
CVX EO2 (07/01) - ERRORS & OMISSIONS
CVX GL OC G1 0253 (06/94) - AMENDMENT OF LIMITS OF INSURANCE
CVX GL 0201(10/89) - EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES
CVX GL 0202 (04/90) - EXCLUSION - OFF ROAD MOTOR VEHICLES
CVX GL 0406 (11/96) - CONTRACTUAL LIABILITY LIMITATION ENDORSEMENT
CVX GL 0509 (12/88) - LOST KEY COVERAGE
CVX GL 0517 (04/05) - CARE, CUSTODY, CONTROL AMENDATORY ENDORSEMENT
CVX GL 0524A (02/07) - EXTENDED PROPERTY DAMAGE - AMENDATORY ENDORSEMENT
CVX GL 0700 (08/04) - EXCLUSION OF SPECIFIC WORK
CVX GL 0701 (03/05) - CLASSIFICATION DESCRIPTION
CVX GL 1001A (09/02) - EXCLUSION - MOLD, FUNGI OR BACTERIA
CVX GL 5007 (11/02) - SUBSIDENCE EXCLUSION
CVX GL 5066 (05/04) - CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCL
CVX GL 5080 (10/08) - EXCLUSION - ELECTROMAGNETIC FIELD
D 2 (07/11) - NOTICE TO CALIFORNIA INSUREDS
FMIC GL 1002 (10/12) - PRIMARY AND NON-CONTRIBUTING INSURANCE
FMIC GL 2009 (09/12) - SPECIAL CONDITIONS FOR SUBCONTRACTORS INCL DED
FMIC GL 2010 (01/14) - CROSS SUITS ENDORSEMENT
FMIC GL 2015 (01/14) - POLICY DEDUCTIBLE ENDORSEMENT
FMIC GL 2077 (04/11) - HAZARDOUS MATERIALS EXCLUSION
FMIC GL 2163 (05/12) - MINIMUM EARNED PREMIUM ENDORSEMENT
FMIC GL 2172 (07/11) - EXCLUSION OF TERRORISM
FMIC GL 2206 (09/13) - EXCL - VIOLATION OF STATUTES OR ORDINANCES (LIM)
GU 267 (11/85) - COMMON POLICY CONDITIONS
GU 276A (11/85) - NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
FMIC CLAIM NOTIFICATION (12/2006)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION **II**).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION **V**).

## SECTION I – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION **III**); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1994

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph **(d)(i)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph **2.b.(2)** of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

   **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

     **(1)** "Bodily injury" or "personal injury":

       **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

       **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

       **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

       **(d)** Arising out of his or her providing or failing to provide professional health care services.

     **(2)** "Property damage" to property:

       **(a)** Owned, occupied or used by,

       **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

       you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

     **(1)** With respect to liability arising out of the maintenance or use of that property; and

     **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

 Copyright, Insurance Services Office, Inc., 1994 ⇥

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

   **(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   **(2)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

   **(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section **I**).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   **(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

 Copyright, Insurance Services Office, Inc., 1994

**5. Premium Audit**

    **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

    **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

    **a.** The statements in the Declarations are accurate and complete;

    **b.** Those statements are based upon representations you made to us; and

    **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    **a.** As if each Named Insured were the only Named Insured; and

    **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

    **a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **b.** Oral or written publication of material that violates a person's right of privacy;

    **c.** Misappropriation of advertising ideas or style of doing business; or

    **d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

    **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

    **b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

    **c.** All parts of the world if:

        **(1)** The injury or damage arises out of:

            **(a)** Goods or products made or sold by you in the territory described in **a.** above; or

 Copyright, Insurance Services Office, Inc., 1994

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**9.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**10.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**11.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

      **(a)** Snow removal;

      **(b)** Road maintenance, but not construction or resurfacing;

      **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13.** "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

**14.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

     Copyright, Insurance Services Office, Inc., 1994

**b.** Does not include "bodily injury" or "property damage" arising out of:

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

  **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **(1)** You;

    **(2)** Others trading under your name; or

    **(3)** A person or organization whose business or assets you have acquired; and

  **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

  **a.** Work or operations performed by you or on your behalf; and

  **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **b.** The providing of or failure to provide warnings or instructions.

# SERVICE OF SUIT

The Company agrees that in the event of its failure to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

The Company hereby designates the Commissioner, Director or Superintendent of Insurance, or other officer specified by law for that purpose, or his successor or successors in office, or the person designated below, in the space indicated, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured arising out of this contract of insurance.  It is further agreed that the Company shall abide by the final decision of any court having jurisdiction in which such action is filed, or by the decision of any appellate court in the event of an appeal.

Upon receipt of process served hereunder, the Company hereby designates Wendy Drum, Legal Department, 26600 Telegraph Road, Southfield, Michigan 48033 as the person to whom the officer designated above is authorized to mail such process.

In the alternative, process may be served upon the authorized agent of the Company whose name and address are:

**FIRST MERCURY INSURANCE COMPANY**
**26600 TELEGRAPH RD.**
**SOUTHFIELD, MICHIGAN  48033**

FMIC LEGAL (04/2014)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF POLICY LANGUAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART**

The following policy language changes are made as follows:

Form CVX-GL-0202 (4/90) - Exclusion - Off Road Motor Vehicles does not apply to Segways (a self-balancing personal transportation device with two wheels) or Mules (A two- or four-person motorized off-road vehicle (ORV) manufactured for off road use which cannot be operated on the public roads).

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent or preparation of the Policy.)

Endorsement effective                    Policy No.  SE-CGL-0000047473-01

Named Insured Elite Show Services Inc ESS Management Inc (DBA) Elite
          Training Corporation

Countersigned by _____

(Authorized Representative)

FMIC-GL-2253(03/2012)

COMMERCIAL GENERAL LIABILITY
CG 00 57 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **1. Insuring Agreement** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance ap plies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance d oes not apply. We may, at our discretion, invest igate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered u nless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2) The "bodily injury" or "property damage" occurs during the policy period; and

   (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give o r receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property da mage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs d uring the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive n otice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

POLICY NUMBER: SE-CGL-0000047473-01
**COMMERCIAL GENERAL LIABILITY**

**CG 04 35 03 05**

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE

### THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
### PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | Premium |
|---|---|---|---|---|
| Employee Benefits Programs | $ 1,000,000 | each employee | $ 10,000 | $ |
| | $ 1,000,000 | aggregate | | |
| Retroactive Date: | 9-21-2013 | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section III – Limits Of Insurance); and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   **b.** This insurance applies to damages only if:

    **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

    **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

    **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

   **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

    **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make settlement in accordance with Paragraph **1.a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

## 2. Exclusions

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments – Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

    **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

    **b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

    **1. Limits Of Insurance**

      **a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

        **(1)** Insureds;

        **(2)** "Claims" made or "suits" brought;

        **(3)** Persons or organizations making "claims" or bringing "suits";

        **(4)** Acts, errors or omissions; or

        **(5)** Benefits included in your "employee benefit program".

      **b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

      **c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

        **(1)** An act, error or omission; or

        **(2)** A series of related acts, errors or omissions

      negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

    **a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

    **b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

    **c.** The terms of this insurance, including those with respect to:

      **(1)** Our right and duty to defend any "suits" seeking those damages; and

      **(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

    apply irrespective of the application of the deductible amount.

    **d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

© ISO Properties, Inc., 2004

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

**a.** This endorsement is canceled or not renewed; or

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The "employee benefit programs" insured;

**b.** Previous types and amounts of insurance;

**c.** Limits of insurance available under this endorsement for future payment of damages; and

**d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

H. For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

      a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

POLICY NUMBER: SE-CGL-0000047473-01

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Any person or organization as required by written contract or agreement | various |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2004

POLICY NUMBER: SE-CGL-0000047473-01 **COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Hyatt Corp, HST San Diego HH LP, a Delaware Limited Partnership and Manchester Grand Resorts LP a California Limited Partnership, Manchester Grand Hyatt, San Diego<br>One MArket Place<br>San Diego, CA 92101 | various |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

POLICY NUMBER: SE-CGL-0000047473-01

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| The City of Carlsbad, its Officers, Employees, Volunteers and Agents 2560 Orion Way Carlsbad, CA 92010 | various |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2004

POLICY NUMBER: SE-CGL-0000047473-01

**COMMERCIAL GENERAL LIABILITY**
CG 20 10 07 04

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Jsix Restaurant and Jsix Bar 435 Sixth Avenue San Diego, CA 92101-7007 | 435 Sixth Avenue. San Diego, CA 92101-7007 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2004

POLICY NUMBER: SE-CGL-0000047473-01

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Hotel Salomar 435 Sixth Avenue San Diego, CA 92101-7007 | 435 Sixth Avenue. San Diego, CA 92101-7007 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2004

POLICY NUMBER: SE-CGL-0000047473-01                    **COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Kimpton Hotel & Restaurant Group LLC 222 Kearny Street Suite 200 San Francisco, CA 94108 | 222 Kearny Street, Suite 200 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**CG 20 10 07 04**                    © ISO Properties, Inc., 2004                    **Page 1 of 1**

POLICY NUMBER: SE-CGL-0000047473-01

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Soul Driver, Lessee 435 Sixth Avenue San Diego, CA 92101-7007 | 435 Sixth Avenue |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

POLICY NUMBER: SE-CGL-0000047473-01                           **COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| City of Carlsbad, its officers, employees, volunteers and agents (where the Named Insured Conducts Ongoing Operations Of Their Behalf).<br>799 Pine Ave<br>Carlsbad, CA 92008 | Various |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**CG 20 10 07 04**                    © ISO Properties, Inc., 2004                    **Page 1 of 1**

POLICY NUMBER: SE-CGL-0000047473-01

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Grand Pacific Resort Services, L.P. P.O. Box 4068 Carlsbad, CA 92008 | 5460/5440 Grand Pacific Drive (Hotels 1 & 2) 5480 Grand Pacific Drive (Conference Center/Restaurant/Spa) Carlsbad, CA 92008 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**COMMERCIAL GENERAL LIABILITY**
**CG 21 49 01 96**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages) is replaced by the following:

This insurance does not apply to:

**f.** Pollution

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

**CG 21 49 01 96**          Copyright, Insurance Services Office, Inc., 1994          **Page 1 of 1**

POLICY NUMBER:SE-CGL-0000047473-01

**COMMERCIAL GENERAL LIABILITY**
**CG 25 03 03 97**

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided   under the following:

COMMERCIAL GENERAL LIABILITY   COVERAGE PART

**SCHEDULE**

Designated Construction Projects:

Blanket Per Project is subject to a $15,000,000 capped aggregate limit

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION **I**), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION **I**), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

   **1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

              Copyright, Insurance Services Office, Inc., 1996

3. Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION **I**), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION **I**), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Limits Of Insurance (SECTION **III**) not otherwise modified by this endorsement shall continue to apply as stipulated.

POLICY NUMBER:                                          **COMMERCIAL GENERAL LIABILITY**
                                                        **CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| **Name Of Person Or Organization:** |
| Any Person or Organization for whom the Insured had, prior to a Claim, a written agreement or written contractual obligation, to waive such rights. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.

| ATTACHED TO AND FORMING PART OF POLICY NUMBER | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

# ERRORS AND OMISSIONS
# ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

In consideration of premium charged:

1.  SECTION I – COVERAGE D – ERRORS AND OMISSIONS LIABILITY IS ADDED:

    Insuring Agreements:

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages resulting from errors or omissions in the practices of your business.  We will have the right and duty to defend any "suit: seeking those damages.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

    (1)  The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

    (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A, B or D or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

    b.  This insurance applies to injury, other than "bodily injury," "property damage," "personal injury" or "advertising injury," which is caused by an "occurrence" that occurs during the policy period and that takes place in the "coverage territory."

2.  EXCLUSIONS

    Such insurance as is provided by this Coverage Part (D) shall not apply to damages arising out of:

    a.  Infringement of copyright, title, slogan, patent, trademark, trade name, service mark, or service name;

    b.  Violation of federal or state anti-trust laws or any regulations and rules thereunder;

    c.  Any liability imposed solely by any governmental statute or regulation;

    d.  The conduct of any business enterprise not listed in your application for this policy.

    e.  Your status or activities as a partner, officer, director, stockholder or employee of any entity not named in your application for this policy;

**ERRORS AND OMISSIONS (continued)**

f.  Harassment, misconduct or acts of discrimination because of race, creed, color, national origin, religion, age, sex, sexual preference, or handicap including, but not limited to, violation of any statute, law, ordinance, or regulation prohibiting such acts;

g.  Breach of contract or breach of any express or implied warranty or guarantee;

h.  Demands for injunctive relief or for punitive or exemplary damages;

i.  Violation of the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, or any amendments, rules or regulations applicable to this or any similar provisions of any federal, state or local statutory or common law.

j.  Willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

k.  Your employment or personnel practices, or injuries to any present or former officer or employee of the insured;

l.  Theft or loss of money, securities, or any other property of others.

m.  Any liability for loss based on any actual or alleged inventory shortage or inventory shrinkage.


All other terms, conditions and provisions of the policy to which this form is attached, including those included in Coverage A and in Coverage B, remain unchanged, and applicable to Coverage D.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Section III - Limits of Insurance is replaced by the following:

**SECTION III - LIMITS OF INSURANCE**

The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a.   Insureds;

   b.   Claims made or "suits" brought; or

Persons or organizations making claims or bringing "suits."

The General Aggregate Limit is the most we will pay for the sum of:

   a.   Medical expenses under Coverage C; and

Damages under Coverage A and Coverage B.

Subject to 2. above and regardless of the number of:

   a.   Insureds;

Persons or organizations who sustain injury or damage; or

   c.   Claims made or "suits" brought on account of "personal injury" or advertising injury,

   the most we will pay under Coverage B shall not exceed the Each Occurrence Limit shown in the Declarations.

4.   Subject to 2. above, the Each Occurrence Limit is the most we will pay for the sum of:

       a.   Damages under Coverage A; and

       b.   Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

5.   Subject to 4. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises rented to you arising out of any one fire.

6.   Subject to 4. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expense because of "bodily injury" sustained by any one person.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                        Policy No.                    Endorsement No.

Named Insured

Countersigned by _____
                                        (Authorized Representative)

CVX-GL-OC-G1-0253 (6/94)

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs whether or not such damages, related interest or costs are characterized as punitive or exemplary damages (hereinafter referred to as punitive or exemplary damages). If a "suit" shall have been brought against the insured for a claim falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action, however, the company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                          Policy No.                          Endorsement No.

Named Insured

Countersigned by _____
                                    (Authorized Representative)

CVX-GL-0201(10/89)

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – OFF ROAD MOTOR VEHICLES

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, it is agreed that:

1. This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance or use, on or off public roads, of any "Off Road Motor Vehicle" as defined herein.

2. The following additional definition applies:

   "Off Road Motor Vehicle" means

   a. A golf cart, mobile cart, snowmobile, or minibike, or

   b. Any other land motor vehicle designed for use principally off public roads.

It is the intent of this endorsement to exclude from this insurance all claims, demands, or suits as above described.  There shall, therefore, be no duty or obligation on our part under this insurance to defend, respond to, investigate, or indemnify anyone, including but not limited to you, your or its agents, servants, or employees, or any third parties for any such claim, demand or suit.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                                        Policy No.                        Endorsement No.

Named Insured

Countersigned by _____
                                                     (Authorized Representative)

CVX-GL-0202(4/90)

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTUAL LIABILITY LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The definition of "Insured Contract" in the Definitions Section is replaced by the following:

"Insured Contract" means:

1. Any valid, written and fully executed:

   a. Lease of premises;

   b. Easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad;

   c. Indemnification of a municipality as required by ordinance, except in connection with work for the municipality,

   d. Sidetrack agreement or any easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade, or

   e. Elevator maintenance agreement.

2. That part of any other valid, written and fully executed contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage." Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract agreement:

(1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

   b. Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(2) Under which the Insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the Insured's rendering or failing to render professional services, including those listed in (1) above and supervisory, inspection or engineering services, or

(3) That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

(4) That indemnifies the indemnitee for liability resulting from his sole negligence.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-GL-0406 (11/96)

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOST KEY COVERAGE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, it is agreed that we will pay on behalf of the insured, subject to the limit of liability and deductible stated herein, those sums which the insured shall become legally obligated to pay as damages because of the loss or mysterious disappearance of any keys which are entrusted to or in the possession, care, custody or control of the insured or his employees, subject however to the following provisions:

(1)  Such insurance as is afforded by this endorsement shall not apply to damages caused by misappropriation, secretion, conversion, infidelity or any act of dishonesty on the part of any Insured, his employees or agents;

(2)  The Company's liability for all damages because of loss to which this endorsement applies shall be limited to the actual cost of keys, adjustment of locks to accept new keys or, if required, new locks including cost of their installation and, subject to such limitation, the total liability of the Company for all damages as the result of any one occurrence shall not exceed the limit of liability stated in the schedule below;

(3)  The Company's obligation to pay damages on behalf of the Insured applies only to the amount of damages in excess of the deductible amount set forth in the schedule below.  The stated deductible amount shall apply to all damages sustained as the result of one occurrence.

SCHEDULE

| Total Limit of Liability | Deductible Amount |
|---|---|
| $500,000 | $1,000 |

ALL OTHER TERMS, CONDITIONS, DEFINITIONS, EXCLUSIONS, LIMITS OF LIABILITY, DEDUCTIBLE TERMS, ETC. REMAIN UNCHANGED.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured

Countersigned by

CVX-GL-0509(12/88)

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CARE, CUSTODY, CONTROL AMENDATORY ENDORSEMENT

(Limited Form)

This endorsement modifies Insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion j.(4) under Coverage A (Section I) is deleted subject to the following limits of liability:

| | |
|---|---|
| Each Occurrence Limit: | $ 1,000,000 |
| Aggregate Limit: | $ 1,000,000 |
| Deductible: | $ 25,000 |

The above stated limits are inclusive of and are not in addition to the limits of liability specified in the Declarations.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective          Policy No.                    Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-GL-0517(04/2005)

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXTENDED PROPERTY DAMAGE – Amendatory Endorsement
# WITH SUB-LIMIT AND SUB-DEDUCTIBLE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Notwithstanding anything to the contrary in this policy, including but not limited to any care, custody and control amendatory endorsement that may be part of or become part of this policy, it is agreed that:

1.  The Definition of "Property Damage" is replaced by the following:

"Property Damage" means:

(a)  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

(b)  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

(c)  Theft or loss of property.

