1  MARIA S. QUINTERO (SBN 223629)
   mquintero@hinshawlaw.com
2  HINSHAW & CULBERTSON LLP
   One California Street, 18th Floor
3  San Francisco, CA 94111
   Telephone:    415-362-6000
4  Facsimile:    415-834-9070

5  Attorneys for Defendant GREAT DIVIDE INSURANCE COMPANY

6

7

8                  UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                     SAN JOSE DIVISION

11 FIRST MERCURY INSURANCE COMPANY, )   Case No. 5:16-cv-02114 LHK
                                     )
12              Plaintiff,           )   **DEFENDANT GREAT DIVIDE**
                                     )   **INSURANCE COMPANY'S**
13         vs.                       )   **MEMORANDUM OF POINTS AND**
                                     )   **AUTHORITIES IN SUPPORT OF ITS**
14 GREAT DIVIDE INSURANCE COMPANY;   )   **MOTION TO DISMISS PURSUANT TO**
   and DOES 1 - 50, inclusive,       )   **FRCP12(B)(6), OR IN THE**
15                                   )   **ALTERNATIVE, MOTION TO STAY**
                                     )
16              Defendants.          )   **DATE:  SEPTEMBER 1, 2016**
                                     )   **TIME: 1:30 P.M.**
17                                   )   **DEPT: 8 / 4th FLOOR**
                                     )
18                                   )   Complaint Filed:  April 21, 2016
                                     )
19 _____ )

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ..................................................................................................... 5

II. STATEMENT OF ISSUES TO BE DECIDED [N.D. L.R. 7-2(B)(3)] ................... 7

III. FACTUAL BACKGROUND ................................................................................... 7

  A.  The Ongoing Patel Personal Injury Action .................................................... 7

    1.  The Patel Action Complaint ................................................................. 7

    2.  The Cross-Complaints Against Elite Show and Rebollero .............................. 9

  B.  The First Mercury Complaint For Declaratory Relief ............................... 10

IV. ARGUMENT ......................................................................................................... 11

  A.  Legal Standard ............................................................................................ 11

    1.  Motion To Dismiss ............................................................................ 11

    2.  Motion to Stay A Declaratory Relief Action ................................... 12

  B.  Plaintiff Fails To State A Claim Upon Which Declaratory Relief Can Be
      Granted ......................................................................................................... 12

    1.  First Mercury Owes Broad Additional Insured Coverage Under The
        Terms Of Its Additional Insured Endorsement And Coverage Under
        The Endorsement Is Not Limited By The Additional Insured's Alleged
        Fault ...................................................................................................... 12

    2.  The Additional Insured Coverage Is Primary To And Non-
        Contributing With The Great Divide Policy ................................... 18

    3.  Liquor Liability Coverage Is Irrelevant And Inapplicable ............................ 20

    4.  This Court Does Not Have Jurisdiction Over Any Alternative Dispute
        Resolution Process In The Underlying Patel Action, Therefore
        Plaintiff's Second Cause Of Action Must Be Dismissed ............................... 22

  C.  If The Declaratory Relief Action Cannot Be Dismissed, It Should Be Stayed
      Pending Resolution Of The Underlying Action ......................................... 23

V.  CONCLUSION ..................................................................................................... 24

2

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acceptance Ins. v. Syufy*
  69 Cal.App.4th 321 (1999) ........................................................14, 15, 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................11

*Brillhart v. Excess Ins. Co.*,
  316 U.S. 491 (1942)........................................................................12, 23

*Chevron U.S.A. Inc. v. Bragg Crane & Rigging Co.*
  180 Cal.App.3d 639 (1986) ..................................................................23

*Cory v. Shierloh*,
  29 Cal.3d 430 (1981) ...........................................................................21

*Government Employees Ins. Co. v. Dizol*,
  133 F.3d 1220 (9th Cir. 1998) ..............................................................12

*Hartford Casualty Ins. Co. v. Travelers Indemnity Co.*
  110 Cal.App.4th 710 (2003) ............................................................16, 19

*Hartford v. Travelers*,
  100 Cal.App.4th at 727 .........................................................................20

*J.N.S. Inc. v. Indiana*,
  712 F.2d 303 (7th Cir. 1983) ................................................................22

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*,
  312 U.S. 270 (1942) .............................................................................22

*Md. Cas. Co. v. Witherspoon*,
  993 F.Supp.2d 1178 (C.D. Cal.2014) ................................................23, 24

*Meyer v. Sprint Spectrum*,
  45 Cal.4th 634 (2009) ..........................................................................22

*Montrose Chem. Corp. v. Sup.Ct.*,
  6 Cal.4th 287 (1993) ............................................................................24

*North East Ins. Co. v. Masonmar, Inc.*,
  2014 WL 1247604 (E.D. Cal. 2014)...................................................21, 22

*R.R. St. v. Transp. Ins. Co.*,
  656 F.3d 966 (9th Cir. 2011) ...............................................................12

*Strang v. Cabrol*,
  37 Cal.3d 720 (1984) ...........................................................................21

*Summit Technology Inc. v. High-Line Medical Instruments Co.*,
  922 F.Supp. 299 (C.D. Cal. 1996) .........................................................11

*Vitton Const. Co. v. Pacific Ins. Co.*
  110 Cal.App.4th 762 (2003) .................................................................16

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995)..............................................................................12

**Statutes**

28 U.S.C.
§ 1332................................................................................................................10
§ 2201................................................................................................................10
§ 2201(a)......................................................................................................12, 22
§ 2202................................................................................................................10

Cal. Bus. & Prof.Code
§ 25602(c)..........................................................................................................21
§ 25602(b)..........................................................................................................21

Cal. Code Civ. Proc.
§ 1060.................................................................................................................22

Cal. Gov. Code
§§ 835 *et seq.*.................................................................................................9, 11

Declaratory Judgment Act ...............................................................................12, 22