For the purposes of this insurance, electronic data is not tangible property

But "Property Damage" does not include:

(d)  Theft or loss of:

(1)  money, securities, or any other property of others while being transported by you or your employees or agents;

(2)  money, securities, or any other property of others held in any capacity at any premises you or your employees or agents own, rent or occupy;

(e)  Actual or alleged theft by the insured, or any current or prior employee or agent of the insured; or any actual or alleged theft by any current or prior client of the insured or any current or prior employee or agent of such current or prior client;

(f)  Loss, or that part of any loss, of inventory, the proof of which, either as to its factual existence or

as to its amount, is dependent upon an inventory computation or enumeration, a comparison of inventory records with an actual physical count of inventory, or upon a profit and loss computation to establish the amount of any loss;

(g)  Liability arising out of or contributed to or caused by the ownership, maintenance, operation, use, installation or monitoring of any alarm, alarm device, alarm component or alarm system;

(h)  Any liability for theft or loss of property assumed by the insured in writing under contracts, leases or agreements unless such liability would have been covered hereunder even in the absence of such contracts, leases or agreements.

2.a.  With respect to item 1.(c) "Theft or loss of property," as shown above, the total liability of the Company for all damages as the result of any one occurrence shall not exceed the limit of liability stated in the schedule below.  This sub-limit shall be inclusive of and not in addition to the limits of liability stated in the Declarations.

<u>SCHEDULE</u>:

Each occurrence limit: 25,000

Policy aggregate limit: 1,000,000

2.b.  With respect to item 1.(c) "Theft or loss of property," as shown above, the deductible amount indicated in the Deductible Liability Insurance endorsement, FMIC GL 2015 (5/13), is amended to 1,000 in lieu of 20,000.

This endorsement forms a part of the policy to which attached, and is effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No.                         Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-GL-0524A (02/2007)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF SPECIFIC WORK

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, it is agreed that this insurance does not apply to "Bodily Injury", "Property Damage," "Personal Injury" or "Advertising Injury" arising out of the rendering of or failure to render any services described in the Schedule of Excluded Operations contained in this endorsement, regardless of whether such operations are conducted by us or on you behalf.  This endorsement applies even if other causes contribute to or aggravate the "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury."

<u>Description of Excluded Operations:</u>

Any and all operations involving or arising from the use of canines, whether or not attended by handlers.

Any and All operations involving the oversight or actual screening for security purposes of people, goods, property of any description, vehicles or other equipment prior to entry into any private or commercial aircraft or watercraft or airport or seaport.

Any and all operations at, or arising from, any government owned residential facility, whether owned by a municipal, county, state, federal government, or any subdivision or agency thereof.

It is the intent of this endorsement to exclude from this insurance all claims, demands or suits arising out of the rendering of or failure to render any services scheduled above in the Description of Excluded Operations.  There shall, therefore, be no duty or obligation on our part under this insurance to defend, respond to, investigate, or indemnify anyone, including but not limited to you, your agents, servants, or employees, or any third parties for any such claim, demand or suit.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                         Policy No.                                      Endorsement No.

Named Insured                                  Countersiged by    _____

                                                                              (Authorized Representative)

CVX GL 0700 (08/04)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CLASSIFICATION DESCRIPTION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

"Your Work" (Description)
98751-Security & Patrol Agencies ; ushering, ticket takers, traffic control, valet parking clerical, cashiers (at trade shows).

99992-Uninsured Subcontractors

99996-Blanket Additional Insured , Blanket Waiver of Subrogation and Blanket Primary Wording.

99999-Additional Insured The following entities are listed as additional insureds on this policy: Hyatt Corp, HST San Diego HH LP, The City of Carlsbad, Jsix Restaurant and Jsix Bar, Hotel Salomar, Kimpton Hotel & Restaurant Group and Soul Driver, Lessee.

99995 - Flat Charge - Not Otherwise Classified Group Labor

This insurance applies only to "advertising injury," "bodily injury," "personal injury," and "property damage" arising out of the specific work described above, and no other.  All of your other operations are specifically excluded from coverage under the policy to which this endorsement is attached.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-GL-0701(03/2005)

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# EXCLUSION – MOLD, FUNGI OR BACTERIA

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**MEDICAL OR X-RAY LABORATORIES PROFESSIONAL LIABILITY COVERAGE PART**
**PUBLIC OFFICIALS LIABILITY COVERAGE PART**
**LAW ENFORCEMENT LIABILITY COVERAGE PART**

Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, this insurance does not apply to and shall not respond to any claim, demand or "suit" alleging:

1.  "Bodily Injury," "Property Damage" or "Personal and Advertising Injury" arising out of, in whole or in part, the actual, alleged or threatened discharge, inhalation, ingestion, dispersal, seepage, migration, release, escape or existence of any mold, mildew, bacteria or fungus, or any materials containing them, at any time.

2.  Any loss, cost or expense arising out of any:

    a.  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any mold, mildew, bacteria or fungus, or any materials containing them; or

    b.  Claim, demand or "suit" by or on behalf of a governmental authority or any other person or organization for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any mold, mildew, bacteria or fungus, or any materials containing them.

This exclusion applies to:

1.  Our obligation to contribute to, share damages with, repay or indemnify someone else who must pay damages because of the "Bodily Injury," "Property Damage" or "Personal and Advertising Injury" or pay any loss, cost or expense noted in paragraphs 2a. and 2b., above.

It is the intent of this endorsement to exclude from this insurance any claim, demand or "suit" as described above. Therefore, there shall be no duty or obligation on the part of the Company under this insurance to respond to, investigate or defend anyone, including but not limited to any insured, its agents, servants or "employees" or any third parties for any such claim, demand or "suit."

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                   Policy No.                   Endorsement No.

Named Insured

Countersigned by   _____
                                            (Authorized Representative)

CVX-GL-1001A(09/2002)

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This policy does not apply to any claim for "bodily injury" or "property damage" caused by, resulting from, attributable or contributed to, or aggravated by the subsidence of land as a result of:

1.  Flood or mud flow;
2.  Earthquake, volcanic eruption or other tectonic processes; or
3.  Settling, sinking, slipping, falling away, caving in, shifting, eroding, tilting or any movement of land or earth.

It is the intent of this endorsement to exclude from this insurance all claims, demands or suits as above described. There shall therefore be no duty or obligation on our part under this Insurance to defend, respond to, investigate or indemnify anyone, including but not limited to you, your agents, servants, or employees, or any third parties for any such claim, demand or suit.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                              Policy No.                              Endorsement No.

Named Insured

Countersigned by _____
                          (Authorized Representative)

CVX-GL-5007(11/2002)

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any damages because of or related to bodily injury or property damage:

1.  which first existed, or alleged to have first existed, prior to the inception date of this policy, or

2.  which are, or are alleged to be, in the process of taking place prior to the inception date of this policy, even if the actual or alleged bodily injury or property damage continues during this policy period.

3.  which were caused, or are alleged to have been caused, by the same condition or construction defect which resulted in bodily injury or property damage which first existed prior to the inception date of this policy.

We shall have no duty to defend any insured against any loss, claim, suit or other proceeding alleging damages arising out of or related to bodily injury or property damage to which this endorsement applies.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured

Countersigned by _____
(Authorized Representative)

CVX-GL-5066(05/2004)

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ELECTROMAGNETIC FIELD

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

This policy does not apply to "bodily injury," "property damage" or "personal and advertising injury," arising from claims or "suits" resulting directly or indirectly from any actual or alleged exposure to or alleged presence of, any electromagnetic field.

The following is added to **SECTION V – DEFINITIONS**:

"Electromagnetic field" means any electrical field, magnetic field, radar, microwave, radio wave, and any other electromagnetic radiation or electromagnetic energy of any kind.

This exclusion does not apply to "bodily injury" abruptly and immediately caused by direct contact with an electric current (such as electrocution) or to "property damage" directly, immediately and abruptly caused by an electric current (such an electrical fire caused by lightening or any short circuit).

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                              Policy No.                              Endorsement No.

Named Insured

Countersigned by _____
(Authorized Representative)

CVX-GL-5080(10/2008)

## "NOTICE:

**1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**

**2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

**3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

**4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER 1-800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.**

**5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

**6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT,**

BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU."

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRIMARY AND NON-CONTRIBUTING INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

To the extent that this insurance is afforded to any additional insured under this policy, **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance**, is deleted in its entirety and replaced with the following condition:

**4.    Other Insurance**

If all of the other insurance permits contribution by equal shares, we will follow this method unless the insured is required by written contract signed by both parties, to provide insurance that is primary and non-contributory, and the "insured contract" is executed prior to any loss.  Where required by a written contract signed by both parties, this insurance will be primary and non-contributing only when and to the extent as required by that contract.

However, under the contributory approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.  If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                        Policy No.                        Endorsement No.

Named Insured
                                                         Countersigned by _____

FMIC-GL-1002(10/2012)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIAL CONDITIONS FOR SUBCONTRACTORS INCLUDING DEDUCTIBLE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**

**SECTION IV – CONDITIONS** is amended and the following Policy Conditions added:

1. Certificates of insurance with limits of liability equal to or greater than those provided by this policy *(underwritten by an insurance company with at least an "A-7" Best rating as defined by AM Best)* will be obtained from all subcontractors prior to commencement of any work performed for the insured.  Insurance must be maintained during the policy period to coincide with those listed on this policy's declaration page.   (*Note: If this policy provides a per location or per project aggregate, subcontractor's policy must also provide the same.*)

2. The insured will obtain hold harmless agreements from subcontractors indemnifying the insured and the owner against all losses for work performed for the insured by any and all subcontractors.

3. The insured will be named as Additional Insured on all subcontractors' General Liability policies.

Evidence of compliance must be provided to the company during the annual premium audit.  Failure to comply with the above conditions will result in the following:

1. Additional premium will be charged at a rate of $30.15  per $1,000 of contract costs.

2. A "deductible" of $5,000  will also apply for any loss(es) that is the result of subcontractors operations.   This "deductible" is applicable only to loss(es) that is due to subcontractor's operations.  Any other "deductible" listed on the policy declarations or found in any policy endorsement remains as scheduled.

Commercial General Liability coverage maintained by subcontractors shall be primary and this policy shall be excess of limits of liability of such insurance, not withstanding the language of the Other Insurance provisions of this policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                              Policy No.                              Endorsement No.

Named Insured

Countersigned by _____

FMIC-GL-2009(09/2012)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CROSS SUITS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, COVERAGE D PROFESSIONAL LIABILITY, 2. Exclusions** and **SECTION I – COVERAGES PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** are amended and the following is added:

**CROSS SUITS EXCLUSION**

This Policy does not apply to a claim, demand or "suit" for damages initiated, alleged, or caused to be brought about by a Named Insured covered by this Policy against any other Named Insured.  It is the intent of this exclusion to exclude from this insurance all claims, demands or "suits" as above described.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                          Policy No.                          Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

FMIC-GL-2010(01/2014)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| | AMOUNT AND BASIS OF DEDUCTIBLE | |
|---|---|---|
| **COVERAGE A** | **PER CLAIM** | **PER OCCURRENCE** |
| **BODILY INJURY LIABILITY** | $ | $ |
| OR | | |
| **PROPERTY DAMAGE LIABILITY** | $ | $ |
| OR | | |
| **BODILY INJURY LIABILITY AND/OR** **PROPERTY DAMAGE LIABILITY COMBINED** | $ | $20,000 |
| | **PER INJURY** | |
| **COVERAGE B** **PERSONAL AND ADVERTISING INJURY LIABILITY** | $20,000 | |
| **COVERAGE C** | **PER CLAIM** | **PER OCCURRENCE** |
| **MEDICAL PAYMENTS** | $ | $ |

**A.** Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury Liability or Medical Payments Coverages to pay damages and Supplementary Payments on your behalf applies only to the amount of damages and Supplementary Payments in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** Your policy may have a deductible amount on either a per claim, a per "occurrence," or a per injury basis. Your deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

   **1.** **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

      **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

      **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";

      **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

         **(1)** "Bodily injury";
         **(2)** "Property damage"; or
         **(3)** "Bodily injury" and "property damage" combined; or

      **d.** Under Supplementary Payments – Coverages **A** and **B**, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies;

      **e.** Under Medical Payments Coverage **C**, to all damages sustained by any one person because of "bodily injury";

   as the result of any one "occurrence."

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury," a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage," person includes an organization.

**2.** **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a per "occurrence" basis, that deductible amount applies as follows:

    **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    **b.** Under Property Damage Liability Coverage, to all damages because of "property damage";

    **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

        **(1)** "Bodily injury";

        **(2)** "Property damage"; or

        **(3)** "Bodily injury" and "property damage" combined; or

    **d.** Under Supplementary Payments – Coverages **A** and **B**, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies.

    **e.** Under Medical Payments Coverage **C**, to all damages sustained by any one person because of "bodily injury";

    as the result of any one "occurrence," regardless of the number of persons or organizations who sustain damages because of that "occurrence."

**3.** **PER INJURY BASIS.** If the deductible amount indicated in the Schedule above is on a per injury basis, the deductible amount applies as follows:

    **a.** Under the Personal and Advertising Injury Liability Coverage to all damages because of "personal and advertising injury" sustained by any one person or organization as a result of any one injury.

    **b.** Under Supplementary Payments – Coverages **A** and **B**, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies.

**C.** The terms of this insurance, including those with respect to:

    **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

    **2.** Your duties in the event of an "occurrence," claim, or "suit"

    apply irrespective of the application of the deductible amount.

**D.** We, at our sole election and option, may either:

    **1.** Pay any part of or all of the deductible amount to effect settlement of any claim or "suit" or payment of Supplementary Payments. Upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us; or

    **2.** Simultaneously upon receipt of notice of any claim or "suit," or at any time thereafter, request you pay or deposit with us all or any part of the deductible amount, to be held and applied by us as herein provided.

**E.** The deductible may not be satisfied by payments made by any additional insured, any other insurance, or any other insurer, unless such payments are made under a policy written specifically to cover the deductible obligations under this policy.

**F.** Notwithstanding any other provision of this policy or any endorsements thereto, including the Separation of Insureds Condition, all Named Insureds are jointly and severally liable to us for payment of the full deductible amounts applicable to any and all claims and "occurrences" to which this policy may apply.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement effective                Policy No.              Endorsement No.

Named Insured

                Countersigned by _____

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE COVERAGE PART**

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions,** and **SECTION I – COVERAGES, PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, and SECTION I – COVERAGES BODILY INJURY AND PROPERTY DAMAGE LIABILITY** are amended and the following Exclusion is added:

This insurance does not apply to:

**Hazardous Materials**

**(1)** "Bodily injury," "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, ingestion, inhalation, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

  **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials."

**(3)** Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials."

**(4)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs **(1)**, **(2)**, or **(3)** above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

B. **SECTION V – DEFINITIONS** is amended and the following added:

**"Hazardous materials"** means "pollutants," and materials that are radioactive, corrosive, oxidizers, asphyxiates, biohazardous, toxic, pathogen or allergen substances and organisms, lead, asbestos, silica and materials containing them.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured

Countersigned by _____

FMIC-GL-2077(04/2011)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MINIMUM EARNED PREMIUM ENDORSEMENT

The following additional policy Conditions supersede any other policy conditions and the Named Insured hereby agrees that the total policy premium and minimum earned premium(s) due for this policy shall be calculated in accordance with the following:

**Total Policy Premium**

This policy is subject to a Total Policy Premium which means the premium that is calculated as follows:

1. The deposit premium as shown in the policy Declarations, plus
2. Any premium adjustment by endorsement, plus
3. Any additional premium developed by audit.

The premium entered on the Declarations page of this policy as DEPOSIT PREMIUM is a provisional premium only and is subject to adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

**A.   Minimum Earned Premium by Date Certain**

If the box below is checked and a date filled in where applicable the minimum earned premium for this policy will be 100% earned by the specific date referenced in this endorsement and there will be no return of premium if you cancel this policy.

☐     After (              ) the premium is fully earned.

**B.   Audits and Minimum Earned Premium**

With regard to audits the DEPOSIT PREMIUM as stated in the policy Declarations cannot be reduced due to an audit.   Premium adjustments affected as a result of premium audits may be done while the policy is in effect or after the policy is no longer in effect.  The due date for audit premiums is the date shown as the due date on the bill.

**C.   Cancellation and Minimum Earned Premium**

1. If you cancel this policy, the return premium will be the lesser of:
    a.   90% of the pro rata unearned premium or
    b.   75 % of the Deposit Premium.

2. If the Named Insured fails to remit premium payment when due, such failure shall be considered a request by the Named Insured to cancel this policy and the return premium will be determined in accordance with C. 1.

3. If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                          Policy No.                          Endorsement No.

Named Insured

Countersigned by

FMIC-GL-2163(05/2012)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM

Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, it is agreed that this insurance does not apply to "**any injury or damage**" caused directly by or as a consequence of a "**certified act of terrorism**" or "**other act of terrorism**," including any action not otherwise excluded under the War and Military Action exclusion that is taken by a government or sovereign power (de jure or de facto) in controlling, preventing, suppressing, retaliating against or in any way responding to a "**certified act of terrorism**" **or** "**other act of terrorism**."   Such injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss, even if the act of a "**certified act of terrorism**" or "**other act of terrorism**," that causes or results in the loss or damage itself is itself a cause of loss that is otherwise insured against under this policy.

If, by reason of this exclusion, we allege that any loss or damage under this policy is not covered, the burden of proving that such loss or damage is covered shall be upon you.

The following definitions are added:

1.  For the purposes of this endorsement, "**any injury or damage**" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury," "property damage," "personal and advertising injury," "injury," "environmental damage" or "errors or omissions" as may be defined in any applicable Coverage Part.

2.  "**Certified act of terrorism**" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    a.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3.  "**Other act of terrorism**" means any violent act that is dangerous or destructive to human life, property or infrastructure, whether actual or threatened, and whether committed by one or more persons acting alone or in connection with any group or organization. The act must not be certified as a "**certified act of terrorism**" pursuant to the federal Terrorism Risk Insurance Act and the act must contain one or more of the following criteria:

    a.  The act is intended to influence, coerce or protest against the actions, behavior or policies of any government or sovereign power (de jure or de facto) or any segment of the government or sovereign; or

    b.  To further any political, ideological, economic, religious or social aim, objective or cause; or

    c.  To disrupt any segment of the global economy or the economy of any country or political state.

It is the intent of this endorsement to exclude from this insurance all claims, demands or "suits" arising from the insurable coverage excluded under this endorsement. There shall, therefore, be no duty or obligation on our part under this insurance to defend, respond to, investigate or indemnify anyone, including but not limited to you, your agents, servants or employees, or any third parties for any such claim, demand or suit.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured
                                         Countersigned by _____

FMIC-GL-2172 (07/2011)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES OR ORDINANCES (Limited)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

This insurance does not apply to any claim or suit alleging or asserting, in whole or part, "bodily injury," "property damage," or "personal and advertising injury" arising out of any actual or alleged violation by any insured of any criminal or penal statutes or ordinances, anti-trust statutes, anti-competitive statutes, unfair competition statutes, unfair business practice statutes or any regulations and rules thereunder.

However, this exclusion shall not apply to vicarious liability imposed solely upon an insured as an employer or as to any insured which is not alleged to have committed or participated in the alleged violation.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                          Policy No.                                    Endorsement No.