**Rules**

Fed. R. Civ. Proc.
Rule 12(b)(6)....................................................................................................6, 11

Local Rules
Rule 7-2(B)(3)......................................................................................................7

## I.     INTRODUCTION

Plaintiff First Mercury Insurance Company ("First Mercury") asserts for the first time, by and through its Complaint for Declaratory Relief filed with this court, that defendant Great Divide Insurance Company ("Great Divide") should share in the defense and indemnity of several of First Mercury's additional insureds, and furthermore seeks to compel Great Divide to participate in unspecified and unscheduled settlement negotiations related to an underlying and currently pending personal injury liability action, *Patel v. San Francisco Forty Niners; Elite Show Services, et al*., Santa Clara Superior Court Case No. 2015-1-CV-286138 filed on September 25, 2015 (the "Patel Action").  The Patel Action alleges a single undifferentiated claim of negligence against both the First Mercury's named insured, Elite Show Services, and the additional insureds, San Francisco Forty Niners entities, for bodily injury damages to the Patel plaintiffs allegedly caused by, in whole or in part, the negligent protection of Patel through the inadequate performance of security services at Levi's Stadium during an NFL game.[1]  First Mercury has not named as a party to this action its excess carrier, Endurance Risk Solutions Assurance Company, who provides nine million dollar limits above First Mercury's general liability primary policy limit.

Plaintiff cannot state a claim upon which relief can be based against Great Divide and its Complaint should be dismissed.   There is no maintainable dispute that First Mercury owes a primary coverage obligation to both its named insured and its additional insureds. As First Mercury has already acknowledged in accepting the additional insured tenders, First Mercury's additional insured endorsement extends broad coverage in favor of the Forty Niners and Santa Clara defendants in the Patel Action.  First Mercury's industry-standard ISO form additional insured endorsement extends coverage to the additional insureds where both the additional insureds and the named insured are alleged to have been negligent.  Contrary to First Mercury's conclusory allegations stated in its Complaint, *the additional insured coverage under the First Mercury policy applies even where an act or omission of the additional insured is alleged to be a contributing cause of the injury.*

---

[1]   First Mercury omitted the Complaint filed in the Patel Action as an attachment to its Complaint for Declaratory Relief.  A true and correct copy of the Patel Action Complaint is submitted with this Motion pursuant to Great Divide's concurrently filed Request for Judicial Notice.

1   There is nothing in the First Mercury endorsement that excludes or limits liability for the additional

2   insured's alleged contribution to Plaintiff Patel's injuries, and any attempt to re-write the plain terms

3   of First Mercury's additional insured coverage must fail.

4        By its own express endorsement entitled "**PRIMARY AND NON-CONTRIBUTING**

5   **INSURANCE**", the First Mercury policy states that it provides primary and non-contributing

6   insurance where required by a written contract.  Here, the Elite Show Services Agreement [Doc 1,

7   Exhibit C to Complaint, page 179-209, at page 203-204] specifically states at EXHIBIT C,

8   INSURANCE REQUIREMENTS, that all of the policies carried by Elite Show Services "shall be

9   (i) ***primary and non-contributing with respect to any policies carried by client***".  Accordingly, First

10  Mercury's policy indisputably provides primary coverage to its named and additional insureds, and

11  the First Mercury policy is primary and non-contributing with respect to any policies carried by the

12  Forty Niners and Santa Clara defendants, including the Great Divide policy at issue in this action.

13       Great Divide Insurance Company issued a general liability policy to DeBartolo Corporation

14  and other named insureds including San Francisco Forty-Niners Foundation; San Francisco Forty-

15  Niners Limited; Forty Niners Stadium LLC; Forty Niners Football Company LLC; Forty Niners SC

16  Stadium Company LLC; Forty Niners Stadium Management Company LLC; and San Francisco

17  Forty Niners II, LLC, policy number CNA 1001094-19, effective March 1, 2014 to March 1, 2015

18  with limits of $1M/per occurrence.  Under the standard ISO terms of the Great Divide policy (form

19  CG 00 01 1207), Great Divide's coverage is excess over: "[a]ny other primary insurance available to

20  [the named insureds] covering liability for damages arising out of the premises or operations, or the

21  products and completed operations, for which you have been added as an additional insured by

22  attachments of an endorsement."  (Great Divide Policy, Ex. B to Complaint [Doc 1] at p.124).

23  Great Divide's policy is therefore excess to the coverage provided by First Mercury, which by First

24  Mercury's own policy terms, is primary and non-contributing with the Great Divide policy.

25       As Plaintiff's Complaint fails to state a claim upon which relief can be based, it should be

26  dismissed pursuant to Federal Rule of Civil Procedure rule 12(b)(6). In the alternative, if for any

27  reason dismissal cannot be had, this coverage action should be stayed pending the determination of

28  unresolved factual issues in the Patel Action, including any negligence and liability of First

1   Mercury's named and additional insureds, or on the claims between Elite Show Services and the

2   Forty Niners defendants on the Forty Niners defendants' pending cross-complaints for defense and

3   indemnity filed against Elite Show Services in the Patel Action.

4   **II.    STATEMENT OF ISSUES TO BE DECIDED [N.D. L.R. 7-2(B)(3)]**

5        The following issues are raised by this Motion:

6        (A)    Whether Plaintiff's First Cause of Action for Declaratory Relief – Defense, sets forth

7   sufficient facts to state a claim against Great Divide upon which relief can be granted;

8        (B)    Whether Plaintiff's Second Cause of Action for Declaratory Relief – Settlement, sets

9   forth sufficient facts to state a claim against Great Divide upon which relief can be granted;

10       (C)    Whether Plaintiff's Third Cause of Action for Declaratory Relief – Indemnity, sets

11   forth sufficient facts to state a claim against Great Divide upon which relief can be granted; and

12       (D)    Whether, in the alternative, Plaintiff's declaratory relief action should be stayed so as

13   to allow for the resolution of overlapping issues in the pending Patel Action.