Named Insured

Countersigned by _____
                                                     (Authorized Representative)

FMIC GL 2206(09/2013)

IL 00 17 11 85

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the cause of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office,    Inc., 1982, 1983

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IL 00 21 11 85

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (BROAD FORM)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:
   A. Under any Liability Coverage, to "bodily injury" or "property damage":
      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.
   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:
      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;
      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or
      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:
   "Hazardous properties" include radioactive, toxic or explosive properties;

   **"Nuclear material" means "source material," "Special nuclear material" or "by-product material";**

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel" or (3) handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

## "Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1983, 1984

GU 276a (11−85)
IL 00 21 11 85

**CLAIM NOTIFICATION**

Send all claim notifications and information to:

## First Mercury Insurance Company

P.O. Box 5096
Southfield, Michigan  48086

Or

26600 Telegraph Rd.
Southfield, MI 48033

Or Fax to:

## First Mercury Insurance Company

Attn:  Claim Department
Fax Number:  (248) 357-5036

Or Email to
Claimsfax@firstmercury.com

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.



26600 Telegraph Rd.
Southfield, MI 48033

P.O. Box 5069
Southfield, MI 48086

10/08/2014

**Re:** Elite Show Services Inc ESS Management Inc (DBA) Elite Training Corporation
SE-CGL-0000047473-01

## THANK YOU FOR THE ORDER

# PLEASE REVIEW THIS POLICY CAREFULLY.

# THE COVERAGES AND TERMS OF THE POLICY MAY DIFFER FROM THOSE REQUESTED IN YOUR APPLICATION AND/OR YOUR EXPIRING POLICY.

# PLEASE REVIEW AND ADVISE US IMMEDIATELY IN WRITING OR VIA FAX IF YOU HAVE ANY CHANGES TO THIS POLICY.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDING/DELETING ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

The following endorsement(s) are either added to, or deleted from, the policy, the effective date as of the date shown below:

| ADDED | DELETED | FORM NUMBER & NAME |
|-------|---------|--------------------|
| X | | CG 20 10 (07/04) - ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS |
| | | Anaheim Duck 2695 E. Katella Ave.   Anaheim CA 92806 |

## EMAILED GROSHCHIN

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective  02/20/2015       Policy No.  SE-CGL-0000047473-01            Change No. 1

Named Insured   Elite Show Services Inc ESS Management Inc (DBA) Elite Training Corporation

Countersigned by _____
(Authorized Representative)

POLICY NUMBER: SE-CGL-0000047473-01

**COMMERCIAL GENERAL LIABILITY
CG 20 10 07 04**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY
COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Anaheim Duck 2695 E. Katella Ave. Anaheim, CA 92806 | Various |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2004

# EXHIBIT B

03/26/2014                    **INSTALLMENT SCHEDULE**                    Agency Copy

**Policy Number:** CNA 1001094-19

| **Insured:** | **Agency:** |
|---|---|
| DeBartolo Corporation | Willis of Texas, Inc. |
| 7620 Market St | 1800 S Washington Suite 400 |
| Youngstown, OH  44513 | Amarillo, TX 79105 |
| | (806)376-4761 |

**Transaction:**      Renewal
**Effective Date:**   03/01/2014
**Process Date:**     03/26/2014

**Premium Installment Schedule:**

| Due Date | Original Installment | Transaction Amt | New Installment | Agent Commission |
|---|---|---|---|---|
| 03/01/2014 | $       0.00 | $   20,751.69 | $   20,751.69 | $       0.00 |
| 04/01/2014 | $       0.00 | $   20,751.69 | $   20,751.69 | $       0.00 |
| 05/01/2014 | $       0.00 | $   20,751.69 | $   20,751.69 | $       0.00 |
| 06/01/2014 | $       0.00 | $   20,751.69 | $   20,751.69 | $       0.00 |
| 07/01/2014 | $       0.00 | $   20,751.69 | $   20,751.69 | $       0.00 |
| 08/01/2014 | $       0.00 | $   20,751.69 | $   20,751.69 | $       0.00 |
| 09/01/2014 | $       0.00 | $   20,751.69 | $   20,751.69 | $       0.00 |
| 10/01/2014 | $       0.00 | $   20,751.69 | $   20,751.69 | $       0.00 |
| 11/01/2014 | $       0.00 | $   20,776.60 | $   20,776.60 | $       0.00 |
| 12/01/2014 | $       0.00 | $   20,776.60 | $   20,776.60 | $       0.00 |
| 01/01/2015 | $       0.00 | $   20,776.60 | $   20,776.60 | $       0.00 |
| 02/01/2015 | $       0.00 | $   20,776.68 | $   20,776.68 | $       0.00 |
| Total | $       0.00 | $  249,120.00 | $  249,120.00 | $       0.00 |

**Breakdown of New Installments:**

| | Premium |
|---|---|
| 03/01/2014 | $   20,751.69 |
| 04/01/2014 | $   20,751.69 |
| 05/01/2014 | $   20,751.69 |
| 06/01/2014 | $   20,751.69 |
| 07/01/2014 | $   20,751.69 |
| 08/01/2014 | $   20,751.69 |
| 09/01/2014 | $   20,751.69 |
| 10/01/2014 | $   20,751.69 |
| 11/01/2014 | $   20,776.60 |
| 12/01/2014 | $   20,776.60 |
| 01/01/2015 | $   20,776.60 |
| 02/01/2015 | $   20,776.68 |
| Total | $  249,120.00 |

INSTSCH-1 01 01

**COMMERCIAL LINES POLICY**
**COMMON POLICY DECLARATIONS**
## Great Divide Insurance Company

A Berkley Insurance Company
7233 E. Butherus Drive
Scottsdale, AZ 85260

Policy Number:
CNA 1001094 - 19

Named Insured and Address                    Producer Name and Address        10050

   DeBartolo Corporation                         (806)376-4761
   7620 Market St
   Youngstown, OH 44513                          Willis of Texas, Inc.
                                                 1800 S Washington Suite 400
                                                 Amarillo, TX 79105

Policy Period: From March 1, 2014     to March 1, 2015      12:01 A.M. Standard Time
at your mailing address shown above.

Business Description: Professional Football Team

      This policy is: _ Direct Bill    12 Pay Plan
                       X Agent Billed

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

      THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS
      INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

                                                                Premium


      Commercial General Liability Coverage Part          $  249,120.00

                                          Grand Total   $  249,120.00


Form(s) and Endorsement(s) made part of this policy at time of issue:

AIIL11 (08-92), TRIPRA02 (09-13).
ACORD63OH (09-93), IL0017 (11-98), IL0021 (09-08), IL0244 (09-07), IL0270 (09-08),
ILE03AS (08-04).


Countersigned _____ By _____
                                             Countersignature or Authorized
                                             Representative, whichever is
                                             applicable

Commercial Monoline
Policy Number CNA 1001094-19

Endorsement A
Blanket Additional Insured Endorsement

You and we agree that section II - Who is an insured is amended to
include as an insured any person or organization for whom you have
agreed in writing to obtain bodily injury, property damage and
personal injury liability insurance pursuant to a written agreement
pertaining to your business, however such person or organization is an
insured only with respects to their liability arising out of
operations or activities performed by you or on your behalf.
The insurance provided by this endorsement is subject to the
following provisions:
1. This endorsement provides only those coverages which are provided
by the policy and which you have agreed to obtain pursuant to a
written agreement pertaining to your business.
2. Our liability under this endorsement shall not exceed the lessor
of:
A. The limit of liability specified in the written agreement
                    Endorsement A (continued)
pertaining to your business; or
B. The limit of insurance provided by the policy.
3. The Insurance provided by this endorsement shall apply as the
primary insurance if the written agreement pertaining to your
business so specifies. In such event, any other insurance available
to such insured shall be excess and shall not contribute with the
insurance provided by the endorsement.

Commercial Monoline
Policy Number CNA 1001094-19

**ENDORSEMENT, continued**

Endorsement B
Additional Insured Designated Person or Organization

Name of Person or Organization
Any township, municipality, county, state police, sheriff or other
law enforcement department.
Who is an insured (Section II) is amended to include as an insured the
person or organization shown in the schedule, but only with respect
to their liability arising out of your employment of any off-duty
law enforcement officer for security purposes at any premises owned
by or rented to you, subject to the following additional exclusions:
This insurance does not apply:
1. To any "occurrence" which takes place after the employment
agreement between you and any off-duty law enforcement officer
expires;
2. To "bodily injury" or "property damage" arising out of the sole
negligence of any person or organization in the schedule.

Endorsement C
Amendment of Definition of Insured Contract

The following is added to Section V - Definitions:
8. Insured Contract
Paragraph G. is added:
G. A Trade-Out Agreement
Amendment of Damage to Property Exclusion - Trade Out Agreements

You and we agree that as respects liability assumed under written
agreements, commonly known as trade-out agreements, entered into by
the named insured, the following exclusion does not apply:

Section I. - Coverages, Paragraph 2, Exclusions, J. Damage to
Property, (4) Personal Property in the Care, Custody or Control of
the Insured.

Commercial Monoline
Policy Number CNA 1001094-19

**ENDORSEMENT, continued**

Endorsement D
Amendment of Pollution Exclusion

Subparagraph (1) (A) of the pollution exclusion under paragraph 2,
exclusions of bodily injury or property damage liability coverage
(Section 1 - Coverages) is replaced by the following:
F. Pollution
(1) Bodily Injury or Property Damage arising out of the actual,
alleged or threatened discharged, dispersal, seepage, migration,
release or escape of pollutants:
(A) At or from any premises, site or location which is or was at any
time owned or occupies by or rented or loaned to any insured,
however, subparagraph (A) does not apply to:
"Bodily Injury" directly caused by any of the following that occur
within a building or upon a premises any insured owns, rents,
occupies or manages:
I. Heat, smoke, fumes, soot, vapor or gases from heating equipment;

Endorsement D (continued)

II. Carbon Dioxide or Carbon Monoxide from the improper circulation
of air through the ventilation system;
III. Coolants from the air conditioning systems;
IV. Fungi or Bacteria from:
(1) The stagnation of water in any part of the heating, ventilation
or air conditioning system; or
(2) The intrusion of water or moisture into any part of the builing
or premises where it is not intended to be;
V. Fumes, vapors, or gases, except those comprised of or containing
lead, paint, varnish, sealant, adhesive or building maintenance or
cleaning materials; or
VI. Chlorine, bromine, sodium hydroxide, sodium bicarbonate soda
ash, diatomaceous earth, muriatic acid or other chemicals, compounds
or materials used for the maintenance of a swimming pool, whirlpool
or spa.

Commercial Monoline
Policy Number CNA 1001094-19

**ENDORSEMENT, continued**

Endorsement E
Action in Rem Endorsement

You and we agree that, for purpose of coverage provided by this
policy, any action "in-rem" shall in all respects be treated in the
same manner as though the action is "in-personam" against the
insured.

Additional Insured - Designated Organization
Edward J. DeBartolo Trust Number 8
Edward J. DeBartolo Trust Number 9
nka Anthony John York Grantor Trust
Edward J. DeBartolo Trust Number 10
nka Mara Denise York Grantor Trust
Edward J. DeBartolo Trust Number 11
nka Jenna Marie York Grantor Trust
John Edward York Irrevocable Trust
Anthony John York Irrevocable Trust
Mara Denise York Irrevocable Trust
Jenna Marie York Irrevocalbe Trust
San Francisco Forty-Niners Pension Trust Trustees
John and Denise York GST Trust II Two
John and Denise York GST Trust
LAD, LLC
LAD LLC II
EJD Article GST Testamentary TR-Exempt Sub-Trust 1 U/A DTD 12-06-01

Commercial Monoline
Policy Number CNA 1001094-19

**ENDORSEMENT, continued**

Additional Insured - Designated Organization (continued)

Marie Denise DeBartolo York Trustee
Anthony John York 2013 Family Trust
Jenna Marie York 2013 Family Trust
John Edward York 2013 Family Trust
Mara Denise York 2013 Family Trust
Jed & Danielle York 2013 Irrevocable Trust
Marie Denise DeBartolo York 2004 GRAT
Marie Denise DeBartolo York 2005 GRAT
Marie Denise DeBartolo York 2006 GRAT
Marie Denise DeBartolo York 2007 GRAT
Marie Denise DeBartolo York 2008 GRAT
Marie Denise DeBartolo York 2009 GRAT
Marie Denise DeBartolo York 2010 GRAT
John C York II Charitable Remainder Trust
John C York II 2003 GRAT No 1
John C York II, Trustee
        Additional Insured - Designated Organization (continued)

John E York, Trustee
Marie Denise DeBartolo York 2003 GRAT No 1 through No 5



# GREAT DIVIDE INSURANCE COMPANY <sub>SM</sub>

A North Dakota Stock Corporation

# COMMERCIAL LINES POLICY

THIS POLICY IS NOT OBTAINED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

THIS POLICY CONSISTS OF:

- Declarations;
- Common Policy Conditions; and
- One or more Coverage Parts.  A Coverage Part consists of:

   - One or more Coverage Forms; and
   - Applicable Forms and Endorsements.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
Secretary

_____
President and CEO

Administrative Office:
7233 E. Butherus Drive
Service Office:
600 E. Las Colinas Blvd.,
Suite 1400

Scottsdale, AZ 85260

Irving, TX 75039

Telephone (480) 951-0905

Telephone (800) 294-0423

Facsimile (480) 951-9730

Facsimile (866) 826-3862



*A BERKLEY COMPANY* ®

E002J (04/13)

**ACORD.  OHI O FRAUD STATEMENT**

**ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE/SHE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.**

APPLICANT'S SIGNATURE                              DATE (MM/DD/YY)

AC ORD 63 OH (9/93)                                                ⊙ **ACORD CORPORATION 1993**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 00 21 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

(Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   (a)  Any "nuclear reactor";

   (b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
IL 00 21 09 08   ☐

IL 02 44 09 07

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OHIO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the Cancellation Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy only for one or more of the following reasons, except as provided in Paragraph 6. below:

a. Nonpayment of premium;

b. Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

c. Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

d. The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

e. Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

f. Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

g. A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

3. We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

4. We will mail the notice of cancellation at least:

a. 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

b. 30 days before the effective date of cancellation, if we cancel for a reason stated in 2.b. through 2.g. above.

© ISO Properties, Inc., 2006

5. The notice of cancellation will:

   a. State the effective date of cancellation. The policy period will end on that date.

   b. Contain the date of the notice and the policy number, and will state the reason for cancellation.

6. Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

B. The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

NONRENEWAL

1. If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

2. We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

3. Proof of mailing will be sufficient proof of notice.

C. Common Policy Conditions

1. Paragraph A.2.a. of the Businessowners Common Policy Conditions is deleted.

2. Paragraph E.2. of the Cancellation Common Policy Condition in the Standard Property Policy is deleted. Paragraph E.2. is replaced by the following (unless Item A. of this endorsement applies):

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

   b. 30 days before the effective date, if we cancel for any other reason.

© ISO Properties, Inc., 2006

IL 02 44 09 07   □

IL 02 70 09 08

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraphs 2. and 3. of the Cancellation Common Policy Condition are replaced by the following:

2. All Policies In Effect For 60 Days Or Less

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

a. 10 days before the effective date of cancellation if we cancel for:

(1) Nonpayment of premium; or

(2) Discovery of fraud by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. All Policies In Effect For More Than 60 Days

a. If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

(1) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

(2) Discovery of fraud or material misrepresentation by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

(3) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

© ISO Properties, Inc., 2007

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that the:

(a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

(b) Continuation of the policy coverage would:

(i) Place us in violation of California law or the laws of the state where we are domiciled; or

(ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

b. We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph 3.a.

B. The following provision is added to the Cancellation Common Policy Condition:

7. Residential Property

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part   Farm Property   Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

a. If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in b. and c. below.

b. We may not cancel this policy solely because the first Named Insured has:

(1) Accepted an offer of earthquake coverage; or

(2) Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

c. We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This Restriction (c.) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) Capital Assets Program Coverage Form (Output Policy);

(2) Commercial Property Coverage Part Causes Of Loss   Special Form; or

(3) Farm Coverage Part   Causes Of Loss Form   Farm Property, Paragraph D. Covered Causes Of Loss   Special.

 © ISO Properties, Inc., 2007 IL 02 70 09 08

C. The following is added and supersedes any provisions to the contrary:

NONRENEWAL

1. Subject to the provisions of Paragraphs C.2. and C.3. below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. Residential Property

   This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

   Capital Assets Program (Output Policy) Coverage Part

   Commercial Property Coverage Part

   Farm Coverage Part   Farm Property   Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

   a. We may elect not to renew such coverage for any reason, except as provided in b., c. and d. below:

   b. We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

      However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

      (1) The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

(2) The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

(3) We have:

   (a) Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

   (b) Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

   the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

c. We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

d. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction (d.) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

   (1) Capital Assets Program Coverage Form (Output Policy);

   (2) Commercial Property Coverage Part Causes Of Loss   Special Form; or

   (3) Farm Coverage Part   Causes Of Loss Form   Farm Property, Paragraph D. Covered Causes Of Loss   Special.

3. We are not required to send notice of nonrenewal in the following situations:

   a. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

© ISO Properties, Inc., 2007

b. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph C.1.

c. If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

d. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

e. If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

f. If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph C.1., to re-new the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© ISO Properties, Inc., 2007

IL 02 70 09 08   □

**AI IL 11 08 92**

## LOCATION SCHEDULE

Loc # 1      7620 Market St
           Youngstown, OH  44513

Loc # 2      4929-4949 Marie P DeBartolo Way
           Santa Clara, CA  95054-1229
           Office

Loc # 3      Candlestick Park
           San Francisco, CA  94124

Loc # 4      4900 Centennial Blvd
           Santa Clara, CA  95054
           Levi's Stadium

Loc # 5      2260 Calle de Luna
           Santa Clara, CA  95054

Loc # 6      2262 Calle de Luna
           Santa Clara, CA  95054

Loc # 7      2268 Calle de Luna
           Santa Clara, CA  95054

Loc # 8      2270 Calle de Luna
           Santa Clara, CA  95054

Loc # 9      5201 Great American Pkwy Ste 525
           Santa Clara, CA  95054

Loc # 10     1750 Nantucket Circle Apt 132
           Santa Clara, CA  95054

Loc # 11     1825 Alford Ave
           Los Altos, CA  94024

Loc # 12     855 El Camino Real #102
           Palo Alto, CA  94301

Loc # 13     2855 Stevens Creek Blvd Ste B269
           Santa Clara, CA  95050

Loc # 14     865 Market Street Ste #C-251
           San Francisco, CA  94103

Loc # 15     4633-4699 Old Ironsides Drive
           Santa Clara, CA  95054

Loc # 16     5101 Patrick Henry Drive
           Santa Clara, CA  95054

Loc # 17     3032 Bunker Hill Lane
           Santa Clara, CA  95054

Loc # 18     3052 Bunker Hill Lane
           Santa Clara, CA  95054

Loc # 19     5104 Old Ironsides Drive
           Santa Clara, CA  95054

Loc # 20     3001-3005 Tasman Drive
           Santa Clara, CA  95054

Loc # 21     3945 Freedom Circle
           Santa Clara, CA  95054

```
Loc # 22    3965 Freedom Circle
            Santa Clara, CA  95054

Loc # 23    5100 Patrick Henry Drive
            Santa Clara, CA  95054

Loc # 24    3000 Mission College Blvd
            Santa Clara, CA  95054

Loc # 25    4701 Great America Pkwy
            Santa Clara, CA  95054
            Great America Park
```

AI IL 11 08 92

IL E03 AS 08 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SCHEDULE OF INSUREDS

The Insureds listed below are in addition to the Named Insured shown in the declarations.