14   **III.   FACTUAL BACKGROUND**

15       **A.    The Ongoing Patel Personal Injury Action**

16            **1.    The Patel Action Complaint**

17       On or about September 25, 2015, plaintiffs Kiran Patel and Amish Patel filed a personal

18   injury complaint against the Levi's Stadium security provider Elite Show Services, and the alleged

19   Stadium owners/operators/managers, various San Francisco Forty Niners entities[2] as well as the City

20   of Santa Clara and the Santa Clara Stadium Authority.  The action was filed in Santa Clara Superior

21   Court, bearing case number 2015-1-CV-286138.  There is no pending trial date in the action.

22       The Patel Action plaintiffs allege that on October 5, 2014, plaintiffs attended a San Francisco

23   Forty Niners football game at Levi's Stadium.  Patel plaintiffs allege that while waiting in line at the

24   men's restroom, they were viciously attacked by game attendees Dario and Amador Rebollero,

25   resulting in serious and permanent injuries to plaintiffs. Patel plaintiffs allege that the attackers,

26   _____

27   [2]   The Forty Niners named defendants include San Francisco Forty Niners, Limited; San Francisco Forty Niners II,
     LLC; Forty Niners Football Company, LLC; San Francisco Forty Niners Foundation; Forty Niners Stadium LLC;
28   Forty Niners Stadium Management Company, LLC; and Forty Niners SC Stadium Company, LLC.

Dario and Amador Rebollero, "were visibly intoxicated and members of a well-known local gang, and wore and/or displayed gang clothing and/or indicia upon entry to and while patrons at the stadium." (Patel Complaint at ¶ 8, p. 3).

The Patel plaintiffs allege only two causes of action for: (1) negligence and (2) dangerous condition of public property.  With respect to negligence, the Patel plaintiffs allege against all defendants except for the City of Santa Clara and Santa Clara Stadium, that defendants had a duty to exercise ordinary care to ensure the safety of all persons who were lawfully on the premises of Levi's Stadium, including in the restrooms.  The Patel plaintiffs allege that defendants had actual and constructive notice that "before, during and after NFL games at said stadium, patrons consumed alcoholic beverages and often got intoxicated, excited, anxious and aggressive, thereby creating an unreasonable risk of injury to other patrons and a dangerous condition." Patel plaintiffs further allege that:

> defendants had a duty to reasonably screen patrons upon entry to said stadium and after their entry, and prohibit patrons from attending the game or eject patrons that exhibited signs of intoxication, violent tendencies and/or gang affiliations and activity, including but not limited to wearing and/or displaying gang clothing, colors and/or indicia; to surveil patrons for; to staff, inspect, patrol and surveil restrooms as a way of deterring violences; and to quickly respond to, and mitigate, violent behavior.  (Patel Complaint at ¶ 14, p.5).

Patel plaintiffs allege that the Forty Niner Defendants "negligently owned, leased, operated, managed, controlled, maintained, inspected and surveilled Levi's Stadium" and "carelessly and negligently provided security services at said stadium"; and negligently selected, hired, supervised, evaluated and retained unfit and inadequate services for Levi's Stadium.  Patel plaintiffs also allege that Defendant Elite Show Services Inc. "negligently provided security services to Levi's Stadium as to cause plaintiffs to suffer serious personal injuries". (Patel Complaint at ¶ 16-19, p. 5).

With respect to the second cause of action against the City of Santa Clara and Santa Clara Stadium, Patel plaintiffs allege that they had a "duty to reasonably screen patrons upon entry to said stadium, to surveil patrons for signs of violent tendencies and/or gang affiliations, to inspect, patrol and surveil restrooms as a way of deterring violence, and to quickly respond to, and mitigate, violent behavior." (Patel Complaint at ¶ 23, p. 6).  Patel plaintiffs further allege that City of Santa Clara and Santa Clara Stadium negligently "provided security services at Levi's Stadium on the date of the

subject NFL football game, as to create a dangerous condition of public property, pursuant to California Government Code sections 835 et seq." (Patel Complaint at ¶ 24, p. 7).

### 2.   The Cross-Complaints Against Elite Show and Rebollero

On November 19, 2015, Elite Show Services filed a cross-complaint against the Rebolleros for equitable indemnity, contribution, apportionment of fault and declaratory relief. Elite Show Services does not allege any claims against the Forty Niners defendants or the Santa Clara defendants.

On or about December 18, 2015, the Forty Niners Defendants filed a cross-complaint against defendant Elite Show Services Inc., alleging causes of action for (1) equitable indemnity, and (2) express contractual indemnity.  The Cross-Complaint was later amended to name Dario and Amador Rebollero as cross-defendants to the equitable indemnity claim.

With respect to their claim for express contractual indemnity, the Forty Niners Defendants allege that Elite Show Services Inc. and the Forty Niners Stadium Management Company LLC entered into an Agreement for Performance of Services on or about April 1, 2014.  The Agreement expressly requires Elite Show Services Inc. to defend and indemnify the Forty Niners defendants and the Santa Clara defendants.  The defense and indemnity obligation applies to:

> all losses, costs, suits, actions, claims, damages, amounts paid in settlement, liabilities, costs and expenses, including reasonable attorneys' fees (collectively, 'Losses'), resulting to, imposed upon, asserted against or incurred by any of them (including in any action between the parties) in connection with or arising out of (i) any breach by Contractor under this Agreement, (ii) any activity, inactivity, work or thing done or permitted by Contractor or its employees, agents or contractors in or upon the Stadium or Related Areas, including the performance of the Services, or (iii) any injury or damage to any Person or to the property of any Person caused by any action or omission of Contractor or its employees, agents or contractors. (Cross-complaint at ¶ 16, p. 4).

The Forty Niners Defendants further alleged:

> 19.     Pursuant to Section 22 of the Agreement, Cross-defendants must indemnify, defend, and hold harmless the Cross-Complainants for all costs, fees, expenses, and/or damages incurred by Cross-complainants in defending Plaintiff's Complaint, including attorneys' fees. (Cross-complaint at ¶ 19, pp. 5-6.)