### Insured Declarations

DeBartolo Corporation
Forty-Niner Stadium Associates, LLC
San Francisco Forty-Niners Foundation
San Francisco Forty-Niners Limited
San Francisco Forty-Niners II, Inc.
San Francisco Forty-Niners, LLC
Forty Niners Stadium LLC
Forty Niners Holdings LP
Forty Niners Football Company LLC
Forty Niners SC Stadium Company LLC
Forty Niners Stadium Management Company LLC
JMTJ LLC
San Francisco Forty Niners II, LLC
Jamestown Realty Co., LLC
Jamestown Avenue Holding, LLC
Wick-Mar, Inc.
Marie Denise DeBartolo York Foundation
Edward J. DeBartolo Memorial Scholarship Fund
John and Denise York Foundation
Score at Will, LLC
DC, LLC
DeYor Group Inc.
DeYor Enterprises LLC
DeYor Family LLC
DeYor Management LLC
Aurum Partners LLC & Aurum II Partners LLC
Appetency LLC
Xcelerated Xcellence Property Care, LLC
Curious 1 Ventures, LLC
Mockingbird Ventures, LLC
Moncare LLC
York Management LLC
Alford Ave LLC

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS
### (SINGLE LIMITS)

Policy No.                              **Issued By:**
CNA 1001094 - 19                        Great Divide Insurance Company

Named Insured and Address               Agent Name and Address      10050
                                          (806)376-4761

  DeBartolo Corporation
  7620 Market St                   Willis of Texas, Inc.
  Youngstown, OH 44513             1800 S Washington Suite 400
                                        Amarillo, TX 79105

**Commission  0.00%**

LIMITS OF INSURANCE

  General Aggregate Limit              $  2,000,000
  (Other Than Products-Completed Operations)

  Products-Completed Operations        $  2,000,000
  Aggregate Limit

  Personal & Advertising Injury Limit  $  1,000,000 Any One Person or
                                                      Organization

  Each Occurrence Limit                $  1,000,000

  Damage to Premises Rented to You Limit  $  1,000,000 Any One Premises

  Medical Expense Limit                $ Excluded


Form of Business:   Individual _  Partnership _  Joint Venture _  Trust _
                    Limited Liability Company _  Organization, including a corporation
                                             (but not including a partnership,
                                             joint venture or limited liability
                                             company) X

Retroactive Date (CG0002 Only)

Coverage  A  of this Insurance does not apply to "bodily injury" or "property damage"
which occurs before the Retroactive Date, if any, shown below:

Retroactive Date: None    (Enter Date or "None" if no Retroactive Date applies.)

Location of all Premises You Own, Rent or Occupy:


Endorsements Attached To This Coverage Form:


CG0001 (12-07), CG0067 (03-05), CG0068 (05-09), CG0224 (10-93), CG0424 (10-93),
CG0435 (12-07), CG2011 (04-13), CG2011 (01-96), CG2026 (07-04), CG2135 (10-01),
CG2138 (11-85), CG2147 (12-07), CG2165 (12-04), CG2167 (12-04), CG2170 (01-08),
CG2187 (01-07), CG2229 (11-85), CG2264 (07-98), CG2404 (05-09), CG2422 (04-13),
CG3234 (01-05), CGE01AS (08-04), CGE02AS (08-04), CGE09AS (08-04), CGE22AS (01-07),
CGE23AS (08-04), CGE24AS (08-04), CGE25AS (08-04), CGE26AS (08-04), CGE30AS (08-04),
CGE31AS (08-04), CG2152 (07-98), CL175 (02-86), CL176 (02-86).

## COMMERCIAL GENERAL LIABILITY SCHEDULE

Policy No.  1001094-19   Named Insured:  DeBartolo Corporation

| Classification | Code No. | Premium Basis | Rate | Advance Premium PR/CO | All Other |
|---|---|---|---|---|---|
| **California** | | | | | |
| Loc#  2 | | | | | |
| Security and Patrol Agencies - Products-completed operations are subject to the General Aggregate Limit. | 98751 | p) 199,500 | 57.922 | | 11,555 |
| Worldwide Coverage | 75034 | | | | 750 |
| Locations 5-8 | | | | | |
| Warehouses - private (Other than Not-For-Profit) - Products-completed operations are subject to the General Aggregate Limit. | 68706 | a) 9,000 | 117.949 | | 1,062 |
| Stores - no food or drink (Other than Not-For-Profit) - NOC | 18437 | s) 3,600,000 | 3.442 | | 12,391 |
| | | | 1.018 | 3,665 | |

Agency

**AI CD 38 10 01**

Ohio

Locations 1-4,9,10,11,15-25

Professional Football Teams
- With Stadium Liability
without Hold Harmless
including Products and/or
Completed Operations        75028      t) if any                          133,500


Special Event Liability -
Admissions - Hazard Group
III including Products
and/or Completed Operations  75022      m) 300,000      0.206              61,800


Additional Insureds         75033                                            500
    Waiver of Subrogation

Additional Fire Damage                                           750

## LIQUOR LIABILITY COVERAGE PART DECLARATIONS

Policy No.
CNA 1001094 - 19

**Issued By:**
Great Divide Insurance Company

Named Insured and Address

DeBartolo Corporation
7620 Market St
Youngstown, OH 44513

Agent Name and Address        10050
  (806)376-4761

Willis of Texas, Inc.
1800 S Washington Suite 400
Amarillo, TX 79105

**Commission   0.00%**

Policy Period: From March 1, 2014      to March 1, 2015      12:01 a.m. Standard Time
at your address shown below.

In  return  for  payment of premium and subject to all terms of this policy, we agree
with you to provide the insurance as stated in this policy.

LIMITS OF INSURANCE

Aggregate Limit                    $  1,000,000

Each Common Cause Limit            $  1,000,000

Form of Business:  _ Individual _ Partnership _ Joint Venture
                   X Organization (Other than Partnership or Joint Venture)

Business Description: Professional Football Team

Location of all Premises You Own, Rent or Occupy:

| Classification | Code No. | Premium Basis | Rate | Advance Premium |
|---|---|---|---|---|
| Restaurants, Taverns, Hotels, Motels, including package sales. | 58161 | s) if any | | Incl |

Endorsements Attached To This Coverage Form:
CG0033 (12-07).

Agency                                                                    **AI CD 56 06 92**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2006

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © ISO Properties, Inc., 2006 □

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © ISO Properties, Inc., 2006

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

 © ISO Properties, Inc., 2006

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III   Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III   Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments   Coverages A and B.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions

   This insurance does not apply to:

   a. Knowing Violation Of Rights Of Another

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   b. Material Published With Knowledge Of Falsity

      "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

   c. Material Published Prior To Policy Period

      "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

   d. Criminal Acts

      "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

   e. Contractual Liability

      "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

   f. Breach Of Contract

      "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

   g. Quality Or Performance Of Goods – Failure To Conform To Statements

      "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

   h. Wrong Description Of Prices

      "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

   i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

      "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

      However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

   j. Insureds In Media And Internet Type Businesses

      "Personal and advertising injury" committed by an insured whose business is:

      (1) Advertising, broadcasting, publishing or telecasting;

      (2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o. **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

p. **Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

1. **Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

 © ISO Properties, Inc., 2006

2. Exclusions

We will not pay expenses for "bodily injury":

a. Any Insured

To any insured, except "volunteer workers".

b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

d. Workers Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. Athletics Activities

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

g. Coverage A Exclusions

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006         □

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

    a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

        (1) "Bodily injury" or "personal and advertising injury":

            (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

            (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

            (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

            (d) Arising out of his or her providing or failing to provide professional health care services.

        (2) "Property damage" to property:

            (a) Owned, occupied or used by,

            (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

        you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

© ISO Properties, Inc., 2006

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

   © ISO Properties, Inc., 2006     □

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b. Excess Insurance

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I   Coverage A   Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

© ISO Properties, Inc., 2006

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph a. above;

      (2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

   © ISO Properties, Inc., 2006

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     (1) Power cranes, shovels, loaders, diggers or drills; or

     (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

     (a) Snow removal;

     (b) Road maintenance, but not construction or resurfacing; or

     (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

© ISO Properties, Inc., 2006

      (2)  The providing of or failure to provide warnings or instructions.

  c.  Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

  a.  Means:

      (1)  Work or operations performed by you or on your behalf; and

      (2)  Materials, parts or equipment furnished in connection with such work or operations.

  b.  Includes:

      (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2)  The providing of or failure to provide warnings or instructions.

 © ISO Properties, Inc., 2006 CG 00 01 12 07 □

COMMERCIAL GENERAL LIABILITY
CG 00 33 12 07

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V Definitions.

## SECTION I – LIQUOR LIABILITY COVERAGE

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

       (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

       (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

       No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    b. This insurance applies to "injury" only if:

       (1) The "injury" occurs during the policy period in the "coverage territory"; and

       (2) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

    c. "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

    d. "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

       (1) Reports all, or any part, of the "injury" to us or any other insurer;

       (2) Receives a written or verbal demand or claim for damages because of the "injury"; or

       (3) Becomes aware by any other means that "injury" has occurred or has begun to occur.

2. Exclusions

    This insurance does not apply to:

    a. Expected Or Intended Injury

       "Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b. Workers' Compensation And Similar Laws

       Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

© ISO Properties, Inc., 2006

c. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

   (a) Employment by the insured; or

   (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "injury".

d. Liquor License Not In Effect

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

e. Your Product

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

f. Other Insurance

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

g. War

"Injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

4. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

7. Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

 © ISO Properties, Inc., 2006 CG 00 33 12 07 □

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (a) above; or

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (a) or (b) above.

(2) "Property damage" to property:

(a) Owned or occupied by, or

(b) Rented or loaned

to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

b. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

b. Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

3. Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

SECTION IV – LIQUOR LIABILITY CONDITIONS

1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

© ISO Properties, Inc., 2006

2. Duties In The Event Of Injury, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "injury" took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any "injury".

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

   If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

   a. Primary Insurance

      This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in b. below.

   b. Method Of Sharing

      If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

      If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. Premium Audit

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

 © ISO Properties, Inc., 2006

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

SECTION V – DEFINITIONS

1. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

2. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the "injury" arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above; or

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

3. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

4. "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

5. "Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

6. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

7. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

8. "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

9. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

© ISO Properties, Inc., 2006

10. "Your product":

   a. Means:

     (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       (a) You;

       (b) Others trading under your name; or

       (c) A person or organization whose business or assets you have acquired; and

     (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

     (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

     (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

© ISO Properties, Inc., 2006

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2. Exclusions

This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

COMMERCIAL GENERAL LIABILITY
CG 00 68 05 09

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion q. of Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

2. Exclusions

This insurance does not apply to:

q. Recording And Distribution Of Material Or Information In Violation Of Law

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

B. Exclusion p. of Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability is replaced by the following:

2. Exclusions

This insurance does not apply to:

p. Recording And Distribution Of Material Or Information In Violation Of Law

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

CG 02 24 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EARLIER NOTICE OF CANCELLATION
PROVIDED BY US**

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Number of Days:  0**

(If  no  entry  appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For  any statutorily permitted reason other than nonpayment of premium, the number of days  required  for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION   Common  Policy  Condition  or  as  amended  by  an  applicable  state cancellation  endorsement,  is  increased to the number of days shown in the Schedule above.

Copyright, Insurance Services Office, Inc., 1992          CG 02 24 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

## COVERAGE FOR INJURY TO LEASED WORKERS

This endorsement modifies insurance provided under the following:

     COMMERCIAL GENERAL LIABILITY COVERAGE PART
     LIQUOR LIABILITY COVERAGE PART
     OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
     POLLUTION LIABILITY COVERAGE PART
     PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

With  respect  to the Employer's Liability exclusion (Section **I**) only, the definition of "employee" in the DEFINITIONS Section is replaced by the following:

     "Employee" does not include a "leased worker" or a "temporary worker".

Copyright, Insurance Services Office, Inc., 1992     

CG 04 35 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Limit of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 $1,000,000 | each employee aggregate | $1000 | each employee | $  500 |
| Retroactive Date: 03/01/2001 | | | | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

following is added to **Section I - Coverages:**

**COVERAGE-EMPLOYEE BENEFITS LIABILITY**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

        (1)  The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III - Limits Of Insurance**); and

        (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    b.  This insurance applies to damages only if:

        (1)  The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

        (2)  The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

        (3)  A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

    c.  A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

        (1)  When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

        (2)  When we make settlement in accordance with Paragraph **a.** above.

        A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to

have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments - Coverages **A** and **B** are replaced by Supplementary Payments - Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provisions do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II - Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

 Copyright, ISO Properties, Inc., 2006 CG 04 35 12 07

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquired or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III - Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

**a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought;

**(3)** Persons or organizations making "claims" or bringing "suits";

**(4)** Acts, errors or omissions; or

**(5)** Benefits included in your "employee benefit program".

**b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(1)** An act, error or omission; or

**(2)** A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

**a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**c.** The terms of this insurance, including those with respect to:

**(1)** Our right and duty to defend any "suits" seeking those damages; and

**(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

 Copyright, ISO Properties, Inc., 2006

apply irrespective of the application of the deductible amount.

**d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV - Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of

 Copyright, ISO Properties, Inc., 2006 CG 04 35 12 07

the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period as described below, if:

**a.** This endorsement is canceled or not renewed; or

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims"

for acts, errors or omissions thatwere first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The "employee benefit programs" insured;

**b.** Previous types and amounts of insurance;

**c.** Limits of insurance available under this endorsement for future payment of damages; and

**d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

 Copyright, ISO Properties, Inc., 2006

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

   **a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   **b.** Handling records in connection with the "employee benefit program"; or

   **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

**4.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   **a.** Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   **b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   **c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   **d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   **e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**H.** For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

**5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**18.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Copyright, ISO Properties, Inc., 2006
CG 04 35 12 07

**COMMERCIAL GENERAL LIABILITY**
**CG 20 11 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Designation of Premises (Part Leased to You):**

  Per locations on file with company

**Name of Person(s) or Organization(s) (Additional Insured):**


**Additional Premium:**


Information required to completed this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II - Who Is An Insured** is amended to include as an additional insured the person (s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

  **1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

  **2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

  However:

  **1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

  **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

  If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

  **1.** Required by the contract or agreement; or

  **2.** Available under the applicable Limits of Insurance shown in the Declarations;

  whichever is less.

  This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Copyright, Insurance Services Office, Inc., 2012 CG 20 11 04 13

CG 20 11 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**1.** Designation of Premises (Part Leased to You):

Per locations on file with company

**2.** Name of Person or Organization (Additional Insured):

**3.** Additional Premium:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section **II**) is amended to include as an insured the person or organization  shown in the Schedule but only with respect to liability arising out of the  ownership, maintenance  or  use  of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply:

**1.** Any  "occurrence"  which  takes place after you cease to be a tenant in that prem- ises.

**2.** Structural  alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1994

CG 20 11 01 96

CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Name of Additional Insured Person(s) or Organization(s)


   Blanket as required by written contract executed prior to the loss



Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or ommissions or the acts or ommissions of those acting on your behalf:

**A.** In the performance of your ongoing operation; or

**B.** In connection with your premises owned by or rented to you.

CG 21 35 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description and Location of Premises or Classification:**

    All Operations

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

    **1.** Section **I** - Coverage **C**. Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

    **2.** The following is added to Section **I** Supplementary Payments:

        **h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

 Copyright, ISO Properties, Inc, 2000

CG 21 38 11 85

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

**COVERAGE B** (Section I) does not apply and none of the references to it in the Coverage Part apply.

Copyright, Insurance Services Office, Inc., 1984     CG 21 38 11 85

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f.  Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

(a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(ii) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2. Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2003

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 08

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

COMMERCIAL GENERAL LIABILITY
CG 21 87 01 07

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. Applicability Of The Provisions Of This Endorsement

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

© ISO Properties, Inc., 2005

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

(1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

(2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

a. Physical injury that involves a substantial risk of death; or

b. Protracted and obvious physical disfigurement; or

c. Protracted loss of or impairment of the function of a bodily member or organ.

   © ISO Properties, Inc., 2005   CG 21 87 01 07   □

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

CG 22 29 11 85

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - PROPERTY ENTRUSTED

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

**Operations:**

Security and Patrol Agencies

Warehouse - cold individual storage lockers

Warehouses - miniwarehouses

As respects the operations shown in the Schedule, this insurance does not apply to "property damage" to property of others:

**1.** Entrusted to you for safekeeping; or

**2.** On premises owned by or rented to you.

Copyright, Insurance Services Office, Inc., 1984          CG 22 29 11 85

CG 22 64 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PESTICIDE OR HERBICIDE APPLICATOR COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Operations:**

Landscape Maintenance

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With  respect  to the operations shown in the Schedule, Paragraph **(1)(d)** of Exclusion **f.** of  **Section  I - Coverage A - Bodily Injury And Property Damage Liability** does not apply  if  the operations meet all standards of any statute, ordinance, regulation or license  requirement  of  any federal, state or local government which apply to those operations.

CG 24 04 05 09

## WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

Blanket as required by written contract executed prior to the loss

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **8. Transfer of Rights of Recovery Against Others To Us** of **Section IV -Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

COMMERCIAL GENERAL LIABILITY
CG 24 22 04 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF COVERAGE TERRITORY – WORLDWIDE COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following is added to Section IV – Conditions:

**Expanded Coverage Territory**

1. If a "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the "suit". We will reimburse the insured, under Supplementary Payments, for any reasonable and necessary expenses incurred for the defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we been able to exercise our right and duty to defend.

   If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such sums on the insured's behalf, we will reimburse the insured for such sums.

2. All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

3. Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Puerto Rico or Canada.

4. The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

   Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

B. The following is added to Paragraph 4.b.(1) under the Conditions section:

4. Other Insurance

   b. Excess Insurance

      This insurance is excess over:

      (c) Any of the other insurance, whether primary, excess, contingent or on any other basis:

         (i) If the insured's liability to pay damages is determined in a "suit" brought outside the United States of America (including its territories and possessions), Puerto Rico or Canada; or

         (ii) That is coverage required by law, regulation or other governmental authority in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada.

C. The definition of "coverage territory" in the Definitions section is replaced by the following:

   "Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

© Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 32 34 01 05

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under Califor-
nia law.

 ®  ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
**CG E01 AS 08 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL EXCLUSIONS, LIMITATIONS & AMENDMENTS

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **AIRCRAFT LIABILITY EXCLUSION**

Except for the provisions of paragraph g (4), Aircraft, Auto Or Watercraft, of SECTION I, COVERAGES; 2., Exclusions, this insurance does not apply to any liability arising out of the ownership, operation, maintenance, use, care, custody or control of any aircraft including aircraft chartered with or without a pilot.