There has been no ruling or adjudication in the Patel Action as to the Forty Niners Cross-Complaint.

9

First Mercury denied the Forty Niners and Santa Clara defendants' tender of defense and indemnity under the contractual liability clause in the Services Agreement, stating the tender was premature because there has been no determination as to the relative fault of the parties.

**B.     The First Mercury Complaint For Declaratory Relief**

On April 21, 2016, Plaintiff First Mercury filed a Complaint for Declaratory Relief against defendant Great Divide Insurance Company under 28 U.S.C. §§2201 and 2202 and asserting diversity jurisdiction under 28 U.S.C. § 1332.

Plaintiff First Mercury generally alleges it issued to Elite Show Services Inc. a primary commercial general liability policy, number SE-CGL-0000047473-01, effective September 21, 2014 to September 21, 2015 with limits of $1M/per occurrence and $2M/general aggregate.  (Complaint at ¶ 8, p. 3). First Mercury alleges that it is currently defending its named insured Elite Show Services Inc. and the additional insureds Forty Niners entities under the First Mercury policy and under reservation of rights.  (Complaint at ¶ 18-19, p. 6).

Plaintiff First Mercury alleges three causes of action against Great Divide for: (1) Declaratory Relief – duty to share with First Mercury defense costs in equal shares or other appropriate allocation; (2) Declaratory Relief – duty to participate in settlement discussions in good faith related to the Patel Action; and (3) Declaratory Relief – duty to share in indemnity with First Mercury beginning with the first dollar of indemnity in equal shares or other appropriate allocation.

Plaintiff First Mercury alleges the Plaintiffs in the Patel Action "claim that the negligent acts and omissions by Elite, the San Francisco Forty Niners Defendants, the City of Santa Clara and the Santa Clara Stadium Authority (collectively, the 'Underlying Defendants') are responsible for the injuries of the Underlying Plaintiffs." (Complaint at ¶ 16, p. 5-6).

First Mercury alleges the Complaint filed in the Patel Action "contains allegations of negligence and wrongdoing that only apply to the San Francisco Forty Niner Defendants". (Complaint, pp. 6-7). First Mercury further alleges that that the Patel Action "alleges injuries resulting from the service of alcohol" and "the First Mercury Policy specifically excludes liquor liability." (Complaint at ¶ 23, p. 7).  The First Mercury Complaint also alleges that the allegations against City of Santa Clara and Santa Clara Stadium Authority are not covered because "[o]nly

1    public entities may be liable" for Government Code section 835 et seq. violations, and "Elite is not a

2    public entity." (Complaint at ¶ 24, p. 8).

3        First Mercury alleges that defendant Great Divide Insurance Company issued a general

4    liability policy to various named insureds including San Francisco Forty-Niners Foundation; San

5    Francisco Forty-Niners Limited; Forty Niners Stadium LLC; Forty Niners Football Company LLC;

6    Forty Niners SC Stadium Company LLC; Forty Niners Stadium Management Company LLC; and

7    San Francisco Forty Niners II, LLC, policy number CNA 1001094-19, effective March 1, 2014 to

8    March 1, 2015 with limits of $1M/per occurrence and $2M/general aggregate.  The Great Divide

9    Policy also extends Liquor Liability with limits of $1M/per common cause and $1M/aggregate.

10   (Complaint at ¶ 9, p. 3).

11   **IV.    ARGUMENT**

12       **A.    Legal Standard**

13           **1.    Motion To Dismiss**

14       A motion to dismiss brought pursuant to FRCP 12(b)(6) is appropriate where there is either a

15   "'lack of cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal

16   theory.'" *Summit Technology Inc. v. High-Line Medical Instruments Co.*, 922 F.Supp. 299, 304

17   (C.D. Cal. 1996).   A plaintiff's obligation "to provide the 'grounds' of his 'entitlement to relief'

18   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

19   action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[F]actual allegations

20   must be enough to raise a right to relief above the speculative level." *Id.*

21       In ruling on a Rule 12(b)(6) motion,  a court must accept as true the allegations of the

22   complaint, however, "a court need not accept as true unreasonable inferences, unwarranted

23   deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit*

24   *Technology*, 922 F.Supp. at 304 (citations omitted).  A court may not consider any material beyond

25   the pleadings but a court may consider material which is properly submitted as part of the complaint

26   and matter which may be judicially noticed, without converting the motion into a motion for

27   summary judgment. *Id.*

28

2.      **Motion to Stay A Declaratory Relief Action**

The Declaratory Judgment Act provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201(a).  District courts have broad "discretion to dismiss a federal declaratory judgment action when 'the questions in controversy…can better be settled in' a pending state court proceeding." *R.R. St. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)).  Review of district court decisions about the propriety of hearing declaratory relief actions are reviewed for abuse of discretion.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995).

In deciding whether to grant a motion to stay or dismiss a declaratory relief action, a district court should consider the three factors set forth in the Supreme Court's *Brillhart* decision.  Under *Brillhart*, a district court should (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation.  The Ninth Circuit has provided additional considerations, including: whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; whether the use of a declaratory action will result in entanglement between the federal and state court systems; the convenience of the parties; and the availability of and relative convenience of other remedies.  *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998).