B. **ASBESTOS EXCLUSION**

This insurance does not apply to any liability arising out of the manufacture, mining, sales, installation, storage, distribution or removal of asbestos products, asbestos fibers or asbestos dust.  The Company is not obligated to investigate or defend any claim or "suit" which alleges "bodily injury" or "property damage" under Coverage A or "personal injury and advertising injury" under Coverage B as a result of exposure to asbestos products, asbestos fibers or asbestos dust.

This policy will not recognize any contractual obligation of the Insured to indemnify another party because of such injury or damage.

C. **INTELLECTUAL PROPERTIES EXCLUSION (IDEAS, ADVICE, DIRECTIONS, SUGGESTIONS OR INSTRUCTIONS)**

This policy does not apply to any liability for, and there shall be no obligation to investigate or defend any claim or suit for or arising out of actual or alleged "bodily injury", "property damage" or "personal or advertising injury" as a result of "intellectual properties" produced, sold, distributed, or otherwise disseminated with the express intent to release to the public specific ideas, advice, directions, suggestions or instructions.

"Intellectual Properties" as used herein shall mean any live, printed or, regardless of the type of media

used, recorded production or presentation created for the purpose of the dissemination of ideas, advice, directions, suggestions or instructions.

D. **INTERCOMPANY LIABILITY SUITS EXCLUSION**

This insurance does not apply to any claim for damages by any Insured against another Insured because of "bodily injury", "property damage" or "personal injury and advertising injury".

E. **NOTIFICATION TO COMPANY – NEW VENTURES**

The Insured shall notify the Company before the commencement of each motion picture, television production, theatrical presentation, performance or tour started by the Insured during the policy period.

Failure of the Insured to notify the Company of these new activities in advance of their inception shall permit the Company to retroactively charge an additional premium due based on the hazards presented by the new activities.

F. **PYROTECHNICS & EXPLOSIVES - EXCLUSION**

This policy specifically excludes any and all coverage for bodily injury and/or property damage directly or indirectly caused by, arising out of or resulting from the use of any explosives, fireworks or pyrotechnic devices, except "flashboxes", unless specifically endorsed hereon.

A "flashbox" is a device that is used in shows to create visual effect along with an explosive noise.  It is induced electrically in a cylinder with no projectile, wadding or wrapping.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSIONS AND LIMITATIONS
# PERSONAL INJURY AND ADVERTISING INJURY

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that the following exclusions and definitions are added to Paragraph 2. Exclusions of COVERAGE B, PERSONAL AND ADVERTISING INJURY LIABILITY:

c. "Personal Injury and Advertising Injury" arising out of the "Field of Entertainment Business" of the Insured with respect to the following offenses:

(1) Invasion or infringement of or interference with the right of privacy or publicity, whether under common law or statutory law;

(2) Infringement of copyright or trademark whether under common law or statutory law;

(3) Libel, slander or other forms of defamation. However, this exclusion does not apply to "personal injury and advertising injury" if caused by an offense arising out of personal, guest or public appearances by the Named Insured on programs of others that are not related to the advertising, promoting, displaying or broadcasting of motion pictures, television shows, commercials, documentaries, or industrial, educational or training films, stage or theatrical productions, or any literature, including musical materials, that are produced, conducted, composed or distributed by or on behalf of the Named Insured, which are the subject of this insurance.

(4) Plagiarism, piracy, or unfair competition resulting from the alleged unauthorized use of titles, formats, ideas, characters, plots, performances of artists or performers or other material;

(5) Breach of contract, implied in fact or in law, resulting from the alleged submission, acquisition or use of program, musical or literary material used by the Insured in the insured production.

d. "Field of Entertainment Business" as defined   herein includes the following:

(1) The creation, production, publication, distribution, exploitation, exhibition, advertising and publicizing of:
   i.   Motion pictures of any kind and character,
   ii.   Television programs,
   iii.  Commercial, industrial, educational and training films,
   iv.  Phonograph records, audio and video tapes, cassettes, compact discs and digital video discs (DVDs).
   v.   Internet related publications,
   vi.  Electronic transcriptions,
   vii.  Music in sheet, manuscript or book form,
   viii. Books, magazines and other publications.

(2) The conduct of any actors, players, entertainers or musicians in any production, show appearance or performance, or exhibition except as provided for  above in paragraph c. 3).

(3) The ownership, operation, maintenance or use of radio and television broadcasting stations, CATV systems, cinemas, stage productions with living actors, and any similar exhibition or broadcast media.

(4) The ownership, operation, maintenance or use of merchandising programs, advertising or publicity material, characters or ideas; whether or not on premises of the Insured or in possession of the Insured at the time of the alleged offense.

Includes copyrighted material of ISOProperties, Inc.,
With its permission

**COMMERCIAL GENERAL LIABILITY**
**CG E09 AS 08 04**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT - AGGREGATE LIMITS OF INSURANCE
# PER CONCERT, PERFORMANCE OR EVENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The General Aggregate Limit under LIMITS OF INSURANCE (Section III) applies separately to each "concert", "performance" or "event" conducted, produced, promoted or sponsored by you.

Each "concert" means any single concert which does not exceed six hours duration, excluding setup and take down time.

Each "performance" means any single personal appearance that does not exceed six hours duration, excluding setup and take down time.

Each "event" means any single uninterrupted special event at one specific location.

COMMERCIAL GENERAL LIABILITY
CG E22 AS 01 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED INSURED**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

In addition to the Named Insured listed below, SECTION II - WHO IS AN INSURED, paragraph 4, is replaced with the following:

**4.**  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an Insured if there is no other similar insurance available to that organization.  However:

**a.**  **Unless the newly acquired or formed organization is reported to us within 180 days of its acquisition or formation**, coverage under this provision is afforded only until the **180th** day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.**  Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.**  Coverage **B** does not apply to personal and advertising injury arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### Named Insured Declarations

        DeBartolo Corporation
        Forty-Niners Stadium Associates, LLC
        San Francisco Forty-Niners Foundation
        San Francisco Forty-Niners Limited
        San Francisco Forty-Niners II, Inc.
        San Francisco Forty-Niners, LLC
        Forty Niners Stadium LLC
        Forty Niners Holdings LP
        Forty Niners Football Company LLC
        Forty Niners SC Stadium Company LLC
        Forty Niners Stadium Management Company LLC
        JMTJLLC
        San Francisco Forty Niners II, LLC
        Jamestown Realty Co., LLC
        Jamestown Avenue Holding, LLC
        Wick-Mar, Inc.
        Marie Denise DeBartolo York Foundation
        Edward J. DeBartolo Memorial Scholarship Fund
        John and Denise York Foundation
        Score at Will, LLC
        DC, LLC
        DeYor Group Inc.
        DeYor Enterprises LLC
        DeYor Family LLC
        DeYor Management LLC
        Aurum Partners LLC & Aurum II Partners LLC
        Appetency LLC
        Xcelerated Xcellence Property Care, LLC
        Curious 1 Ventures, LLC
        Mockingbird Ventures, LLC
        Moncare LLc
        York Management LLC
        Alford Ave LLC

COMMERCIAL GENERAL LIABILITY
CG E23 AS 08 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NON-OWNED WATERCRAFT EXTENSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that paragraph g.  (2) under SECTION I    COVERAGES, 2. Exclusions is replaced by the following:

(2)  A watercraft you do not own that is:

(a)  Less than 100 feet long
(b)  Not being used to carry persons or property for a charge.

COMMERCIAL GENERAL LIABILITY
CG E24 AS 08 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIBERALIZATION CLAUSE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

If, during this policy term, we revise or replace our standard policy form to provide more coverage without an additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

Includes copyrighted material of ISO Properties, Inc., with its permission.

COMMERCIAL GENERAL LIABILITY
CG E25 AS 08 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRIMARY INSURANCE – NON-CONTRIBUTORY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, paragraph 4. Other Insurance, subparagraph a., Primary Insurance is amended as follows:

a.   Primary Insurance
This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in c. below. If the Named Insured has entered into an i nsured contract requi ring that this insurance be primary and non-contributory, we will abide by that contract requirement.

Includes copyrighted material of ISO Properties, Inc.,
with its permission.

COMMERCIAL GENERAL LIABILITY
CG E26 AS 08 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# KNOWLEDGE/NOTICE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following paragraph is added to Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties In The Event Of Occurrence, Offense, Claim or Suit:

If an occurrence, offense, claim or suit reported to your Workers Compensation or Automobile carrier is determined at some later date to be subject to this insurance, the failure to initially report this claim to us will not be considered a violation of your duties as outlined in 2. a. and b. above.

Includes copyrighted material of ISO Properties, Inc.,            □
with its permission.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITATION – EXCESS FIREWORKS LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that the exclusion contained in paragraph F of CG E01 AS 08 04 pertaining to fireworks and pyrotechnic displays is amended to include coverage for bodily injury and property   damage arising  out of the use, detonation, firing or display of fireworks or other pyrotechnic devices providing:

a. Such work is done by a licensed pyrotechnician; and

b. A certificate of insurance for Commercial General Liability is obtained from the licensed pyrotechnician with a limit of not less than $1,000,000 Combined Single Limit; and

c. The Named Insured is endorsed as an Additional Insured on the pyrotechnicians Com mercial General Liability policy.

It is further agreed that:

a. This insurance is excess of any other insurance, whether collectible or not; and

b. The maximum limit of liability provided by this endorsement is $1,000,000 combined single limit excess of $1,000,000 Combined Single Limit; and

c. The limits provided by this endorsement are included in the General Aggregate of the policy.

Includes copyrighted material of ISO Properties, Inc.,
with its permission.

COMMERCIAL GENERAL LIABILITY
CG E31 AS 08 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# UNINTENTIONAL ERRORS & OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that the failure of the Named Insured to disclose all hazards existing at the effective date of the policy shall not prejudice the Named Insured with respect to the insurance afforded by this policy, provided such failure was unintentional.

Includes copyrighted material of ISO Properties, Inc.,
with its permission.

CG 21 52 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EXCLUSION – FINANCIAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" resulting from the rendering of or the failure to render financial services by any insured to others.  For the purpose of this exclusion, financial services include but are not limited to:

**1.** Planning, administering or advising on:

   **a.** Any:

      **(1)** Investment;

      **(2)** Pension;

      **(3)** Annuity;

      **(4)** Savings;

      **(5)** Checking; or

      **(6)** Individual retirement

      plan, fund or account;

   **b.** The issuance or withdrawal of any bond, debenture, stock or other securities;

**c.** The trading of securities, commodities or currencies; or

**d.** Any acquisitions or mergers;

**2.** Acting as a dividend disbursing agent, exchange agent, redemption or subscription agent, warrant or scrip agent, fiscal or paying agent, tax withholding agent, escrow agent, clearing agent, or electronic funds transfer agent;

**3.** Lending, or arranging for the lending of, money, including credit card, debit card, leasing or mortgage operations or activities or interbank transfers;

**4.** Repossessing of real or personal property from a borrower or acting as an assignee for the benefit of creditors;

**5.** Checking or reporting of credit;

**6.** Maintaining of financial accounts or records;

**7.** Tax planning, tax advising or the preparation of tax returns; or

**8.** Selling or issuing travelers checks, letters of credit, certified checks, bank checks or money orders.

Copyright, Insurance Services Office, Inc., 1997

QUICK REFERENCE
COMMERCIAL GENERAL LIABILITY COVERAGE PART

READ YOUR POLICY CAREFULLY

The Commercial General Liability Coverage Part in your policy consists of Declarations, a Coverage Form (either CG 00 01 or CG 00 02), Common Policy Conditions and Endorsements, if applicable.   Following is a Quick Reference indexing of the principal provisions contained in each of the components making up the Coverage Part, listed in sequential order, except for the provisions in the Declarations which may not be in the sequence shown.

DECLARATIONS
Named Insured and Mailing Address
Policy Period
Description of Business and Location of Premises
Limits of Insurance
Forms and Endorsements applying to the Coverage Part at time of issue

COVERAGE FORM (CG 00 01 or CG 00 02)
SECTION I   COVERAGES
Coverage A   Bodily Injury and Property Damage Liability
Insuring Agreement
Exclusions
Coverage B   Personal and Advertising Injury Liability
Insuring Agreement
Exclusions
Coverage C   Medical Payments
Insuring Agreement
Exclusions
Supplementary Payments
SECTION II   WHO IS AN INSURED
SECTION III   LIMITS OF INSURANCE
SECTION IV   COMMERCIAL GENERAL LIABILITY CONDITIONS
Bankruptcy
Duties in the Event of Occurrence, Claim or Suit
Legal Action Against Us
Other Insurance
Premium audit
Representations
Separation of Insureds
Transfer of Rights of Recovery Against Others to Us
When We Do Not Renew (applicable to CG 00 02 only)
Your Right to Claim and   Occurrence   Information (applicable to CG 00 02 only)
SECTION V   EXTENDED REPORTING PERIODS (applicable to CG 00 02 only)
SECTION VI   DEFINITIONS (SECTION V IN CG 00 01)

COMMON POLICY CONDITIONS (IL 00 17)
Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

ENDORSEMENTS  (If Any)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.   Copyright, Insurance Services Office, Inc., 1982, 1984, 1986.

CL 175 (2-86) UNIFORM PRINTING AND SUPPLY, INC.

QUICK REFERENCE
LIQUOR LIABLITY COVERAGE PART

READ YOUR POLICY CAREFULLY

The Liquor Liability Coverage Part in your policy consists of Declarations, a coverage Form (Either CG 00 33 or CG 00 34), Common Policy Conditions and Endorsements, if applicable.  Following is a Quick Reference indexing of the principal provisions contained in each of the components making up the Coverage Part, listed in sequential order, except for the provisions in the Declarations which may not be in the sequence shown.

DECLARATIONS
    Named Insured and Mailing Address
    Policy Period
    Limits of Insurance
    Description of Business and Location of Premises
    Forms and Endorsements applying to the Coverage Part at time of issue

COVERAGE FORM  (CG 00 33 or CG 00 34)
    SECTION I    LIQUOR LIABILITY COVERAGE
        Insuring Agreement
        Exclusions
        Supplementary Payments
    SECTION II    WHO IS AN INSURED
    SECTION III    LIMITS OF INSURANCE
    SECTION IV    LIQUOR LIABILITY CONDITIONS
        Bankruptcy
        Duties in the Event Of An Injury, Claim or Suit
        Legal Action Against Us
        Other Insurance
        Premium audit
        Representations
        Separation of Insureds
        Transfer of Rights of Recovery Against Others to Us
        When We Do Not Renew (applicable to CG 00 34 only)
        Your Right to Claim and   Injury   Information (applicable to CG 00 34 only)
    SECTION V    EXTENDED REPORTING PERIODS (applicable to CG 00 34 only)
    SECTION VI    DEFINITIONS (SECTION V IN CG 00 33)

COMMON POLICY CONDITIONS (IL 00 17)
    Cancellation
    Changes
    Examination of Your Books and Records
    Inspections and Surveys
    Premiums
    Transfer of Your Rights and Duties under this Policy

ENDORSEMENTS  (If Any)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1985, 1986

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act, as amended, (the "Act"), is included in your policy. You are hereby notified that under the Act the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury - in concurrence with the Secretary of State, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

A. The portion of your annual premium that is attributable to coverage for acts of terrorism as defined in the Act through 12/31/14 is:     $ 18,978.00.
B. The portion of your annual premium that is attributable to coverage for acts of terrorism, as defined in the Act, for the period beyond 12/31/14 is estimated to be $ 3,669.00 and does not include any charges for the portion of losses covered by the United States government under the Act. (Refer to the paragraph below).

**Possibility Of Additional Or Return Premium.** The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Act. The federal program established by the Act is scheduled to terminate at the end of 12/31/14 unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** of above may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of the coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** above and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

Name of Insurer:  Great Divide Insurance Company
Policy Number:    CNA 1001094-19

Includes copyright material of the National Association of Insurance Commissioners, used by permission.
TRIPRA 02 (13)

# EXHIBIT C

## AGREEMENT FOR THE PERFORMANCE OF SERVICES
## BY AND BETWEEN
## STADIUM MANAGER
## AND
## ELITE SHOW SERVICES, INC.

### PREAMBLE

This Agreement for the Performance of Services ("Agreement") is made and entered into on this 1st day of April, 2014, ("Effective Date") by and between ELITE SHOW SERVICES, INC., a corporation with its principal place of business located at 2878 Camino Del Rio South, Ste. 260, San Diego, CA 92108 ("Contractor"), and FORTY NINERS STADIUM MANAGEMENT COMPANY LLC, a Delaware limited liability company ("Stadium Manager"), with its principal place of business located at 4949 Marie P. DeBartolo Way. Santa Clara, CA 95054. Stadium Manager and Contractor may be referred to individually as a "Party" or collectively as the "Parties" or the "Parties to this Agreement."

### RECITALS

A.    The CITY OF SANTA CLARA, a municipal corporation ("City") and the SANTA CLARA STADIUM AUTHORITY, a joint exercise of powers entity, created through Government Code sections 6500 et seq. (the "Authority"), are parties to that certain Ground Lease dated as of March 28, 2012, as amended by that certain First Amendment to Ground Lease (Stadium Site) (as the same may be further amended from time to time, the "Ground Lease"), pursuant to which the Authority leases certain real property from the City upon which the Authority is developing and constructing [has developed and constructed] a new multi-purpose stadium (the "Stadium").

B.    The Authority and FORTY NINERS SC STADIUM COMPANY, LLC, a Delaware limited liability company ("StadCo"), are parties to that certain Amended and Restated Stadium Lease Agreement dated as of March 28, 2012as amended and restated as of June 19, 2013 (as the same may be further amended from time to time, the "Stadium Lease"), pursuant to which StadCo is granted the right during the term of the Stadium Lease to use and occupy the Stadium for the operation of an NFL franchise, subject to, and on the basis of, the terms, covenants and conditions set forth in the Stadium Lease.

C.    StadCo and FORTY NINERS FOOTBALL COMPANY LLC, a Delaware limited liability company ("Team") are parties to a certain Sublease Agreement dated as of March 28, 2012, as amended and restated as of June 19, 2013 (as the same may be further amended from time to time, the "Team Sublease"), pursuant to which, during the term of the Team Sublease, the Team shall play its NFL home games at the Stadium, subject to, and on the basis of, the terms, covenants and conditions set forth in the Team Sublease.

D.    The Authority, StadCo, and Stadium Manager are parties to a certain Stadium Management Agreement effective as of March 28, 2012, as amended by that certain First Amendment to Stadium Management Agreement dated as of November 13, 2012, that certain Second Amendment to Stadium Management Agreement dated as of May 9,

2013, and that certain Third Amendment to Stadium Management Agreement dated as of June 19, 2013 (as the same may be, further amended from time to time, the "Stadium Management Agreement"), pursuant to which the Stadium Manager will manage the operation of the Stadium year-round on behalf of the Authority and StadCo for the term and on the basis specified in the Stadium Management Agreement.