B.      **Plaintiff Fails To State A Claim Upon Which Declaratory Relief Can Be Granted**

1.      **First Mercury Owes Broad Additional Insured Coverage Under The Terms Of Its Additional Insured Endorsement And Coverage Under The Endorsement Is Not Limited By The Additional Insured's Alleged Fault**

Notably absent from First Mercury's Complaint is any recitation of the terms of its Additional Insured endorsement under which First Mercury has extended additional insured coverage to the Forty Niners and Santa Clara defendants. The First Mercury policy provides Additional Insured coverage under its policy pursuant to endorsement CG 20 10 07 04, entitled "ADDITIONAL INSURED – OWNERS LESSEES OR CONTRACTORS – SCHEDULED

12

PERSON OR ORGANIZATION".  (Complaint, Ex. A, p. 41).  The Endorsement provides:

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS –
SCHEDULED PERSON OR ORGANIZATION**
[*Form 20 10 07 04*]

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name of Additional Insured Person(s) or organization(s): | Location(s) of Covered Operations |
|---|---|
| Any person or organization as required by written contract or agreement | various |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

A.    Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.  Your acts or omissions; or

2.  The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B.    With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1.  All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional  insured(s) at the location of the covered operations has been completed; or

2.  That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

The Additional Insured Endorsement in the First Mercury policy is a standard form

endorsement published by the Insurance Services Office ("ISO"), an industry-supported organization

1    that develops standard insurance policies.  The endorsement uses the terms of the ISO's standard

2    form additional insured endorsement as revised in 2004.  The 2004 endorsement changed the

3    previous ISO additional insured endorsement which extended coverage "but only with respect to

4    liability arising out of [the named insured's] ongoing operations performed for that insured." The

5    2004 revision omitted the term "arising out of" and narrowed additional insured coverage by

6    replacing the phrase "arise out of" with "caused, in whole or in part by".  The phrase "your ongoing

7    operations" was replaced with "your acts or omissions".  The effect of this new language was to

8    require a stronger causal connection between the named insured's conduct and the additional

9    insured's coverage but did not purport to exclude coverage where the additional insured was also

10   alleged to have been at fault:

11         Under this new language, it is not sufficient for the additional insured to show that
12         injury or damage would not have occurred but for the fact that the named insured was
           performing operations. It will be necessary to show that some act or omission of the
           named insured actually caused the injury or damage. ***The named insured's act or***
13         ***omission need not, however, be the <u>only</u> cause; an act or omission of the additional***
           ***insured may be a contributing cause as well***. Malecki, Ligeros & Gibson, The
14         Additional Insured Book 180, 181 (International Risk Management Institute, Inc. 6th
           ed. 2011)(Emphasis Added).
15

16         The First Mercury policy language does not purport to allocate the additional insured defense

17   or indemnity obligation according to the fault of the additional insured.  Under the First Mercury

18   policy language, the additional insured's fault is irrelevant to coverage so long as the named insured

19   is alleged to be negligent at least in part. The Patel Action alleges a garden variety premises

20   liability/negligent protection theory of liability against the security services company (Elite Show

21   Services) and the owners/managers of the Stadium.  The plain terms of the First Mercury additional

22   insured endorsement require coverage be extended to the Forty Niners and Santa Clara defendants

23   where both the Forty Niners and Santa Clara defendants, as well as Elite Services, are alleged to

24   have been negligent resulting in the Patel plaintiff's injuries.  The named insured's act or omission

25   need not be the only cause of the plaintiff Patel's injuries; additional insured coverage under the First

26   Mercury endorsement is neither destroyed nor limited if the additional insured is also alleged to have

27   caused  Patel's injuries.

28         In *Acceptance Ins. v. Syufy* 69 Cal.App.4th 321 (1999), a California court of appeal rejected

14

1   an additional insured carrier's attempt to deny coverage based on the additional insured's fault, since

2   the policy language did not purport to allocate the defense according to fault.   In *Syufy,* an employee

3   of C&C Building Automation, which was performing work on one of Syufy's theaters, was injured

4   while leaving the jobsite in order to perform a personal errand. The employee was injured by a

5   defective hatch on the roof and sued Syufy.  The employee alleged that the injury was the result of

6   Syufy's failure to provide and maintain a safe closing mechanism on the hatch, and its failure to

7   warn him about the hatch's defective condition.

8          Syufy was named as an additional insured under the earlier ISO form on the contractor's

9   insurance policy that provided additional insured coverage, "but only with respect to liability arising

10  out of "your work' for that insured by or for you."  Syufy tendered the defense of the action to the

11  contractor's insurer, Acceptance Insurance. Acceptance denied the defense on the basis that the

12  liability was not "caused by" the contractor's acts. *Acceptance Ins*., 69 Cal.App.4th at 324-325.

13         Following the settlement of the underlying action, Acceptance Insurance filed suit against

14  Syufy and its insurer, Reliance. The suit sought declaratory relief concerning the parties' rights and

15  obligations in connection with the defense and indemnification of the employee's claim.  *Acceptance*

16  *Ins*. 69 Cal.App.4th at 325. The contractor's insurer argued that because the employee was injured

17  after he had stopped working and was leaving the jobsite through a roof hatch that was not being

18  repaired, the acts of the contractor did not cause the injury and there could be no coverage under the

19  additional insured endorsement.  *Acceptance Ins.,* 69 Cal.App.4th at 326.

20         The Court of Appeal rejected the contractor's insurer's claims. The Court of Appeal stated

21  that the "arising out of" language used in the endorsement established a broad standard in which a

22  minimal connection between the liability and the contractor's operations would trigger the

23  obligations of the contractor's insurer. *Acceptance Ins.* 69 Cal.App.4th at 328-329.  It adopted a

24  "common sense approach,'' and concluded that the employee's injury  "clearly arose out of'' the

25  work that he was performing on the roof of Syufy's building.  *Acceptance Ins.* 69 Cal.App.4th at

26  328.  According to the court, the relationship between the defective hatch and the job was more than

27  incidental, as the employee could not have performed the job without passing through the hatch.

28  That the defect was attributable to Syufy's negligence was irrelevant, ***since the policy language did***

15

*not purport to allocate the defense according to fault.*  *Acceptance Ins.,* 69 Cal.App.4th at 328-329; see also *Vitton Const. Co. v. Pacific Ins. Co.* 110 Cal.App.4th 762, 767-768 (2003).