E.    Pursuant to the Stadium Management Agreement, the Stadium Manager is required to operate a security force to safeguard the Stadium and users of the Stadium and, accordingly, desires to secure professional services more fully described in this Agreement, at Exhibit A, entitled "Scope of Services" (the "Services").

F.    Contractor represents that it, and its subcontractors, if any, have the professional qualifications, expertise, necessary licenses and desire to provide the Services of the quality and type which meet objectives and requirements of Stadium Manager.

G.    In accordance with the Stadium Management Agreement, the Stadium Manager is authorized to enter into this Agreement on behalf of the Authority and StadCo to engage Contractor to provide the Services; and, accordingly, the Stadium Manager and Contractor desire to enter into this Agreement whereby Contractor shall have the right to provide, and Contractor agrees to provide, the Services, subject to the terms and conditions of this Agreement, the Ground Lease, the Stadium Lease and the Stadium Management Agreement.

H.    In furtherance of Contractor's selection by the Authority and StadCo as indicated herein, and the authorization given to the Stadium Manager to enter into this Agreement, the Stadium Manager and Contractor desire to enter into this Agreement whereby Contractor shall have the right to provide, and Contractor agrees to provide, the Services, subject to the terms and conditions of this Agreement, the Ground Lease, Stadium Lease and the Stadium Management Agreement.

The Parties agree as follows:

### AGREEMENT PROVISIONS

### 1.    EMPLOYMENT OF CONTRACTOR.

Stadium Manager hereby employs Contractor to perform the Services. Stadium Manager shall pay for all such Services which are consistent with the terms of this Agreement.

### 2.    SERVICES TO BE PROVIDED.

A.    Except as and to the extent expressly set forth in this Agreement, Contractor shall furnish all Services necessary to satisfactorily complete the work required by Stadium Manager at Contractor's own risk and expense. The Recitals above and all of the exhibits referenced in this Agreement are attached and are incorporated by this reference.

B.    IF OFFICE OR STORAGE SPACE TO BE PROVIDED TO CONTRACTOR: Stadium Manager shall provide, or cause to be provided, during the Term

designated office and storage space within the Stadium for use by Contractor. The location of such office and storage space shall be in the sole discretion of Stadium Manager, and Stadium Manager may direct that the office and storage space be moved to a new location within the Stadium from time to time as it deems necessary.

C.    Except as expressly provided in Section 10 below, Contractor shall be responsible for all costs and expenses incurred in performing the Services, including costs and expenses of maintaining, repairing and replacing any furniture, fixtures, equipment, or other tangible property and all applicable taxes, staffing (including all managerial and Event staff, if applicable), and training. As described in greater detail in Section 7.F hereof, Contractor agrees to fully abide by all sustainability and reuse programs established for or applicable to the Stadium, as each may be modified from time to time following the Effective Date.

D.    Without limiting the generality of any other provision in this Agreement, Contractor's provision of the Services shall be subject to the reasonable prior approval of Stadium Manager acting in conjunction with Contractor, including but not limited to staffing and the manner of Contractor's performance. Contractor shall not offer exclusivity to any supplier without the prior written approval of Stadium Manager.

E.    If at any time, Contractor fails or is otherwise prevented from providing all or any portion of the Services whether due to a suspension or termination of any licenses or permits or otherwise, then, in addition to any other right of Stadium Manager, Stadium Manager shall have the right, in its sole discretion, without the payment of any kind to Contractor, to provide through any available means the Services, or any portion thereof, until such time as Contractor has resumed its provision of the Services. In the event Stadium Manager exercises its rights pursuant to this Section, Contractor shall, and shall cause its employees and the Management Team (as defined in Section 10.D below), to cooperate and assist Stadium Manager in providing the Services.

F.    Notwithstanding the foregoing, and subject to any restrictions imposed by the Authority, including pursuant to the Stadium Lease and Stadium Management Agreement, the Stadium Manager and its designated agents reserve the right of access to all areas that Contractor is permitted to access, use and occupy hereunder for purposes of operating, inspecting, maintaining and repairing the Stadium (and all improvements therein or thereon) and for the purpose of determining whether the terms, covenants and conditions contained in this Agreement are being fully and faithfully observed and performed by Contractor. Use of any space or property that Contractor is permitted to access, use and occupy hereunder for purposes other than the operations to be conducted under this Agreement, without prior written approval of Stadium Manager in its sole discretion, is prohibited. Contractor shall not interfere with any other contractor, licensee or employee of the Authority, Stadium Manager or any other person working at the Stadium.

**3.    COMMENCEMENT OF SERVICES.**

Contractor shall begin providing the Services upon receipt of written Notice to Proceed from Stadium Manager . Notice to Proceed shall be deemed to have occurred three (3) calendar days after it has been deposited in the regular United States mail. Contractor shall complete the Services within the time limits set forth in the Scope of Services or as mutually determined in writing by the Parties.

**4.    QUALIFICATIONS OF CONTRACTOR – STANDARD OF WORKMANSHIP.**

A.    Contractor represents and maintains that it has the necessary expertise in the professional calling necessary to perform the Services, and its duties and obligations, expressed and implied, contained in this Agreement, and Stadium Manager expressly relies upon Contractor's representations regarding its skills and knowledge. Contractor shall perform such Services and duties and obligations in conformance to and consistent with the professional standards of a specialist in the same discipline in the State of California.

B.    The plans, designs, specifications, estimates, calculations, reports, and other documents furnished under Exhibit A shall be of a quality acceptable to Stadium Manager. To be accepted as provided under this Agreement, any such work shall be a product of neat appearance and shall be well-organized, technically and grammatically correct, and checked, and shall identify the maker and checker. The minimum standard of appearance, organization, and content of the drawings shall be that used by Stadium Manager for similar projects.

**5.    TERM OF AGREEMENT.**

Unless otherwise set forth in this Agreement or unless this paragraph is subsequently modified by a written amendment to this Agreement, the term of this Agreement (the "Term") shall begin on the Effective Date of this Agreement and terminate on March 31, 2017, provided however, if this Agreement extends beyond a single fiscal year, the Term for subsequent fiscal years shall be conditioned upon approval of the Authority budget for the applicable fiscal year that includes the amounts due under this Agreement. The Stadium Manager shall have the option, in its sole discretion, to extend the Term for ____N/A_____ (___) additional _____N/A_____ (___) year periods by notifying Contractor in writing of Stadium Manager's desire to exercise said option(s) not more than one hundred twenty (120) days prior to the expiration of the then-current Term.

**6.    WARRANTY.**

Contractor expressly warrants that all Services covered by this Agreement shall be fit for the purpose intended, shall be free from defect, and shall conform to the specifications, requirements, and instructions upon which this Agreement is based. Contractor agrees to promptly replace or correct any incomplete, inaccurate, or defective Services at no further cost to Stadium Manager when defects are due to the negligence, errors, or omissions of Contractor. If Contractor fails to promptly correct or replace Services, Stadium Manager may make corrections or replace Services and charge Contractor for the cost incurred by Stadium Manager.

7.    **PERFORMANCE OF SERVICES.**

A.    Contractor shall perform all Services in an efficient and expeditious manner and shall work closely with and be guided by Stadium Manager. Contractor shall be as fully responsible to Stadium Manager for the acts and omissions of its subcontractors, and of persons either directly or indirectly employed by them, as Contractor is for the acts and omissions of persons directly employed by it. Contractor will perform all Services in a safe manner and in accordance with all Applicable Laws and safety regulations, the policies and procedures issued by the Stadium Manager relating to the Services, the general operating procedures of the Authority, and any and all other applicable rules, regulations, policies and directives established or implemented by the Authority and/or Stadium Manager, the designees of either of them, or the NFL, from time to time, including scheduling rules, regulations and policies, related to the use or operation of the Stadium (collectively, "Stadium Policies"). The term "Applicable Laws" as used in this Agreement shall mean any statute, law, treaty, rule, code, ordinance, regulation, permit, interpretation, certificate or order, whether now or hereafter existing, of any Governmental Authority, or any judgment, decision, decree, injunction, writ, order or like action of any court, arbitrator or other Governmental Authority, whether now or hereafter existing. The term "Governmental Authority" as used in this Agreement shall mean any federal, state, local or foreign governmental entity, authority or agency, court, tribunal, regulatory commission or other body, whether legislative, judicial or executive (or a combination or permutation thereof), and any arbitrator to whom a dispute has been presented under Applicable Laws or by agreement of the Parties with an interest in such dispute.

B.    Contractor shall at all times maintain a sufficient number of qualified personnel at the Stadium and, if applicable, the Related Facilities (e.g., offsite parking areas) for the performance of all of Contractor's obligations under this Agreement. Contractor shall cause the members of the Management Team to attend meetings to be scheduled by Stadium Manager at the Stadium from time to time during the Term to review the performance of the Services and to implement Stadium Manager's reasonable recommendations and directives for improving such performance.

C.    Contractor's authorized personnel who are scheduled to work at events at the Stadium ("Events") shall be provided with ingress to and egress from the Stadium through a gate or gates designated for such purpose by Stadium Manager, without charge, during all days on which Events are held and at all other times necessary to enable Contractor to prepare for Events and fulfill its responsibilities under this Agreement. Contractor shall be bound by and comply with all rules, policies and procedures relating to security and access rights, including requirements related to screening and identification of Contractor's personnel, established from time to time by Stadium Manager. Nothing herein contained shall be held to limit or qualify the right of the Authority or Stadium Manager to a free and unobstructed use, occupation and control of the Stadium and ingress and egress for itself, its lessees and the public.

D.    Contractor shall obtain on or before the Commencement Date and shall thereafter maintain throughout the Term, at its cost and in its name, all licenses and permits necessary for the performance of the Services and any and all other licenses and permits required to be obtained by Contractor by the terms of the Stadium Lease. Stadium Manager shall cooperate with Contractor in connection with applications submitted by Contractor for any and all licenses and permits and renewals thereof. Contractor shall not submit any application for a permit or license without first providing Stadium Manager a reasonable opportunity to review it. Contractor shall furnish Stadium Manager with copies of such licenses and permits and renewals thereof as are physically maintained at the Stadium, and all other licenses or permits otherwise required under Applicable Laws or this Agreement, and shall surrender all licenses and permits to Stadium Manager upon termination of this Agreement.

E.    In the event that Contractor fails to obtain or maintain in full force and effect any material license or permit necessary for the performance of the Services, including upon a suspension applicable to an Event or revocation thereof, (a) Stadium Manager shall have the right (but no obligation) to perform or have another Person perform the applicable obligation without compensation to Contractor and, whether or not Stadium Manager exercises that right or its termination rights, Contractor shall be responsible to Stadium Manager for the loss of income and all other damages, including consequential and special damages, suffered by Stadium Manager as the result of Contractor's breach of this Agreement, including any loss of income; and (b) Contractor shall be considered in material breach of this Agreement, and Stadium Manager may, in addition to any other rights or remedies it may have, immediately terminate this Agreement.

F.    Contractor shall comply in all respects with the Santa Clara Business and Commercial Recycling Program, as the same shall be amended from time to time, and shall, in partnership with Stadium Manager, prepare and implement a plan (the "**Waste Reduction and Recycling Plan**") that targets 100% diversion of solid waste from all Events, including composting or other diversion of compostable organics. Contractor shall train its employees in the methods and objectives of the Waste Reduction and Recycling Plan and shall direct and cause its employees to not dispose of or discharge recyclables, compostables, waste, garbage, refuse or Hazardous Substances in any area in or outside the Stadium other than in areas specifically designated therefor. Contractor shall be responsible for expeditiously collecting, separating, recycling, bagging and delivering recyclables, compostables, trash and garbage generated within the Stadium Complex, and Contractor shall cause its employees to deposit such recyclables, compostables, trash and garbage in appropriate containers or equipment in the locations specified by Stadium Manager, whereupon Stadium Manager shall be responsible for the further delivery and ultimate disposal of such recyclables, compostables, trash and garbage. In addition, Contractor shall separate, compact and recycle the trash generated by Events on non-Event days. Contractor shall take all action necessary to: (i) ensure that all such recyclables, compostables, trash and garbage are placed in bags and/or the appropriate receptacles or other containers (which receptacles and containers shall be

provided by Contractor) that are durable for transport and not easily susceptible to breakage or leakage, (ii) notify Stadium Manager when the centralized Stadium recyclable, compostable and garbage receptacles are full and need to be emptied, (iii) prevent recyclables, compostables and trash from piling up around the outside of the receptacles and from using the Stadium receptacles in lieu of transferring the recyclables, compostables and trash to the required locations as described herein and (iv) ensure that recyclables, compostables and trash do not spill out prior to or during transport. Contractor agrees to and is fully committed to participating in the separation and recycling of refuse in the Stadium and to minimize the amount of non-recyclable and non-compostable refuse to be removed from the Stadium. All recyclable, compostable, trash and garbage receptacles within the areas controlled by Contractor shall be provided by Contractor and shall be cleaned and sanitized by Contractor in accordance with the standards reasonably set from time to time by the Authority and/or Stadium Manager, to ensure a consistently high standard of sanitation meeting or exceeding the standards set by the Santa Clara County Public Health Department and/or the City. Contractor will comply with all federal, state and local recycling and composting requirements and such recycling and composting programs implemented from time to time by the Authority and/or Stadium Manager and all rules and regulations applicable to the Stadium's adherence to, and/or certification by, the Leadership in Energy and Environmental Design (LEED) Green Building Rating System. Contractor shall indemnify Stadium Manager and make Stadium Manager whole for any out of pocket costs incurred by Stadium Manager which are solely attributable to any negligence or intentional act or omission of Contractor or any of its employees with respect to the recycling or trash removal program, including the expense of returned or rejected recyclable, compostable and trash removals due to mixing or contaminating the trash flow in violation of Applicable Laws or specific directives provided to Contractor in writing as part of the Stadium's sustainability and recycling, composting or trash removal programs. Stadium Manager will determine the type, appearance and location of the recyclable, compostable and trash receptacles.

G.    Contractor agrees not to use Hazardous Substances at the Stadium, except in accordance with Applicable Laws, and agrees to indemnify, defend, and hold the Indemnified Parties harmless for all Losses (as defined in Section 22.A below) arising out of its use, generation or storage of Hazardous Substances at the Stadium.

## 8.   MONITORING OF SERVICES.

Stadium Manager may monitor the Services performed under this Agreement to determine whether Contractor's operations conform to Stadium operating policies and directives and to the terms of this Agreement. Stadium Manager may also monitor the Services to be performed to determine whether the Services are being conducted in accordance with applicable Stadium Policies, National Football League requirements, and Applicable Laws.

**9.**    **CORRECTION OF SERVICES.**

Contractor agrees to correct any incomplete, inaccurate, or defective Services at no cost to Stadium Manager, when such defects are due to the negligence, errors, or omissions of Contractor. If any action of Contractor constitutes a breach, Stadium Manager may terminate this Agreement pursuant to the provisions described herein.

**10.**    **RESPONSIBILITY OF CONTRACTOR.**

A.    Contractor shall be responsible for the professional quality, technical accuracy, and coordination of the Services furnished by it under this Agreement. Neither Stadium Manager's review, acceptance, nor payments for any of the Services required under this Agreement shall be construed to operate as a waiver of any rights under this Agreement or of any cause of action arising out of the performance of this Agreement and Contractor shall be and remain liable to Stadium Manager in accordance with Applicable Laws for all damages to Stadium Manager caused by Contractor failure to perform any of the Services furnished under this Agreement.

B.    Any acceptance by Stadium Manager of plans, specifications, construction contract documents, reports, diagrams, maps, and other material prepared by Contractor shall not in any respect absolve Contractor from the responsibility Contractor has in accordance with customary standards of good professional practice in compliance with Applicable Laws.

C.    Contractor shall comply and otherwise abide by, all emergency and security procedures and protocols of the Stadium Manager, the Authority, the City, the Team, the NFL and promoters of Events as the Stadium Manager or such other Persons shall adopt from time to time. Such procedures and protocols may include, without limitation, (i) employee pat-down and screening, (ii) presentment by Contractor's employees of identification cards or badges issued by Stadium Manager, which may include reporting criteria such as bar codes, "Mag Stripes", "RFID" or other identifier systems; (iii) restricting access to certain parts of the Stadium to specified employees of Contractor as reasonably approved by the Stadium Manager (with respect to security clearance standards); and/or (iv) conduct by Contractor, at its sole expense, of Team-specified minimum background and such other security screening checks on all of Contractor's employees as the Stadium Manager shall request from time to time, which checks may vary as to job function.

D.    <u>Personnel.</u>

i.    Contractor shall hire, employ, train, supervise and discipline any and all persons necessary to provide the Services in accordance with the terms of this Agreement and shall use its best efforts to ensure that its employees continually practice the high standards of safety, courtesy and service customarily followed in the conduct of a first-class operation. Contractor shall use its best efforts to select qualified, competent and trustworthy employees. Any and all persons who furnish services under this

Agreement, whether or not employed by Contractor prior to the Effective
Date, are exclusively employees, subcontractors and/or non-affiliated third
parties employed by Contractor and are not employees of the Authority,
the City, StadCo or Stadium Manager. Such persons furnishing services
under this Agreement shall be subject to appearance standards mutually
acceptable to the parties hereto and as permitted by Applicable Laws, and
shall wear, at all times while working at the Stadium, neat and clean
uniforms provided by Contractor and approved by Stadium Manager.
Such uniforms shall bear such lettering and insignia (including the name
and logo of the Stadium, the Stadium naming rights sponsor, if required,
and the location of the employee's assignment (*e.g.*, a Club Area or Suite
area)) as Stadium Manager may require and shall be of a design
reasonably satisfactory to Stadium Manager. Contractor shall cause its
employees to conduct themselves in a professional and courteous manner,
and not to unreasonably disturb or interfere with Events. Contractor shall
at all times maintain accurate records of the names, addresses,
employment history and other legal identification of those to whom
Contractor issues employee badges, uniforms or other identifying items to
ensure the proper identification and legal working status of Contractor's
employees at the Stadium. Contractor shall conduct such background and
other security screening checks on its employees as Stadium Manager
shall reasonably request from time to time and shall not knowingly hire
any person who has been previously terminated by the Authority, StadCo,
Stadium Manager or any of their respective Affiliates or contractors.
Upon Stadium Manager's request, and so long as any such action shall not
be contrary to law, Contractor shall immediately remove from the Stadium
any employee, agent, contractor or invitee of Contractor and permanently
revoke such person's access credentials.

ii.      Contractor shall employ the Management Team, identified in clause (v) of
this Section 10.D below, on a full-time, year round basis. Contractor shall
cause the members of the Management Team to be at the Stadium during
all Events that Stadium Manager requires the Management Team to attend
and during reasonable business hours. All changes in the Management
Team shall require the prior written approval of Stadium Manager.
Contractor shall, within fifteen (15) business days of the removal of a
Management Team member, provide Stadium Manager with the resumes
of not fewer than three (3) suitable candidates to replace the removed
employee. The Management Team shall, on and following the Effective
Date and during the Term, be exclusively responsible for the provision of
services under this Agreement and shall hold no job-related
responsibilities relating to any other venue or site without Stadium
Manager's prior written approval.

iii.     Contractor shall conduct regularly scheduled employee training programs
appropriate to the Services provided, including any programs specifically
requested by Stadium Manager, for all of its employees working in the
Stadium (the "Employee Training Programs"). The Employee Training

Programs will be mandatory for all employees, agents and any subcontractors of Contractor and, at a minimum, will include customer service, guest interaction, security procedures and specific job skills training, and will be conducted in such frequency as may be approved or directed by Stadium Manager. Contractor shall cause all Employee Training Programs to be periodically reviewed (no less frequently than annually) and updated to the extent necessary to maintain the standard of service requested by Stadium Manager. All employees of Contractor shall also be required to attend such policy and procedures training sessions as may be held by the Stadium Manager, as well as the Stadium orientation tour and training conducted by the Stadium Manager. Contractor shall not permit any employee, agent or subcontractor to work at an Event prior to his or her completion of the prescribed training sessions and Employee Training Programs.

iv.    Contractor shall promptly notify Stadium Manager upon voluntary or involuntary termination of employment of its employees or contractors and ensure that each such terminated individual is denied further access to the Stadium. In no event shall the Authority, the City, StadCo or Stadium Manager be liable, and Contractor shall indemnify, protect, and hold the Authority, the City, StadCo and Stadium Manager harmless, for Contractor's record keeping (or lack of record keeping), including the legal identification and working status of Contractor's employees and subcontractors, or for any other matters relating to Contractor's employees or subcontractors.

v.    The individuals, and such other individuals as the Stadium Manager may approve, are the "Management Team" for purposes of this Agreement are listed on Exhibit F, entitled "Management Team."