In *Hartford Casualty Ins. Co. v. Travelers Indemnity Co.* 110 Cal.App.4th 710 (2003), the court refused to allow reimbursement to an additional insured carrier where the additional insured coverage offered by Harford did not allocate as to fault and was agreed to be primary.  *Hartford* involved a dispute concerning the contribution rights of liability insurers for a building tenant (Hartford) and its landlord (Travelers) arising from a wrongful death action. The tenant's lease required it to name the landlord as an additional insured under its liability insurance policy. In addition, the landlord's policy declared it was "excess" over other "valid and collectible Insurance ... if [the landlord was] added as an additional insured under any other policy.'"  *Hartford,* 110 Cal.App.4th at 714–715.  One of the tenant's employees fell from a third-story exterior deck and died. The insurers settled the underlying action and then filed competing declaratory relief actions against each other. The trial court found Hartford, the tenant's insurer, was obligated to pay all of the underlying lawsuit's defense and indemnity costs, declaring Travelers, the landlord's insurer, was an additional insured under the terms of both the tenant's lease and its liability insurance policy.

The Court of Appeal affirmed and rejected Hartford's claim for a pro rata reimbursement. The court found that Hartford was not entitled to contribution given that Hartford and Travelers' policies contained narrow exceptions to their operation as primary insurance which did not conflict with each other. *Hartford,* 110 Cal.App.4th at 726–727.

Here, there is no basis for First Mercury to disclaim additional insured coverage under its endorsement for any alleged liability on behalf of the additional insured's purported fault.  There are no exclusions in the Additional Insured endorsement that preclude coverage for the additional insured's alleged negligence.  This is not a sole negligence situation; there are no allegations in the Patel Action that the sole cause of plaintiff Patel's injury was the act of the additional insured. Rather, the allegations and undifferentiated negligence claims against the underlying Patel Action defendants including the Forty Niners and Santa Clara defendants, all have as a common nucleus the failure of Elite Services to properly provide security services at the Stadium, services which the Forty Niners defendants contractually relied upon Elite Services to provide.  The Elite Show

16

Services and Forty Niners security services Agreement dated April 1, 2014, sets forth Elite Show's

broad scope of security services for the Forty Niners, including maintaining "a sufficient number of

qualified personnel at the Stadium" (Complaint, Ex. C, Agreement at ¶ 7. Performance of Services,

p. 183) and to "hire, employ, train, supervise and discipline any and all persons necessary to provide

the Services" and to "use its best efforts to ensure that its employees continually practice the high

standards of safety, courtesy and service customarily followed in the conduct of a first-class

operation" and to "use its best efforts to select qualified, competent and trustworthy employees."

(Complaint, Ex. C, at Responsibility of Contractor, at ¶10, p.186).  Under the Agreement, Elite

Show Services explicitly and specifically agreed to be:

> responsible for the professional quality, technical accuracy, and coordination of the
> Services furnished by it under it this Agreement. Neither Stadium Manager's review,
> acceptance, nor payments for any of the Services required under this Agreement shall
> be construed to operate as a waiver of any rights under this Agreement or of any
> cause of action arising out of the performance of this Agreement and Contractor shall
> be and remain liable to Stadium Manager in accordance with Applicable Laws for all
> damages to Stadium Manager caused by Contractor failure to perform any of the
> Services furnished under this Agreement. (Complaint, Ex. C, at Responsibility of
> Contractor, at ¶10, p.186).

Elite Show Services also agreed to provide a Management Team to manage and operate

security services; to provide fixed post security duties; to provide "screening security officers…to

screen all persons entering the Stadium in accordance with Stadium policies" and to provide

"intervention security officers" who shall "intervene and resolve any security situation within the

Stadium, including conflicts and crowd control". (Complaint, Ex. C at Scope of Services, p.200).

The First Mercury additional insured endorsement's terms are simple and straightforward:

coverage applies where alleged liability of the additional insured was caused *in whole, or in part*, by

Elite Show Services' acts or omissions in the performance of Elite Show Services' ongoing

operations for these defendants at the Stadium. The Patel Action alleges that Plaintiff Patel was

injured at the Stadium, where Elite Show Services provided security services, and where the Forty

Niners and Santa Clara defendants had general supervision over Elite Services and the performance

of security at the Stadium, which it contracted with Elite Show Services to provide.  The allegations

demonstrate the claim of liability against the Forty Niners and Santa Clara defendants clearly satisfy

the "in whole or in part" language of the First Mercury additional insured endorsement.  The First

Mercury additional insured endorsement does not exclude coverage for the Forty Niners and Santa

Clara defendants' alleged acts of negligence which may have contributed to or caused Patel's

injuries.  Accordingly, First Mercury continues to owe broad additional insured coverage for the

Patel Action which is not limited by the additional insured's claimed contribution to and alleged

liability for the Patel plaintiff's injuries.

### 2.     The Additional Insured Coverage Is Primary To And Non-Contributing With The Great Divide Policy

The Additional Insured requirements of the Agreement between Elite Services and the Forty

Niners are clear and explicit.  Elite Show Services agreed to provide commercial general liability

insurance against liability for bodily injury in the amount of $1,000,000 per occurrence; to provide

professional liability insurance covering claims arising out of errors and omissions and/or

professional services provided by Elite Services with limits of $5,000,000 each occurrence including

contractual liability coverage; and to provide umbrella or excess liability insurance over general

liability with limits in the amount of $10,000,000.  (Complaint, Exhibit C, Insurance Requirements,

p.203-204).