## 11.    COMPENSATION AND PAYMENT.

A.    In consideration for Contractor's complete performance of the Services, Stadium Manager shall pay Contractor for all materials provided and services rendered by Contractor the amount(s) set forth in Exhibit B, entitled "CONTRACTOR COMPENSATION AND FEES."

B.    Contractor will bill Stadium Manager on a monthly basis for Services provided by Contractor during the preceding month, subject to verification by Stadium Manager. Except as otherwise expressly provided in Exhibit B, Stadium Manager will pay Contractor within forty-five (45) days of Stadium Manager's receipt of invoice.

## 12.    TERMINATION OF AGREEMENT.

A.    In addition to any other rights or remedies Stadium Manager may have, Stadium Manager may terminate this Agreement by written notice to Contractor if:
(i) Contractor fails to correct to the reasonable satisfaction of Stadium Manager any condition created or controlled by Contractor that, in Stadium Manager's

reasonable judgment, poses a hazardous condition to occupants of the Stadium
Complex, *[ALTERNATIVE:* any of the Related Facilities (*e.g.,* offsite parking
areas),] or any portion thereof, within twenty-four (24) hours after receipt of
written notice from Stadium Manager; (ii) Contractor fails to perform any
material obligation under this Agreement and such failure continues unremedied
for a period of ten (10) days after receipt of written notice from Manager of the
particular failure to perform (or thirty (30) days in the case that a remedy has
commenced but cannot reasonably be accomplished in ten days); (iii) Contractor
is placed into bankruptcy either voluntarily or involuntarily (and such involuntary
proceeding is not dismissed within sixty (60) days), becomes financially
insolvent, takes the benefit of any present or future insolvency statute, makes a
general assignment for the benefit of creditors, or consents to the appointment of a
receiver, trustee, or liquidator of all or substantially all of its property; (iv)
Contractor transfers or permits a transfer of this Agreement in violation of
Section 133; (v) Contractor fails to obtain and/or maintain required licenses and
permits under Section 7.D; or (vi) Contractor fails to work cooperatively and in
good faith with the Authority, Stadium Manager, any of their respective Affiliates
or any of subcontractors of any of the foregoing. Contractor and Stadium
Manager acknowledge and agree that termination of this Agreement by Stadium
Manager pursuant to this Section 11.A shall be "for cause."

B.    Upon the termination or expiration of this Agreement, (1) Contractor shall
      immediately surrender possession of the Related Facilities, if any (including any
      and all leasehold and other improvements therein), uniforms, equipment (and
      related manuals and software) to Stadium Manager, (2) Contractor shall
      immediately assign to Stadium Manager or its designee(s) all right, title and
      interest of Contractor in and to all items purchased by Contractor in connection
      with the Services (including uniforms and equipment), (3) Contractor shall make
      all payments required to be made by Contractor under this Agreement, (4) to the
      extent permitted by Applicable Laws, Contractor shall immediately surrender
      possession of and assign to Stadium Manager all permits and licenses acquired by
      Contractor in compliance with Section 7.D and any Applicable Laws, and (5) all
      matters, rights and liabilities existing on the date of termination between the
      parties hereto shall be determined as of such termination date (except as described
      above), and discharged as promptly as possible thereafter, including any known
      claims for damages either party may have against the other for breach of the terms
      and conditions hereof. Any such surrender shall require delivery of possession in
      good condition, reasonable and ordinary wear and tear excepted and otherwise in
      compliance with the terms of this Agreement. Notwithstanding any termination
      or expiration of this Agreement, all liabilities and obligations of the parties will
      survive until they are fully satisfied.

C.    If the Stadium is destroyed or otherwise rendered unusable for more than thirty
      (30) days for any reason (a "Casualty Event"), Stadium Manager shall give
      Contractor a notice within ninety (90) days after the Casualty Event stating that
      whether the Authority intends to rebuild or restore the Stadium. If the notice
      states that the Authority will not rebuild or restore the Stadium, this Agreement
      shall be terminated. If the notice states that the Authority intends to rebuild or

restore the Stadium, the Parties' obligations hereunder shall be abated during that period. If such notice states that the Authority reasonably believes that it will take longer than two (2) years to restore or rebuild the Stadium or, if a shorter amount of time, such amount of time is longer than the remainder of the Term, either party shall have the option of terminating this Agreement by written notice to the other at any time within one hundred and eighty (180) days after Stadium Manager gives such notice, and such termination shall be effective one hundred twenty (120) days after the other party's receipt of such notice. Contractor shall not be entitled to any monetary or other damages or compensation from Stadium Manager in the event of a Casualty Event.

## 13. NO ASSIGNMENT OR SUBCONTRACTING OF AGREEMENT.

A. Stadium Manager and Contractor bind themselves and their successors and assigns to all covenants of this Agreement. This Agreement shall not be assigned or transferred by Contractor without the prior written approval of Stadium Manager. Contractor shall not hire subcontractors without express written permission from Stadium Manager.

B. Stadium Manager may sell, assign, pledge and otherwise transfer or encumber (each, a "**transfer**") this Agreement and any or all of its rights and obligations hereunder to any other Person, including any source of or guarantor or insurer of financing or any trustee, collateral agent or other Person appointed in connection with such financing (each, a "**Manager Assignee**"), whether by security agreement, collateral assignment, transfer or otherwise; provided, that such transfer shall not relieve Stadium Manager of its obligations under this Agreement unless such Manager Assignee assumes in writing Stadium Manager's obligations under this Agreement. Upon reasonable prior notice from Stadium Manager, Contractor shall make any payments due hereunder to such Manager Assignee and shall execute and deliver any documents that Stadium Manager or any Manager Assignee may reasonably request to acknowledge and confirm that upon any such transfer, this Agreement will remain in full force and effect, will continue to be a legal, valid and binding obligation of Contractor enforceable in accordance with its terms (subject to applicable bankruptcy or insolvency laws and general principles of equity), and that (to the extent accurate and correct) neither Contractor, nor to Contractor's knowledge, Stadium Manager is in material breach or violation of this Agreement.

C. Contractor acknowledges and agrees that, in the event the Stadium Management Agreement is terminated for any reason, the Authority and StadCo shall, in accordance with the Stadium Lease, employ a replacement manager for the Stadium, who shall, following the effective date of such employment, constitute the "Stadium Manager" for all purposes under this Agreement, provided, however, that for any period of time before a replacement manager is appointed, this Agreement may be assigned to the Authority or StadCo.

14.    **NO THIRD PARTY BENEFICIARY.**

This Agreement shall not be construed to be an agreement for the benefit of any third party or parties, except for the Authority, StadCo, and Team, and no other third party or parties shall have any claim or right of action under this Agreement for any cause whatsoever.

15.    **INDEPENDENT CONTRACTOR.**

Contractor and all person(s) employed by or contracted with Contractor to furnish labor and/or materials under this Agreement are independent contractors and do not act as agent(s) or employee(s) of Stadium Manager, the Authority or StadCo. Contractor has full rights, however, to manage its employees in their performance of Services under this Agreement. All liabilities that may arise as a result of Contractor's status as an employer shall be borne exclusively by Contractor, including liability relating to payments required to be made under, and documents to be filed with respect to, the Federal Insurance Contribution Act and the Federal Unemployment Tax Act or any similar federal, state, city or local legislation or other Applicable Laws. Contractor is not authorized to bind Stadium Manager, the Authority or StadCo to any contracts or other obligations.

16.    **NO PLEDGING OF STADIUM MANAGER'S CREDIT.**

Under no circumstances shall Contractor have the authority or power to pledge the credit of the Stadium Manager or any other of the Indemnified Parties or incur any obligation in the name of such Persons. Contractor shall save and hold harmless the Authority, StadCo, Stadium Manager, their respective Affiliates, and their respective officers, employees, boards and commissions for expenses arising out of any unauthorized pledges of credit by Contractor under this Agreement.

17.    **CONFIDENTIALITY OF MATERIAL.**

All ideas, memoranda, specifications, plans, manufacturing procedures, data, drawings, descriptions, documents, discussions, or other information developed or received by or for Contractor and all other written information submitted to Contractor in connection with the performance of this Agreement shall be held confidential by Contractor and shall not, without the prior written consent of Stadium Manager, be used for any purposes other than the performance of the Services nor be disclosed to an entity not connected with performance of the Services. Nothing furnished to Contractor which is otherwise known to Contractor shall be deemed confidential. Notwithstanding the above, the Contractor acknowledges that the Authority is a California public entity that is subject to the California Public Records Act. Information disclosed to the Authority regarding the Contractor's Services in connection with the performance of this Agreement may be subject to public disclosure in accordance with the Public Records Act.

18.    **USE OF STADIUM MANAGER NAME OR EMBLEM.**

Contractor shall have no right to use the trademarks, symbols, trade names or other intellectual property of the Authority, Stadium Manager or their respective Affiliates, or Stadium tenants or their Affiliates or other Event performers directly or indirectly, in

connection with any production, promotion, service or publication, without the written approval of Stadium Manager.

**19.   OWNERSHIP OF MATERIAL.**

All material, including information developed on computer(s), which shall include, but not be limited to, data, sketches, tracings, drawings, plans, diagrams, quantities, estimates, specifications, proposals, tests, maps, calculations, photographs, reports, and other material developed, collected, prepared, or caused to be prepared under this Agreement shall be the property of Stadium Manager, but Contractor may retain and use copies thereof. Stadium Manager shall not be limited in any way or at any time in its use of said material. However, Contractor shall not be responsible for damages resulting from the use of said material for work other than the Services, including, but not limited to, the release of this material to third parties.

**20.   RIGHT OF STADIUM MANAGER TO INSPECT RECORDS OF CONTRACTOR.**

Stadium Manager, through its authorized employees, representatives, or agents shall have the right during the term of this Agreement and for three (3) years from the date of final payment for Services, to audit the books and records of Contractor for the purpose of verifying any and all charges made by Contractor in connection with Contractor compensation under this Agreement, including termination of Contractor. Contractor agrees to maintain sufficient books and records in accordance with generally accepted accounting principles to establish the correctness of all charges submitted to Stadium Manager. Any expenses not so recorded shall be disallowed by Stadium Manager.

Contractor shall submit to Stadium Manager any and all reports concerning its performance under this Agreement that may be requested by Stadium Manager in writing. Contractor agrees to assist Stadium Manager in meeting Stadium Manager's reporting requirements with respect to Contractor's Services hereunder.

**21.   FAIR EMPLOYMENT.**

Contractor shall not discriminate against any employee or applicant for employment because of race, color, creed, national origin, gender, sexual orientation, age, disability, religion, ethnic background, or marital status, in violation of Applicable Law.

**22.   HOLD HARMLESS/INDEMNIFICATION.**

A.   Contractor shall indemnify, defend and hold harmless the Authority, Stadium Manager and the Additional Indemnitees, and their respective officers, directors, managers, members, partners, owners and employees ("**Indemnified Parties**") from and against all losses, costs, suits, actions, claims, damages, amounts paid in settlement, liabilities, costs and expenses, including reasonable attorneys' fees (collectively, "**Losses**"), resulting to, imposed upon, asserted against or incurred by any of them (including in any action between the parties) in connection with or arising out of (i) any breach by Contractor under this Agreement, (ii) any activity, inactivity, work or thing done or permitted by Contractor or its employees, agents

or contractors in or upon the Stadium or Related Areas, including the performance of the Services, or (iii) any injury or damage to any Person or to the property of any Person caused by any action or omission of Contractor or its employees, agents or contractors.

B.     If any claim, demand, action or proceeding is made or commenced by any third party (a **"Third Party Claims"**) against any Indemnified Party, the Indemnified Party shall give Contractor prompt notice thereof; the failure to give such notice shall not affect the liability of Contractor under this Agreement except to the extent the failure materially and adversely affects the ability of Contractor to defend the Third Party Claim. Contractor shall have the right to assume the defense and resolution of the Third Party Claim, provided that (i) the Indemnified Party shall have the right to participate in the defense of the Third Party Claim at its own expense through counsel of its choice (control of the defense will remain with Contractor), (ii) Contractor shall not consent to the entry of any judgment or enter into any settlement that would require any act or forbearance on the part of the Indemnified Party or which does not unconditionally release the Indemnified Party from all liability in respect of the Third Party Claim or would otherwise bring dishonor or disrepute upon Authority, Stadium Manager, any of their respective Affiliates, without the prior written consent of the Indemnified Party, and (iii) the Indemnified Party may undertake the defense of the Third Party Claim, at Contractor's expense, if Contractor fails to (A) assume the defense within ten (10) business days after notice from the Indemnified Party or (B) diligently prosecute the defense.

## 23.   INSURANCE REQUIREMENTS.

During the term of this Agreement, and for any time period set forth in Exhibit C, Contractor shall purchase and maintain in full force and effect, at no cost to Stadium Manager insurance policies with respect to employees and vehicles assigned to the performance of Services under this Agreement with coverage amounts, required endorsements, certificates of insurance, and coverage verifications as defined in Exhibit C.

## 24.   AMENDMENTS.

This Agreement may be amended only with the written consent of both Parties.

## 25.   INTEGRATED DOCUMENT.

This Agreement represents the entire agreement between Stadium Manager and Contractor. No other understanding, agreements, conversations, or otherwise, with any representative of Stadium Manager prior to execution of this Agreement shall affect or modify any of the terms or obligations of this Agreement. Any verbal agreement shall be considered unofficial information and is not binding upon Stadium Manager.

**26.    SEVERABILITY CLAUSE.**

In case any one or more of the provisions in this Agreement shall, for any reason, be held invalid, illegal, or unenforceable in any respect, it shall not affect the validity of the other provisions, which shall remain in full force and effect.

**27.    WAIVER.**

Contractor agrees that waiver by Stadium Manager of any one or more of the conditions of performance under this Agreement shall not be construed as waiver(s) of any other condition of performance under this Agreement.

**28.    NOTICES.**

All notices to the Parties shall, unless otherwise requested in writing, be sent to Stadium Manager addressed as follows:

> Levi's® Stadium Manager
> Attention:    Jim Mercurio
> Address:      4949 Marie D. Bartolo Way
>               Santa Clara, CA 95054

> With a copy to:
> Attention:    Legal Affairs
> Address:      4949 Marie D. Bartolo Way
>               Santa Clara, CA 95054

And to Contractor addressed as follows:
> Attention:    Jon Kontopuls
> Address:      5201 Great America Parkway, Suite 320
>               Santa Clara, CA 95054

If notice is sent via email, a signed, hard copy of the material shall also be mailed. The workday the email was sent shall control the date notice was deemed given if there is a computer-generated confirmation of receipt returned to the sender on the date of transmission. An email transmitted after 1:00 p.m. on a Friday shall be deemed to have been transmitted on the following Monday.

**29.    CAPTIONS.**

The captions of the various sections, paragraphs, and subparagraphs of this Agreement are for convenience only and shall not be considered or referred to in resolving questions of interpretation.

## 30.    LAW GOVERNING CONTRACT AND VENUE.

This Agreement shall be governed and construed in accordance with the statutes and laws of the State of California. The venue of any suit filed by either Party shall be vested in the state courts of the County of Santa Clara, or if appropriate, in the United States District Court, Northern District of California, San Jose, California.

## 31.    DISPUTE RESOLUTION.

A.    Unless otherwise mutually agreed to by the Parties, any controversies between Contractor and Stadium Manager regarding the construction or application of this Agreement, and claims arising out of this Agreement or its breach, shall be submitted to mediation within thirty (30) days of the written request of one Party after the service of that request on the other Party.

B.    The Parties may agree on one mediator. If they cannot agree on one mediator, the Party demanding mediation shall request the Superior Court of Santa Clara County to appoint a mediator. The mediation meeting shall not exceed one day (eight (8) hours). The Parties may agree to extend the time allowed for mediation under this Agreement.

C.    The costs of mediation shall be borne by the Parties equally.

D.    For any contract dispute, mediation under this section is a condition precedent to filing an action in any court. In the event of mediation which arises out of any dispute related to this Agreement, the Parties shall each pay their respective attorney's fees, expert witness costs, and cost of suit through mediation only. In the event of litigation, the prevailing Party shall recover its reasonable costs of suit, expert's fees, and attorney's fees. If mediation does not resolve the dispute, the Parties agree that the matter shall be litigated in a court of law, and not subject to the arbitration provisions of the Public Contracts Code.

## 32.    COMPLIANCE WITH ETHICAL STANDARDS.

Contractor shall:

A.    Read Exhibit D, entitled "ETHICAL STANDARDS FOR CONTRACTORS SEEKING TO ENTER INTO AN AGREEMENT WITH STADIUM MANAGER"; and,

B.    Execute Exhibit E, entitled "AFFIDAVIT OF COMPLIANCE WITH ETHICAL STANDARDS."

## 33.    CONFLICT OF INTERESTS.

This Agreement does not prevent either Party from entering into similar agreements with other parties. To prevent a conflict of interest, Contractor certifies that to the best of its knowledge, no Stadium Manager, StadCo, Team, Authority, or City officer, employee, or authorized representative has any financial interest in the business of Contractor and that

no person associated with Contractor has any interest, direct or indirect, which could conflict with the faithful performance of this Agreement. Contractor is familiar with the provisions of California Government Code Section 87100 and following, and certifies that it does not know of any facts which would violate these code provisions. Contractor will advise Stadium Manager if a conflict arises.

## 34.    SUPPLEMENTAL PROVISIONS

The Parties acknowledge and accept the terms and conditions of this Agreement as evidenced by the following signatures of their duly authorized representatives. It is the intent of the Parties that this Agreement shall become operative on the Effective Date.