Elite Show Services explicitly agreed that each of the policies it was required to procure and

maintain, including the commercial general liability insurance, shall be:

> (i) **primary and non-contributing** with respect to any policies carried by client;
> (ii) with respect to liability insurance only (except employer's liability), a provision
> including Stadium Manager, Santa Clara Stadium Authority, Forty Niners SC
> Stadium Company LLC Forty Niners Football Company LLC as Additional Insured;
> (iii) waiver by the insurer of any right to subrogate against Stadium Manager (iv) a
> severability of interest or endorsement; (v) a provision that the insurer will not cancel
> or change the coverage provided by such without giving the Stadium Manager thirty
> (30) days' prior written notice; and (vi) general liability be an "occurrence form"
> policy.  Any policy of insurance required to be carried by Contractor that names
> Stadium Manager as Additional Insured shall not be subject to a deductible or self-
> insured retention, **it being the intent of the parties that such insurance shall fully
> and completely insure such additional insured entities for all loss or expense**.
> (Complaint, Exhibit C, Insurance Requirements, p.204 [emphasis added]).

The Agreement requires that the additional insured coverage provided to the additional

insureds be primary.  The First Mercury policy gives effect to this agreement under the terms of its

policy endorsement, **PRIMARY AND NON-CONTRIBUTING INSURANCE**.  The First

Mercury policy endorsement provides in relevant part:

18

## PRIMARY AND NON-CONTRIBUTING INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

To the extent that this insurance is afforded to any additional insured under this policy, SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance is deleted in its entirety and replaced with the following condition:

4.      Other Insurance

If all of the insurance permits contribution by equal shares, we will follow this method unless the insured is required by written contract signed by both parties, to provide insurance that is primary and non-contributory, and the "insured contract" is executed prior to any loss. ***Where required by a written contract signed by both parties, this insurance will be primary and non-contributing when and to the extent as required by that contract.*** (Complaint, Ex. A, p. 72).

Here, the Elite Show Services Agreement specifically states at EXHIBIT C, INSURANCE REQUIREMENTS, that all of the policies carried by Elite Show Services "shall be (i) ***primary and non-contributing with respect to any policies carried by client***". (Complaint, Exhibit C to Complaint, pp. 203-204). Accordingly, First Mercury's policy indisputably provides primary coverage to its named and additional insureds, and the First Mercury policy is primary and non-contributing with respect to any policies carried by the Forty Niner and Santa Clara defendants, including the Great Divide policy at issue in this action.   Accordingly, Great Divide is not required to share at a primary level with First Mercury.  See, *Hartford v. Travelers* 110 Cal.App.4th 710 (2003).

Consistent with this result, the Great Divide policy by its express terms is excess where additional insured coverage is provided to the named insured.  The Great Divide policy provides in pertinent part:

**Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

4.      Other insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A and B of this Coverage Part, our obligations are limited as follows:

b.    Excess Insurance

(1) This insurance is excess over:

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement. (Complaint, Ex. B, Great Divide Policy, at p. 124).

Here, the Great Divide policy evinces the intent that where additional insured coverage is extended to its named insureds for a specific type of event or circumstances ("liability for damages arising out of the premises or operations, or the products and completed operations"), the Great Divide policy coverage where applicable is excess to the coverage provided by the additional insured carrier.  Accordingly, First Mercury continues to owe primary and non-contributing insurance to its additional insureds.  See, *Hartford v. Travelers,* 100 Cal.App.4th at 727.

### 3.    Liquor Liability Coverage Is Irrelevant And Inapplicable

Whether any exclusion under the First Mercury policy ultimately precludes coverage to its named insured and additional insureds does not alter the fundamental additional insured defense obligation under the First Mercury policy, nor does it alter the primacy of the additional insured coverage for the First Mercury additional insureds.  First Mercury also did not reserve its rights to disclaim additional insured coverage on this basis as set forth in its reservation of rights letter to the Forty Niners and Santa Clara defendants.  Nonetheless First Mercury asserts that its policy excludes liquor liability whereas the Great Divide policy extends such coverage.

Regardless of the purported effect of the Liquor Liability Exclusion on additional insured coverage, the Exclusion stated in the First Mercury policy does not exclude coverage for either the First Mercury named insureds or additional insureds.  The exclusion for liquor liability only applies where the <u>Named Insured</u> (Elite Show Services) is "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages."  The Exclusion provides:

2. Exclusions

This insurance does not apply to:
c.  Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

20

(1)     Causing or contributing to the intoxication of any person;

(2)     The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)     Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. (Complaint at Ex. A, First Mercury Policy at p. 19).

The First Mercury policy defines "you" as "the Named Insured shown in the Declarations, any other person or organization qualifying as a Named Insured under this policy."  (Complaint, Ex. A, p. 18).

Here, the First Mercury Named Insured is Elite Show Services.  The Forty Niners and Santa Clara defendants are not Named Insureds.  The First Mercury policy describes the services of its Named Insured, Elite Show Services, as "Security & Patrol Agency".  Accordingly, because Elite Show Services is not "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages", the exception to the Liquor Liability exclusion applies and therefore coverage for the named insured and for the additional insured is not precluded by this policy exclusion. *See, e.g., North East Ins. Co. v. Masonmar, Inc.*, 2014 WL 1247604 (E.D. Cal. 2014).

Further, liquor liability coverage is not implicated, regardless of whether it is excluded or not. There are no claims of any negligent provision of alcohol.[3]  The Patel Action Complaint alleges liability against Elite and the Forty Niners Defendants *for failing to detect the intoxication of the assailants* before they entered the Stadium and to eject the assailants while in the Stadium.  Patel

---

[3]     The Patel Action Complaint does not allege a claim for the negligent provision of alcohol against the Forty Niners and Santa Clara defendants directly, presumably because of the operation of California Business and Professions Code § 25602(b) which has been characterized as a "sweeping civil immunity." *Strang v. Cabrol*, 37 Cal.3d 720, 724 (1984); California Business and Professions Code § 25602(b)  ["No person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage shall be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage."] The intent behind this immunity was to abrogate developing case law and reinstate "prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person." Cal. Bus. & Prof.Code § 25602(c); *Cory v. Shierloh*, 29 Cal.3d 430, 435–36 (1981).

plaintiffs allege that the attackers, Dario and Amador Rebollero, "were visibly intoxicated and members of a well-known local gang, and wore and/or displayed gang clothing and/or indicia upon entry to and while patrons at the stadium." (Complaint at ¶ 8, p. 3).  The Patel Action Complaint further alleged: "defendants had a duty to reasonably screen patrons upon entry to said stadium and after their entry, and prohibit patrons from attending the game or eject patrons that exhibited signs of intoxication, violent tendencies and/or gang affiliations…" (Complaint at ¶ 14, p. 5).  These allegations do not give rise to liquor liability coverage which is extended only where an insured's legal liability for damages results from the sale, furnishing or service of alcoholic beverages.  *See, North East Ins. v. Masonmar,* 2014 WL 1247604 at *9 (liquor liability coverage extends to the "selling, serving, or furnishing of alcohol" and does not apply to claims for a failure to protect patrons from the tortious or criminal conduct of intoxicated others).