*[Signatures continued on next page]*

**IN WITNESS WHEREOF,** the Parties have caused this agreement for the performance of services to be executed by their duly appointed representatives as of the date first above written.

**STADIUM MANAGER:**

**FORTY NINERS STADIUM MANAGEMENT COMPANY LLC,**
a Delaware limited liability company

By: _____
Name: Cipora Herman
Title:   Chief Financial Officer

4949 Marie P. DeBartolo Way
Santa Clara, CA  95054
Telephone: (408) 562-4949
Fax Number: (408) 727-4937

**CONTRACTOR:**

**ELITE SHOW SERVICES, INC.**
A CALIFORNIA CORPORATION

By: _____
(Signature of Person executing the Agreement on behalf of Contractor)
Name:   JOHN KONTOPULS
Title:   PRESIDENT & CEO
Local Address:   5201 GREAT AMERICA PARKWAY
SUITE 320
SANTA CLARA, CA   95054
Telephone (619) 574-1589
Fax: (619)   574-1588

Agreement for the Performance of Services/Elite Show Services, Inc.                    Page 19 of 19

**AGREEMENT FOR THE PERFORMANCE OF SERVICES**
**BY AND BETWEEN**
**STADIUM MANAGER,**
**AND**
**ELITE SHOW SERVICES, INC.**

### ADDENDUM ONE

### DEFINITIONS

The following terms shall have the meanings set forth below:

**Affiliate:**  shall mean any Person directly or indirectly controlling or controlled by or under direct or indirect common control with a Person.  For purposes of this definition, "control" when used with respect to any entity means the power to direct the management and policies of such entity, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

**Additional Indemnitees:**  shall mean the Authority's Affiliates (including without limitation, the Authority's Board of Directors, the City, its City Council, and all City or Agency commissions, officers, employees, volunteers and agents), the Bayshore North Project Enhancement Authority, the Successor Agency to the Santa Clara Redevelopment Agency, StadCo and its Affiliates, the Team and any Additional Team (*i.e.*, an additional NFL franchise that plays its "home" games at the Stadium) (and their respective Affiliates), Manager's Affiliates (if not any of the previously mentioned Persons), each other tenant of the Stadium and each Event promoter, and any mortgagee, bond trustee or other financial institution from time to time holding a lien or indenture upon Manager's interest in the Stadium, the Stadium Lease or the Stadium Management Agreement.

**Default Rate:**  shall mean a rate per annum equal to the lesser of (i) fifteen percent (15.0%) and (ii) the maximum non-usurious rate permitted by applicable law, with adjustments in that varying rate to be made on the same date as any change in that rate.

**Fiscal Year:**  shall mean the twelve (12) month period commencing April 1 of each year after the execution of this Agreement, except that the first Fiscal Year will commence on the Commencement Date of the Stadium Lease and end on the next following March 31.  If this Agreement expires or terminates on a date other than March 31 of a particular year, there shall be a partial last Fiscal Year ending on the date of such termination.

**Hazardous Substance:**  shall mean, as of any date: (a) any petroleum or petroleum products, flammable explosives, radioactive materials, asbestos in any form that is or could become friable, urea formaldehyde foam insulation, and transformers or other equipment that contain dielectric fluid containing polychlorinated biphenyls (PCBs); (b) any chemicals or other materials or substances which as of such date are defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," "extremely hazardous wastes," "restricted hazardous wastes," "toxic substances," "toxic pollutants," "contaminants,"

"infectious wastes," "pollutants" or words of similar import under any environmental law; and (c) any other chemical or other material or substance, exposure to which or use of which as of such date is prohibited, limited or regulated under any environmental law.

**Person:**  shall mean any individual, corporation, partnership, limited liability company, association, trust or other entity whatsoever

## AGREEMENT FOR THE PERFORMANCE OF SERVICES
## BY AND BETWEEN
## STADIUM MANAGER
## AND
## ELITE SHOW SERVICES, INC.

## EXHIBIT A

## SCOPE OF SERVICES

1.      Security Services. For each event at the Stadium, Contractor shall provide the number of personnel that Stadium Manager requests for each of the following roles. The parties shall meet and confer as to appropriate staffing levels for each event at least one (1) week prior to such event, provided that Stadium Manager shall have the sole discretion to determine appropriate staffing numbers for each role at each event. All personnel provided by Contractor shall be certified by the California Bureau of Security and Investigative Services.

   a.   Management. Contractor shall employ the Management Team listed in Exhibit G and such other managers as are required to manage and operate the Services at the highest standards of employee competency, conduct and integrity. All managers and supervisors shall be Trained Crowd Manager (TCM) and National Incident Management System (NIMS) certified and shall have received at least eight hours of training on supervisory duties.

   b.   Fixed Post Security Officers. Contractor shall provide "Fixed Post Security Officers" who shall (i) provide fixed post security duties at check points (*e.g.*, vehicular check points, pedestrian check points), (ii) communicate with patrons effectively and courteously, including in using radios and managing confrontation; (iii) effectuate Stadium security policies (*e.g.*, credential system, evacuation plans).

   c.   Screening Security Officers. Contractor shall provide "Screening Security Officers" who shall (i) screen all persons entering the Stadium in accordance with Stadium policies; (ii) have achieved success in a documented training course in screening techniques; (iii) communicate with patrons effectively and courteously, including in using radios and managing confrontation; (iv) effectuate Stadium security policies (*e.g.*, credential system, evacuation plans).

   d.   Intervention Security Officers. Contractor shall provide "Intervention Security Officers" who shall (i) intervene and resolve any security situation within the Stadium, including conflicts and crowd control; (ii) have achieved success in a documented training course in screening techniques; (iii) communicate with patrons effectively and courteously, including in using radios and managing confrontation; (iv) effectuate Stadium security policies (*e.g.*, credential system, evacuation plans); (v) and have documented training

history in (A) safe restraint and arrest techniques; and (B) Stadium operating procedures and evacuation plan.

2.    Trainings. In addition to the above-listed role-specific trainings, Contractor shall pay one-half of the cost (as determined by Stadium Manager) for all personnel to be certified in the following trainings:

    a.   NFL Best Practices.

    b.   49ers Services Training.

    c.   Techniques for Effective Alcohol Management (TEAM).

    d.   Conflict Management. (Conflict Management training shall be provided by Contractor through any documented conflict management training.)

3.    Assessments. Contractor acknowledges that it shall be audited on a random basis at as many events per year as Stadium Manager determines in its sole discretion. External security audits shall be conducted by a professional firm in the industry. Contractor shall reimburse Stadium Manager for the cost of external security audits, provided that the cost per audit shall not exceed five thousand dollars ($5,000). In the event that an external security audit grades Contractor at less than ninety percent (90%), then Contractor shall additionally reimburse Stadium Manager a penalty of five percent (5%) of its fee for such event. Such reimbursements shall be due within sixty (60) days.

4.    Radios. Contractor shall rent radios from Stadium Manager at a cost of $20.00 per radio and shall follow Stadium Manager's instructions regarding radio frequencies.

**AGREEMENT FOR THE PERFORMANCE OF SERVICES
BY AND BETWEEN
STADIUM MANAGER
AND
ELITE SHOW SERVICES, INC.**

**EXHIBIT B**

**CONTRACTOR COMPENSATION AND FEES**

Compensation and fees shall be billed at the following rates:

| | |
|---|---|
| Event Director | $51.57/hour |
| Event Coordinator | $39.21/hour |
| Event Manager | $37.71/hour |
| Area Director | $36.16/hour |
| Supervisor | $34.62/hour |
| Security Officers | $27.50/hour |
| Off-Duty Law Enforcement Officer | $45.00/hour |

**AGREEMENT FOR THE PERFORMANCE OF SERVICES**
**BY AND BETWEEN**
**STADIUM MANAGER**
**AND**
**ELITE SHOW SERVICES, INC.**

**EXHIBIT C**

**INSURANCE REQUIREMENTS**

At all times during the term hereof, Contractor shall keep and maintain in full force and effect
the following types of insurance coverage and/or bonds:

1. Commercial general liability insurance, including property damage, against liability for
   personal injury, bodily injury, death and damage to property occurring in or about the
   property in the amount of One Million Dollars ($1,000,000) per occurrence and Five
   Million Dollars ($5,000,000) in the aggregate.

2. Automobile liability in the amount of One Million Dollars ($1,000,000) with respect to
   owned, hired and non-owned vehicles.

3. Workers compensation insurance, as required by applicable law.

4. Employer's liability in the amount of One Million Dollars ($1,000,000) each accident,
   One Million Dollars ($1,000,000) each employee, by disease, and One Million Dollars
   ($1,000,000) policy aggregate by disease.

5. Employment practices liability with limits of Five Million Dollars ($5,000,000) including
   third party coverage.

6. Crime insurance including employee dishonesty covering all of Contractor's agents,
   contractors, managers and other employees in the amount of Five Hundred Thousand
   Dollars ($500,000).

7. Professional liability insurance covering claims arising out of errors and omissions and/or
   professional services to be provided by Contractor, in the amount of Five Million Dollars
   ($5,000,000) each occurrence including contractual liability coverage, with all coverage
   retroactive to the earlier of the date of agreement or commencement of Contractor's
   services.

8. Cyber/Privacy liability insurance with limits of Three Million Dollars ($3,000,000)
   including coverage for the breach of information or data belonging to the client or the
   client's employees, patrons, associates or contractors, or other proprietary information or
   data that is of a private nature to the client or deemed so by a governmental agency.
   Coverage for the cost to correct, release from hostage any data or network housing
   information relevant to the client or the loss of income resulting from the unauthorized

access or tampering of client or vendor's database or network that results in financial damages or business interruption to the client.

9.  Umbrella or excess liability insurance in the amount of Ten Million Dollars ($10,000,000) providing excess coverage over general liability, auto liability, garage liability and employer's liability specified above.

The above stated limits may be achieved by a combination of primary and excess/umbrella coverage. Any deductible or self-insured retention amounts are the sole responsibility of the Contractor. Any deductibles or self-insured retention amounts must be disclosed to Stadium Manager. Contractor agrees to indemnify Stadium Manager for any loss it may incur as a result of the deductible or self-insured retention.

At Stadium Manager's request from time to time (and in any event not less than 15 (fifteen) days prior to the expiration dates of any expiring policies or bonds furnished by Contractor), Contractor shall furnish to Stadium Manager certified copies or duplicate originals of all policies of insurance and bonds then maintained by Stadium Manager hereunder, or a certificate supplied by each such insurer and surety showing that the insurance and bonds required hereunder are in full force and effect and showing the limits thereof and that all such policies and bonds contain the provisions and endorsements required hereunder.

All insurance policies and bonds required to be maintained by Contractor shall be issued by insurers or sureties (as the case may be) reasonably satisfactory to client, authorized to do business in the state of California and having an AM Best rating and financial size category of A-/VII or better. All policies of the vendor shall be (i) primary and non-contributing with respect to any policies carried by client; (ii) with respect to liability insurance only (except employer's liability), a provision including Stadium Manager, Santa Clara Stadium Authority, Forty Niners SC Stadium Company LLC and Forty Niners Football Company LLC as Additional Insured; (iii) a waiver by the insurer of any right to subrogate against Stadium Manager (iv) a severability of interest or endorsement; (v) a provision that the insurer will not cancel or change the coverage provided by such without giving the Stadium Manager thirty (30) days' prior written notice; and (vi) general liability be an "occurrence form" policy. Any policy of insurance required to be carried by Contractor that names Stadium Manager as Additional Insured shall not be subject to a deductible or self-insured retention, it being the intent of the parties that such insurance shall fully and completely insure such additional insured entities for all loss or expense.

**AGREEMENT FOR THE PERFORMANCE OF SERVICES
BY AND BETWEEN
STADIUM MANAGER
AND
ELITE SHOW SERVICES, INC.**

**EXHIBIT D**

**ETHICAL STANDARDS FOR CONTRACTORS SEEKING TO ENTER INTO AN
AGREEMENT WITH STADIUM MANAGER**

**Termination of Agreement for Certain Acts.**

A.     Stadium Manager may, at its sole discretion, terminate this Agreement in the event any
one or more of the following occurs:

   1.     If a Contractor[1] does any of the following:

      a.     Is convicted[2] of operating a business in violation of any Applicable Law;

      b.     Is convicted of a crime punishable as a felony involving dishonesty[3];

      c.     Is convicted of an offense involving dishonesty or is convicted of fraud or
a criminal offense in connection with: (1) obtaining; (2) attempting to
obtain; or, (3) performing a public contract or subcontract;

      d.     Is convicted of any offense which indicates a lack of business integrity or
business honesty which seriously and directly affects the present
responsibility of a Stadium Manager contractor or subcontractor; and/or,

      e.     Made (or makes) any false statement(s) or representation(s) with respect to
this Agreement.

   2.     If fraudulent, criminal or other seriously improper conduct of any officer, director,
shareholder, partner, employee or other individual associated with Contractor can

---

[1]     For purposes of this Agreement, the word "Consultant" (whether a person or a legal entity) also refers to
"Contractor" and means any of the following: an owner or co-owner of a sole proprietorship; a person who controls
or who has the power to control a business entity; a general partner of a partnership; a principal in a joint venture; or
a primary corporate stockholder [i.e., a person who owns more than ten percent (10%) of the outstanding stock of a
corporation] and who is active in the day to day operations of that corporation.

[2]     For purposes of this Agreement, the words "convicted" or "conviction" mean a judgment or conviction of a
criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a
conviction entered upon a plea of nolo contendere within the past five (5) years.

[3]     As used herein, "dishonesty" includes, but is not limited to, embezzlement, theft, forgery, bribery,
falsification or destruction of records, making false statements, failure to pay tax obligations, receiving stolen
property, collusion or conspiracy.

be imputed to Contractor when the conduct occurred in connection with the individual's performance of duties for or on behalf of Contractor, with Contractor's knowledge, approval or acquiescence. Contractor's acceptance of the benefits derived from the conduct shall be evidence of such knowledge, approval or acquiescence.

B.     Stadium Manager may also terminate this Agreement in the event any one or more of the following occurs:

     1.     Stadium Manager determines that Contractor no longer has the financial capability[4] or business experience[5] to perform the terms of, or operate under, this Agreement; or

     2.     If Stadium Manager determines that Contractor fails to submit information, or submits false information, which is required to perform or be awarded a contract with Stadium Manager, including, but not limited to, Contractor's failure to maintain a required State-issued license, failure to obtain a Stadium Manager business license (if applicable), or failure to purchase and maintain bonds and/or insurance policies required under this Agreement.

C.     In the event a prospective Contractor (or bidder) is ruled ineligible (debarred) to participate in a contract award process or a contract is terminated pursuant to these provisions, Contractor may appeal the action to the Authority by filing a written request with the Authority Secretary within ten (10) days of the notice given by Stadium Manager to have the matter heard. The matter will be heard within thirty (30) days of the filing of the appeal request with the Authority Secretary. Contractor will have the burden of proof on the appeal. Contractor shall have the opportunity to present evidence, both oral and documentary, and argument.

---

[4]     Contractor becomes insolvent, transfers assets in fraud of creditors, makes an assignment for the benefit of creditors, files a petition under any section or chapter of the federal Bankruptcy Code (11 U.S.C.), as amended, or under any similar law or statute of the United States or any state thereof, is adjudged bankrupt or insolvent in proceedings under such laws, or a receiver or trustee is appointed for all or substantially all of the assets of Contractor.

[5]     Loss of personnel deemed essential by Stadium Manager for the successful performance of the obligations of Contractor to Stadium Manager.

## AGREEMENT FOR THE PERFORMANCE OF SERVICES
## BY AND BETWEEN
## STADIUM MANAGER
## AND
## ELITE SHOW SERVICES, INC.

### EXHIBIT E

### AFFIDAVIT OF COMPLIANCE WITH ETHICAL STANDARDS

I, _JOHN KONTOPULS_ being first duly sworn, depose and state I am _PRESIDENT & CEO_ of Elite Show Services, Inc. and I hereby state that I have read and understand the language, entitled "Ethical Standards" set forth in Exhibit D. I have the authority to make these representations on my own behalf or on behalf of the legal entity identified herein. I have examined appropriate business records, and I have made appropriate inquiry of those individuals potentially included within the definition of "Contractor" contained in Ethical Standards at footnote 1.

Based on my review of the appropriate documents and my good-faith review of the necessary inquiry responses, I hereby state that neither the business entity nor any individual(s) belonging to said "Contractor" category [i.e., owner or co-owner of a sole proprietorship, general partner, person who controls or has power to control a business entity, etc.] has been convicted of any one or more of the crimes identified in the Ethical Standards within the past five (5) years.

The above assertions are true and correct and are made under penalty of perjury under the laws of the State of California.

ELITE SHOW SERVICES, INC.

A California Corporation

By: _____
      Signature of Authorized Person or Representative

Name: _JOHN KONTOPULS_

Title: _PRESIDENT & CEO_

### NOTARY'S ACKNOWLEDGMENT TO BE ATTACHED

Please execute the affidavit and attach a notary public's acknowledgment of execution of the affidavit by the signatory. If the affidavit is on behalf of a corporation, partnership, or other legal entity, the entity's complete legal name and the title of the person signing on behalf of the legal entity shall appear above. Written evidence of the authority of the person executing this affidavit on behalf of a corporation, partnership, joint venture, or any other legal entity, other than a sole proprietorship, shall be attached.

## ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of __San Diego__ } SS.

On __March 21, 2014__, before me, __Gretchen Hazlett Notary Public__,
DATE

personally appeared __John Kontopuls__, who proved to me on the

basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

GRETCHEN HAZLETT
COMM. #1893021
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires Jun 18, 2014

WITNESS my hand and official seal.

NOTARY'S SIGNATURE

PLACE NOTARY SEAL IN ABOVE SPACE

━━━━━ **OPTIONAL INFORMATION** ━━━━━

The information below is optional. However, it may prove valuable and could prevent fraudulent attachment of this form to an unauthorized document.

**CAPACITY CLAIMED BY SIGNER (PRINCIPAL)**

☐ INDIVIDUAL
☐ CORPORATE OFFICER _____
☐ PARTNER(S)                    TITLE(S)
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____
_____
_____

**SIGNER (PRINCIPAL) IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)
_____
_____
_____

**DESCRIPTION OF ATTACHED DOCUMENT**

__agreement to perform services__
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
OTHER

RIGHT
THUMBPRINT
OF
SIGNER

Top of thumbprint here

**AGREEMENT FOR THE PERFORMANCE OF SERVICES**
**BY AND BETWEEN**
**STADIUM MANAGER**
**AND**
**ELITE SHOW SERVICES, INC.**

**EXHIBIT F**

**MANAGEMENT TEAM**

Brian Foxe, Project Director

Ken Kawachi, Event Director

Greg Feldman, Security Event Manager

Joel Bryden, Off-Duty Officer Event Manager

Ed Pecinovsky, Senior Risk Manager

Scottie Warren, Event Coordinator