### 4.   This Court Does Not Have Jurisdiction Over Any Alternative Dispute Resolution Process In The Underlying Patel Action, Therefore Plaintiff's Second Cause Of Action Must Be Dismissed

In addition to the grounds previously stated, Plaintiff First Mercury's Second Cause of Action for Declaratory Relief – Settlement, should be dismissed because there is no actual controversy as to an unspecified, unscheduled alternative dispute procedure for the Patel Action and there is no jurisdiction to order such relief anyway.  The Declaratory Judgment Act requires that an actual controversy exist in an action for declaratory relief.  28. U.S.C. § 2201(a).  In the absence of an actual controversy, a district court is without justification to render declaratory relief.  *See, Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272 (1942); *J.N.S. Inc. v. Indiana*, 712 F.2d 303, 305 (7th Cir. 1983).

The standard for pleading a declaratory relief claim under California law is substantially similar.  The purpose of California Code of Civil Procedure §1060 is "to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation."  *Meyer v. Sprint Spectrum*, 45 Cal.4th 634, 647 (2009).

Here, First Mercury fails to state a claim upon which declaratory relief can be based and plaintiff fails to allege an actual controversy relating the parties' legal rights and duties.  The entirety of Plaintiff's request for declaratory relief – settlement, presumes an executed and enforceable order

22

to personally appear in the state superior court alternative dispute resolution proceeding in the Patel Action.  The request further presumes that this court would have jurisdiction over a state court proceeding to render an order to the parties in this case to appear for any mediation in the Patel Action case.  First Mercury does not allege any jurisdiction of this court sufficient to permit such an order.  Accordingly, the Second Cause of Action should be dismissed.

### C.  If The Declaratory Relief Action Cannot Be Dismissed, It Should Be Stayed Pending Resolution Of The Underlying Action

The First Mercury Complaint should be dismissed in its entirety as to defendant Great Divide.  There is no dispute that the First Mercury policy provides broad additional insured coverage which is primary and non-contributing to the Great Divide policy at issue.  Further, the covenant to procure insurance is independent of the insured's contract to indemnify.  *Chevron U.S.A. Inc. v. Bragg Crane & Rigging Co.* 180 Cal.App.3d 639, 644 (1986).

If dismissal cannot be had, this court should exercise its discretion to stay this coverage litigation pending the outcome of the underlying liability Patel Action.  Under the first *Brillhart* factor, federal jurisdiction exists in this matter solely due to diversity of citizenship.  *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942).  Thus, the only issue to be addressed is whether Plaintiff is entitled to declaratory relief with respect to insurance coverage, which is governed solely by state law.  This court's ruling on Plaintiff First Mercury's declaratory relief claims will necessarily and exclusively involve application of California insurance law, and because Plaintiff is in federal court based on diversity of citizenship, thus "the federal interest in this matter is at its nadir." *Md. Cas. Co. v. Witherspoon*, 993 F.Supp.2d 1178, 1183 (C.D. Cal.2014).  This factor favors a stay here. *Witherspoon*, 993 F.Supp.2d at 1184.

With respect to the third *Brillhart* factor, whether declaratory relief is appropriate may turn on issues that will be determined in the Patel Action.  To the extent the coverage issues here depend on the negligence and liability of First Mercury's named and additional insureds, or on the claims between Elite Show Services and the Forty Niners defendants on the Forty Niners defendants' pending cross-complaints for indemnity filed in the Patel Action, a stay will avoid prejudice to both the named and the additional insureds, and avoid the risk of any inconsistent factual determinations.

1  Accordingly, the third *Brillhart* factor would favor a stay under these circumstances.  *Brillhart*, 316

2  U.S. 491 at 495 (holding that the "overlap in issues weighs heavily against allowing Plaintiff's

3  declaratory judgment action to go forward, because it entangles the Court with the underlying state

4  court action, as well as results in duplicative litigation."); *see Md. Cas. Co.*, 993 F.Supp.2d at 1186

5  (purpose of issuing stay in declaratory relief action is "to eliminate risk of inconsistent factual

6  determinations that could prejudice the insured" and holding that a declaratory relief action "must be

7  stayed if…proceeding…could prejudice the insured in the trial in the underlying action."); *see also,*

8  *Montrose Chem. Corp. v. Sup.Ct.*, 6 Cal.4th 287 (1993) (under California law, stay is appropriate

9  "when the coverage question turns on facts to be litigated in the underlying action.").

10  **V.       CONCLUSION**

11          The Complaint for Declaratory Relief against defendant Great Divide should be dismissed.

12  First Mercury's Complaint against Great Divide seeks declaratory relief on issues for which no

13  actual controversy has been alleged and for which declaratory relief cannot be granted as a matter of

14  law.  In the event the dismissal cannot be had, the litigation should be stay pending resolution of the

15  underlying liability action.

16

17  DATED:  June 2, 2016                                    HINSHAW & CULBERTSON LLP

18

19                                                          By:  */s/ Maria S. Quintero*
                                                                 MARIA S. QUINTERO
20                                                               Attorneys for Defendant GREAT DIVIDE
                                                                 INSURANCE COMPANY
21  3505374v1   0986623

22

23

24

25

26

27

28