UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

FIRST MERCURY INSURANCE
COMPANY,

        Plaintiff,

    v.

GREAT DIVIDE INSURANCE
COMPANY,

        Defendant.

Case No. 16-CV-02114-LHK

**ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 36, 37

       Plaintiff First Mercury Insurance Company ("Plaintiff" or "First Mercury") brings this action against Defendant Great Divide Insurance Company ("Defendant" or "Great Divide"). Before the Court are Defendant's Motion for Summary Judgment, ECF No. 36 ("Great Divide Mot."), and Plaintiff's Motion for Summary Judgment, ECF No. 37 ("First Mercury Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Defendant's Motion for Summary Judgment, STRIKES Plaintiff's second cause of action for breach of the implied covenant of good faith and fair dealing, and DENIES as moot Plaintiff's request for attorney's fees under that cause of action. The Court otherwise GRANTS Plaintiff's Motion for Summary Judgment.

**I.       BACKGROUND**

United States District Court
Northern District of California

### A.    Factual Background

This case is a dispute between Plaintiff and Defendant regarding the insurers' respective duties to defend an underlying state court action ("underlying action" or "state court action") brought by Amish Patel and Kiran Patel (collectively, the "Underlying Plaintiffs") against Elite Show Services Inc. ("Elite"), the San Francisco Forty Niners Football Company, the San Francisco Forty Niners Limited, the San Francisco Forty Niners II LLC, the San Francisco Forty Niners Foundation, the Forty Niners Stadium LLC, the Forty Niners Stadium Management Company, LLC, the Forty Niners SC Stadium Company LLC (collectively, the "Forty Niner Defendants"), the City of Santa Clara, and the Santa Clara Stadium Authority (collectively, the "Santa Clara Defendants").  ECF No. 33, First Amended Complaint ("FAC") ¶¶ 16–19.  The Court refers to all of the defendants in the state court action collectively as the "Underlying Defendants."

### 1.    The Governing Contracts

First Mercury issued a primary commercial general liability policy to Elite effective September 21, 2014 to September 21, 2015.  ECF No. 37-4, Joint Stipulation of Undisputed Facts in Support of Cross-Motions for Summary Judgment ("Stipulated Facts") at 2; FAC Ex. A.  First Mercury's insurance policy with Elite additionally covers as an additional insured "[a]ny person or organization as required by written contract or agreement."  FAC Ex. A.  Additional insureds are covered under the First Mercury policy as follows:

> A.    Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
>
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

*Id.*

Great Divide issued a primary commercial general liability policy to the Forty Niner

Case No. 16-CV-02114-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

Defendants effective March 1, 2014 to March 1, 2015.  Stipulated Facts at 2; FAC Ex. B.  Great Divide's insurance policy with the Forty Niner Defendants additionally insures "persons or organizations that the insured agrees to indemnify by contract, any township, municipality, county, state policy, [sic] sheriff or other law enforcement department, and any manager or lessor of the insured's premises."  FAC Ex. B.  This provision causes Defendant's policy with the Forty Niners Defendants to also cover the Santa Clara Defendants.

Elite and the Forty Niners Stadium Management entered a service agreement on April 1, 2014.  Stipulated Facts at 3; FAC Ex. C ("Service Agreement").  In the Service Agreement, Elite agreed to provide security services at the Forty Niners football stadium in Santa Clara "subject to the reasonable prior approval of Stadium Manager [that is, the Forty Niners Stadium Management]."  Service Agreement ¶ 2.D.  The Service Agreement provided that "Stadium Manager shall have the sole discretion to determine appropriate staffing numbers for each role at each event."  Service Agreement at 39.

Additionally, the Service Agreement provided that Elite "shall indemnify and hold harmless the Authority [that is, the Santa Clara Defendants], Stadium Manager and the Additional Indemnitees . . . from and against all losses, costs, suits, actions, claims, damages, amounts paid in settlement, liabilities, costs and expenses, including reasonable attorneys' fees (collectively, "Losses"), resulting to, imposed upon, asserted against or incurred by any of them . . . in connection with or arising out of (i) any breach by [Elite] under this Agreement, (ii) any activity, inactivity, work or thing done or permitted by [Elite] or its employees, agents or contractors in or upon the Stadium or Related Areas, including the performance of the Services, or (iii) any injury or damage to any person or to the property of any Person caused by an action or omission of [Elite] or its employees, agents or contractors."  Service Agreement ¶ 12.

The Service Agreement further required Elite to carry commercial general liability insurance that, *inter alia*, (1) is "primary and non-contributing with respect to any policies carried by client" and (2) covers the Forty Niners Stadium Authority, Santa Clara Stadium Authority, Forty Niners SC Stadium Company LLC, and Forty Niners Football Company LLC as additional

1    insureds.  Service Agreement ¶ 13.

2                    **2.      The Underlying Action**

3           On October 5, 2014, the Underlying Plaintiffs attended a football game at the Forty Niners

4    football stadium in Santa Clara.  The Underlying Plaintiffs allegedly were injured "during a

5    purported physical altercation with Dario Rebollero and Amador Rebollero" while waiting in line

6    to use the restroom at the stadium.  ECF No. 15-3 ("Underlying Complaint").[1]  The Underlying

7    Plaintiffs filed a complaint against the Underlying Defendants in the Superior Court for the State

8    of California, County of Santa Clara on September 25, 2015, *Patel et al. v. San Francisco Forty*

9    *Niners Limited, et al.*  In the state court complaint, the Underlying Plaintiffs allege that the

10   negligent acts and omissions of the Underlying Defendants were responsible for the injuries to the

11   Underlying Plaintiffs.  *Id.* ¶ 16.

12          The complaint in the underlying action states two causes of action.  *See* Underlying

13   Complaint.  The first cause of action is a claim for negligence brought against the Forty Niner

14   Defendants and Elite.  Among the allegations in the claim are allegations that the Forty Niner

15   Defendants "negligently selected, hired, supervised, evaluated, and retained unfit and inadequate

16   security services" and that Elite "negligently provided security services" at the Forty Niners

17   stadium.  *Id.* ¶¶ 17-18.

18          The second cause of action is a claim for dangerous condition of public property brought

19   against the Santa Clara Defendants.  This claim includes allegations that the Santa Clara

20   Defendants created an unreasonable risk of harm through "[t]he lack of an adequate number of

21   urinal and toilet facilities in the tailgating portions of the Red, Blue and Green parking lots and

22   immediately inside the stadium at Gate A where crowds and long lines foreseeably created

23   frustration, anxiety and confrontation."  *Id.* ¶ 24.  The second cause of action also includes

24   allegations that the Santa Clara Defendants created a dangerous condition of public property by

25   _____

26   [1] In this Court's order on Defendant's motion to dismiss, the Court took judicial notice of the
     complaint in the underlying state court action.  Prior Order at 4 n.1.  Court filings from cases in
27   other courts are a proper subject of judicial notice.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
     442 F.3d 741, 746 n.6 (9th Cir. 2006).

28

4

*United States District Court*
*Northern District of California*

failing to "reasonably screen patrons upon entry to said stadium, to surveil patrons for signs of violent tendencies and/or gang affiliations, to inspect, patrol and surveil restrooms as a way of deterring violence, and to quickly respond to, and mitigate, violent behavior." *Id.* ¶ 23.

First Mercury accepted the defense of the lawsuit on behalf of all Underlying Defendants under a full reservation of rights. Stipulated Facts at 3; ECF No. 37-2, Declaration of Glenn Kirkness ("Kirkness Decl.") ¶ 6.

### B.   Procedural History

On April 21, 2016, First Mercury filed the instant lawsuit against Great Divide. *See* Compl. First Mercury sought a declaratory judgment that Great Divide (1) had a duty to defend in the state court action that requires Great Divide to share the defense costs with First Mercury, (2) had a duty to participate in settlement discussions in good faith with respect to the state court action, and (3) had a duty to share in indemnity with First Mercury in the state court action. *Id.* ¶¶ 26–41.

Great Divide filed a motion to dismiss or stay the instant action on June 2, 2016. ECF No. 15. First Mercury filed a response on June 16, 2016. ECF No. 17. Great Divide replied on June 23, 2016. ECF No. 18. On August 29, 2016, the Court denied Defendant's motion to dismiss as to Plaintiff's claim that Defendant must share the defense costs of the underlying action with First Mercury. ECF No. 26 ("Prior Order"). The Court granted without prejudice Defendant's motion to dismiss as to Plaintiff's claims that Defendant had a duty to participate in settlement discussions in the underlying action and to share indemnity because the claims were not ripe. *Id.* The Court also denied Defendant's motion for stay. *Id.*

On November 16, 2016, Plaintiff filed the FAC. ECF No. 33 (FAC). In the FAC, Plaintiff seeks (1) a declaration that Defendant has a duty to defend in the underlying action and must share defense costs with Plaintiff, and (2) a declaration that Defendant has breached the implied covenant of good faith and fair dealing by continuing to refuse to provide a defense after the Court's August 29, 2016 order.

On December 12, 2016, Plaintiff and Defendant filed cross-motions for summary

Case No. 16-CV-02114-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

judgment.  ECF No. 36 ("Great Divide Mot."); ECF No. 37 ("First Mercury Mot.").  On January

24, 2017, Plaintiff and Defendant each filed oppositions to the other's motion for summary

judgment.  ECF No. 43 ("First Mercury Opp'n"); ECF No. 44 ("Great Divide Opp'n").  The

parties did not file replies.

## II.     LEGAL STANDARD

### A.      Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

that there is "no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the

outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a

material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those

portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving

party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

reasonable trier of fact could find other than for the moving party.  However, on an issue for which

the opposing party will have the burden of proof at trial, the moving party need only point out

"that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the

pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

*Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine

issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party

has the burden of identifying, with reasonable particularity, the evidence that precludes summary

judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to

6

United States District Court
Northern District of California

1    judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

2        At the summary judgment stage, the court must view the evidence in the light most

3    favorable to the nonmoving party: if evidence produced by the moving party conflicts with

4    evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

5    forth by the nonmoving party with respect to that fact.  *See Leslie v. Grupo ICA*, 198 F.3d 1152,

6    1158 (9th Cir. 1999).

7        **B.      State Law in Diversity Cases**

8        "In determining the law of the state for purposes of diversity, a federal court is bound by

9    the decisions of the highest state court." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530

10   (9th Cir. 2011).  If the state's highest court has not decided an issue, it is the responsibility of the

11   federal courts sitting in diversity to predict "how the state high court would resolve it." *Id.*; *AirSea*

12   *Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (internal quotation marks

13   omitted).  In the absence of clear authority, the Court looks for guidance from decisions of the

14   state appellate courts and other persuasive authorities, such as decisions from courts in other

15   jurisdictions and treatises.  *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir.

16   1996).  "In assessing how a state's highest court would resolve a state law question[,] . . . federal

17   courts look to existing state law without predicting potential changes in that law." *Ticknor v.*

18   *Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001).

19   **III.    DISCUSSION**

20       The parties' cross-motions for summary judgment address three main issues: (1) Plaintiff's

21   first claim for a declaration that Defendant has a duty to defend in the underlying action, (2)

22   Plaintiff's second claim that Defendant has breached the implied covenant of good faith and fair

23   dealing by refusing to defend the underlying action, and (3) whether a stay is appropriate.

24   Defendant also raises evidentiary objections in its opposition to Plaintiff's motion for summary

25   judgment.  The Court addresses each issue in turn.

26       **A.      Plaintiff's First Claim: Defendant's Duty to Defend**

27       As in this Court's prior order on Defendant's motion to dismiss, the parties dispute

28

Case No. 16-CV-02114-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

whether Defendant owes a duty to defend the Forty Niner Defendants and the Santa Clara

Defendants in the underlying action.  Defendant moves for summary judgment on Plaintiff's duty

to defend claim on the grounds that (1) no such duty to defend ever arose, and (2) Plaintiff's

policy's "primary and non-contributing" language prevents Defendant from contributing to

defense costs in the state court action.  In Plaintiff's cross-motion for summary judgment, Plaintiff

moves for summary judgment on Plaintiff's duty to defend claim and also requests that the Court

determine that the defense costs should be split by equal shares.  The Court first addresses whether

Defendant has a duty to defend, then addresses whether the "primary and non-contributing

provision" prevents any payment from being made, and finally addresses the appropriate

apportionment of funds between the parties for defense costs.

### 1. Duty to Defend

Under California law, an insurer has a duty to defend its insureds in a lawsuit if "some of

the claims are at least potentially covered" by the insurance policy.  *Buss v. Superior Court*, 16

Cal. 4th 35, 47-48 (1997).  An "insurer's duty to defend is broader than its duty to indemnify" and

the duty to defend "arises as soon as tender is made."  *Id.* at 46.  Thus, for a duty to defend to

arise, at least some of the claims in the state court action must be potentially covered by

Defendant's insurance policy.

This Court's prior order on Defendant's motion to dismiss held that the claims in the state

court action were potentially covered.  This Court primarily relied on *Maryland Casualty Co. v.

Nationwide Mutual Insurance Co.*, 81 Cal. App. 4th 1082, 1089–90 (2000).  In *Maryland*, the

California Court of Appeal held that where an additional insured policy "applies only to the extent

that [the additional insured] is held liable for [the named insured's] acts or omissions arising out of

and in the course of operations performed for [the additional insured,]" that "additional insured

provision create[s] limited vicarious liability coverage for the additional insured."  *Maryland*, 81

Cal. App. 4th at 1089–90.  The California Court of Appeal concluded that where the underlying

action involved both "a potential [that the additional insured] would be vicariously liable for [the

named insured's] alleged negligence" and "a potential [that the additional insured] would be liable

Case No. 16-CV-02114-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

for its own negligence," the insurance providers for the named insured and the additional insured shared a duty to defend the underlying action. *Id.* at 1091.

The Court held in its prior order on Defendant's motion to dismiss that "*Maryland* governs the instant case." Prior Order at 9. Plaintiff's insurance policy covers the additional insureds, the Forty Niner Defendants and the Santa Clara Defendants, only for liability "caused, in whole or in part, by: 1. [Elite's] acts or omissions; or 2. The acts or omissions of those acting on [Elite's] behalf." FAC Ex. A. Likewise, the governing Service Agreement required Elite to indemnify the other Forty Niner Defendants and the Santa Clara Defendants for liabilities only "in connection with or arising out of (i) any breach by [Elite] under this Agreement, (ii) any activity, inactivity, work or thing done or permitted by [Elite] or its employees, agents or contractors in or upon the Stadium or Related Areas, including the performance of the Services, or (iii) any injury or damage to any person or to the property of any Person caused by an action or omission of [Elite] or its employees, agents or contractors." Service Agreement ¶ 22.

As in *Maryland*, the language in the governing contracts does not make Elite broadly responsible for all liabilities incurred by the Forty Niner Defendants and the Santa Clara Defendants, but instead makes Elite responsible only for those liabilities traceable at least in part to the acts or omissions of Elite or those acting on Elite's behalf. *See Maryland*, 81 Cal. App. 4th at 1089–90; *Am. States Ins. Co. v. Ins. Co. of the State of Penn.*, 173 F. Supp. 3d 982, 988 (E.D. Cal. 2016) (relying on *Maryland* to hold that "the 'only to the extent [the named insured] is held liable' language in Plaintiff's policy limits coverage solely to [the additional insured's] liability for [the named insured's] conduct").

Furthermore, as in *Maryland*, there is a potential that the underlying state court action in the instant case would lead to liability for the Forty Niner Defendants or the Santa Clara Defendants but not for Elite. In this Court's prior order on Defendant's motion to dismiss, this Court noted an example of allegations in the Underlying Complaint that solely pertain to the Santa Clara Defendants. Specifically, the second cause of action in the state court complaint alleges in part that the Santa Clara Defendants created an unreasonable risk of harm through "[t]he lack of an

Case No. 16-CV-02114-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

adequate number of urinal and toilet facilities in the tailgating portions of the Red, Blue and Green parking lots and immediately inside the stadium at Gate A where crowds and long lines foreseeably created frustration, anxiety and confrontation." Underlying Complaint ¶ 24. This allegation is not traceable in whole or in part to Elite, which was hired to perform only security services at the Forty Niners Stadium on the date of the incident at issue in the state court action.[2] Accordingly, Defendant—not Plaintiff—would be responsible for covering liability that arises solely out of the allegedly inadequate provision of toilet facilities. Moreover, Defendant overlooks the possibility that, even if Elite provided services at the site where the toilet facilities were located, the state court proceedings could indicate that none of the Underlying Plaintiffs' harm was traceable to Elite's actions. This potential for the Santa Clara Defendants to be responsible for liability in the state court action is sufficient to trigger Defendant's duty to defend under *Maryland*.

Defendant argues that there is no potential that Defendant will have a duty to indemnify because the second cause of action also contains allegations that the Santa Clara Defendants created a dangerous condition of public property by failing to "reasonably screen patrons upon entry to said stadium, to surveil patrons for signs of violent tendencies and/or gang affiliations, to inspect, patrol and surveil restrooms as a way of deterring violence, and to quickly respond to, and mitigate, violent behavior." *Id.* ¶ 23. Elite was in charge of providing some of the "screening

_____

[2] In Defendant's motion for summary judgment, Defendant argues that Elite was actually responsible for "maintain[ing] a sufficient number of qualified personnel" at the stadium and at the toilet facilities located in offsite parking areas. However, Defendant cites Elite's Service Agreement, which states that Elite "shall at all times maintain a sufficient number of qualified personnel at the Stadium and, *if applicable*, the Related Facilities (e.g., offsite parking areas)." FAC at 184 (emphasis added). However, Defendant provides no evidence that Elite's responsibilities extended to the offsite parking areas on the day of the incident at issue in the state court action. Plaintiff, in contrast, has filed a declaration of Gus Kontopuls, the Qualified Manager for Elite, who states that Elite "was not responsible for security in the parking lots of Levi's Stadium on or about the date of the incident" at issue in the state court action. ECF No. 43-2, Declaration of Gus Kontopuls ("Kontopuls Decl.") ¶ 2. Defendant has not filed any objections to the Declaration of Gus Kontopuls and has not attempted to supplement the record to oppose this factual contention. Accordingly, the only evidence in the record before the Court is that Elite did not provide services at the parking lots where the toilet facilities were located on the day of the incident in the state court action.

10

Case No. 16-CV-02114-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

services" and the security in the Forty Niners Stadium.  This provision indicates the possibility that Elite will be found to have caused the harm at issue in the second cause of action, which would thus trigger Plaintiff's additional insured vicarious liability policy.  However, just because Elite *potentially* caused the harm at issue does not eliminate the above-described *potential* that the Santa Clara Defendants will be held liable based only on the inadequate number of bathrooms, which would require Defendant, rather than Plaintiff, to indemnify the Santa Clara Defendants.

Therefore, because the claims in the state court action are potentially covered by Defendant, Defendant has a duty to defend in the state court action.  *See Maryland*, 81 Cal. App. 4th at 1089-90; *Buss*, 16 Cal. 4th at 47-48.

### 2.   "Primary and Non-Contributing" Provision.

Defendant argues that even if Defendant had a duty to defend in the state court action, the language of Plaintiff's policy requires Plaintiff to pay all of the defense costs for the state court action.  Plaintiff's policy contains the following provision:

> 4.   Other Insurance
> If all of the insurance permits contribution by equal shares, we will follow this method unless the insured is required by written contract signed by both parties, to provide insurance that is primary and non-contributory, and the "insured contract" is executed prior to any loss.  Where required by a written contract signed by both parties, this insurance will be primary and non-contributing when and to the extent as required by that contract.

FAC Ex. A at 73.  Defendant particularly focuses on the provision's statement that Plaintiff's policy is "primary and non-contributing when and to the extent as required by [a written contract signed by both parties]."[3]  *Id.*  The Service Agreement, the written contract at issue, states that the Plaintiff's policy is "primary and non-contributing with respect to any policies carried by [the additional insured]."  Service Agreement at 205.

As with Plaintiff's duty to defend, this Court's prior order on Defendant's motion to

---

[3] In general, a primary policy pays before any excess policies that also apply.  A non-contributing or non-contributory policy does not seek contributions from other policies covering the same risk. *Cf. Maryland*, 81 Cal. App. 4th at 1089 ("Equitable contribution, on the other hand, applies to apportion costs among insurers that share the same level of liability on the same risk as to the same insured.").

Case No. 16-CV-02114-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

dismiss and *Maryland* are dispositive.  In Defendant's prior motion to dismiss, Defendant argued that "all of the claims in the state court action allege harms caused at least in part by Elite's provision of security services at the Forty Niners Stadium, such that Elite's insurance policy with Plaintiff is primary and non-contributing as to Defendant."  Prior Order at 8.  In response, Plaintiff argued that "the claims in the state court action . . . are at least potentially covered by Defendant's policy with the Forty Niner Defendants but not by Plaintiff's policy with Elite."  *Id.* at 8–9.   As noted above, the Court held that *Maryland* governs the instant case and that Defendant has a duty to defend because liability could potentially be imposed on the Santa Clara Defendants that would be covered by Defendant's policy, but not Plaintiff's policy with Elite.

Based on this analysis, the Court rejected Defendant's contention that the "primary and non-contributing" language in Plaintiff's policy eliminates Defendant's duty to defend.  Indeed, the Court stated that "*Maryland* governs the instant case."  Prior Order at 9.  In *Maryland*, the additional insured policy at issue stated that all other policies were excess to the additional insured policy, which made the additional insured policy "primary" to other applicable policies. *Maryland*, 81 Cal. App. 4th at 1090–91.  Regardless, the *Maryland* court held that the additional insured policy was only primary to other policies that covered the vicarious liability of the additional insured and not for policies covering the additional insured's own liability.  *Id.*

Thus, under *Maryland*, the "primary and non-contributing" language does not apply to defense costs for allegations seeking recovery for the Forty Niner Defendants' and the Santa Clara Defendants' own liability rather than their vicarious liability for Elite's actions.  The state court action involves claims against at least the Santa Clara Defendants for their own, rather than Elite's, negligence.  Thus, under *Maryland*, Plaintiff's policy's "primary and non-contributing" language does not excuse Defendant from contributing to defense costs.

### 3.    Apportionment of Costs

Plaintiff's motion additionally requests a determination of whether Plaintiff and Defendant should split the defense costs in the underlying action by equal shares.  The Court notes that the *Maryland* court, after finding that the additional insured policy and the policy covering the

12

United States District Court
Northern District of California

1   additional insured's own liability were liable for defense costs, remanded the case to the trial court

2   "to allocate defense costs." *Id.* at 1093.  The *Maryland* court noted that "the proper allocation of

3   costs is within a trial court's broad discretion," and that "the ultimate goal of equitable

4   contribution must be 'to accomplish substantial justice by equalizing the common burden shared

5   by coinsurers, and to prevent one insurer from profiting at the expense of others." *Id.* at 1093–94.

6   In *Residence Mutual Insurance Co. v. Travelers Indemnity Co. of Connecticut*, 26 F.

7   Supp. 3d 965 (C.D. Cal. 2014), a district court in the Central District of California discussed and

8   applied on summary judgment the method that should be used to apportion indemnity and defense

9   costs between two liable insurers.  *Id.* at 977.  The *Residence* court noted specifically as to defense

10   costs that "a trial court has discretion to select a method of allocating litigation defense costs

11   among multiple insurers to produce the most equitable results based on the facts and

12   circumstances of the particular case."  *Id.* (quoting *Centennial Ins. Co. v. U.S. Fire Ins. Co.*, 88

13   Cal. App. 4th 105, 113 (2001)).  The *Residence* court identified a number of factors the California

14   Court of Appeal has determined a trial court should consider when determining allocation of costs,

15   such as: "the nature of the underlying claim, the relationship of the insured to the various insurers,

16   the particulars of each policy, and any other equitable considerations."  *Id.* (quoting *Axis Surplus*

17   *Ins. Co. v. Glencoe Ins. Ltd.*, 204 Cal. App. 4th 1214, 1231–32 (2012)).

18   Weighing these factors, the Court finds that an equal shares method of allocation applies.

19   First, the provisions of the policies indicate that the parties will contribute by equal shares.  As

20   noted above, the First Mercury policy contains the following provision:

21       4.      Other Insurance

    If all of the insurance permits contribution by equal shares, we will follow this

22       method unless the insured is required by written contract signed by both parties,

    to provide insurance that is primary and non-contributory, and the "insured

23       contract" is executed prior to any loss.  Where required by a written contract

    signed by both parties, this insurance will be primary and non-contributing when

24       and to the extent as required by that contract.

25   FAC Ex. A at 73.  Defendant's policy contains a "Method of Sharing" provision that states that

26   "[i]f all of the other insurance permits contribution by equal shares, we will follow this method

27

28                                      13

*United States District Court*
*Northern District of California*

also." FAC Ex. B at 12.

Here, Plaintiff's policy states that it will provide contribution by equal shares so long as a written contract does not require the policy to be "primary and non-contributory" as to the other policies. The Court held above that Plaintiff's policy is not primary and non-contributory as to Defendant's policy. Thus, Plaintiff's policy provides for contribution by equal shares. FAC Ex. A at 73. Similarly, Defendant's policy states that Defendant would provide contribution by equal shares if the other policies at issue also provide contribution by equal shares. FAC Ex. B at 12. Therefore, both policies provide for contribution by equal shares. *See Residence*, 26 F. Supp. 3d at 978 (finding equal shares apportionment appropriate where one policy specified an equal shares apportionment and the other policy was silent).

Moreover, the nature of the underlying claim and the relationships of the parties do not make equal sharing inequitable. The first cause of action is brought against the Forty Niner Defendants and Elite for Elite's actions as security provider at the Forty Niners Stadium. Underlying Complaint ¶¶ 17–18 (alleging Elite's negligence and the Forty Niner Defendants' negligence in hiring Elite). Therefore, because these allegations are based on Elite's actions, Plaintiff may be responsible for indemnification under the first cause of action. However, as discussed above, the second cause of action is brought against the Santa Clara Defendants for the Santa Clara Defendants' own actions in (1) failing to provide sufficient bathrooms, and (2) failing to properly screen and oversee individuals. To the extent these allegations are solely traceable to the Santa Clara Defendants' own actions, Defendant would have a duty to indemnify the Santa Clara Defendants. However, because Elite provided some screening services at the Forty Niners Stadium, Elite may have played some role in the Santa Clara Defendants' alleged failure to properly screen individuals, which would trigger Plaintiff's policy. Thus, Plaintiff or Defendant may be responsible for indemnity on the second cause of action. Accordingly, it would not be inequitable to apportion defense costs by equal shares where Plaintiff may have a duty of indemnity on the first cause of action, and Plaintiff or Defendant may have a duty of indemnity on the second cause of action.

Case No. 16-CV-02114-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Overall, when the Court considers the underlying claim, the relationship of the insureds to

2  the insurers, and the language of the parties' policies, the Court finds that contribution by equal

3  shares for defense costs is most appropriate.  Although Defendant argues that it would be

4  inappropriate to resolve the issue of the apportionment of defense costs on summary judgment, the

5  Court notes that Defendant points to no triable issue of material fact.  Here, the parties' *potential*

6  liability, and thus duty to pay defense costs, do not depend on the resolution of the state court

7  action or of any questions of fact raised by Defendant.  Moreover, the cases Defendant cites for

8  the principle that it "defies logic" to apportion "costs" on summary judgment are inapposite as

9  those cases involved apportionment of indemnification costs and not apportionment of defense

10  costs.  *See Ameripride Servs., Inc. v. Valley Indus. Servs., Inc.*, 2016 WL 3753267, at *10 (E.D.

11  Cal. July 13, 2016) (finding that evidence at trial in underlying action could alter the Court's

12  determination).  Accordingly, the Court finds that equal sharing of defense costs is appropriate.

13    Therefore, with respect to Plaintiff's claim seeking a declaration that Defendant owes a

14  duty to defend, the Court GRANTS Plaintiff's motion for summary judgment and DENIES

15  Defendant's motion for summary judgment.  The Court also GRANTS Plaintiff's motion for

16  summary judgment to the extent it seeks an equal allocation of defense costs between Plaintiff and

17  Defendant.

18    **B.    Bad Faith Failure to Defend**

19    In Plaintiff's FAC, Plaintiff seeks a declaration that Defendant breached the implied

20  covenant of good faith and fair dealing for failing to contribute to the defense in the state court

21  action after this Court found a duty to defend in its prior order on Defendant's motion to dismiss.

22  In their respective motions, Plaintiff and Defendant both move for summary judgment on

23  Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

24    As an initial matter, this cause of action is procedurally improper.  The original complaint

25  contained three causes of action.  First, Plaintiff sought a declaration that Defendant has a duty to

26  defend the state court action.  ECF No. 1.  Second, Plaintiff sought a declaration that Defendant

27  breached the implied covenant of good faith and fair dealing because Defendant refused to

28    15

United States District Court
Northern District of California

1   participate in settlement discussions.  *Id.*  Third, Plaintiff sought a declaration that Defendant

2   owed a duty to indemnify Plaintiff.  *Id.*  On August 29, 2016, the Court denied Defendant's

3   motion to dismiss as to Plaintiff's first cause of action, but granted a motion to dismiss the second

4   and third causes of action without prejudice because the issues of a good faith duty to settle and

5   indemnification were not yet ripe.  Prior Order at 11.

6        In the FAC, filed on November 16, 2016, Plaintiff added a second cause of action for

7   breach of the implied covenant of good faith and fair dealing, not based on a theory of good faith

8   duty to settle, but based on Defendant's perceived failure to comply with the Court's order on

9   Defendant's first motion to dismiss.  FAC ¶ 43–47.  This is an entirely different cause of action

10  from the good faith duty to settle cause of action that the Court dismissed without prejudice.

11       Under Federal Rule of Civil Procedure 15, a Plaintiff may only amend the pleadings as a

12  matter of course within either (1) 21 days of serving the pleading, or (2) 21 days after service of a

13  responsive pleading if a responsive pleading is required.  Fed. R. Civ. P. 15(a)(1).  After that time

14  has passed, the Plaintiff may only amend the pleadings "with the opposing party's written consent

15  or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Moreover, if a deadline has been set by the Court

16  for filing a motion to amend pleadings or add parties, Plaintiff must show "good cause" why the

17  schedule should be amended.  Fed. R. Civ. P. 16(b)(4).

18       Here, the time to file a motion to amend pleadings or add parties passed on October 7,

19  2016.  ECF No. 25 (Case Management Order).  Plaintiff has provided no indication that the cause

20  of action was added pursuant to Defendant's consent, and Plaintiff has not sought leave of court or

21  attempted to satisfy the good cause standard found in Federal Rule of Civil Procedure 16(b)(4).

22  Therefore, the Court STRIKES Plaintiff's second cause of action for breach of the implied

23  covenant of good faith and fair dealing from the FAC.

24       However, even if the Court were to address Plaintiff's claim for breach of the implied

25  covenant of good faith and fair dealing, the claim would fail.  Plaintiff brings this cause of action

26  under an "equitable subrogation" theory.  "Equitable subrogation allows an insurer that paid

27  coverage or defense costs to be placed in the insured's position to pursue a full recovery from

28

16

Case No. 16-CV-02114-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

another insurer who was primarily responsible for the loss." *Maryland*, 81 Cal. App. 4th at 1088–

89. To succeed on an equitable subrogation theory, Plaintiff must satisfy the following elements:

> (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the [plaintiff] insurer was not primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Transcon. Ins. Co. v. Ins. Co. of State of Pennsylvania*, 148 Cal. App. 4th 1296, 1305 (2007)

(quoting *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1292 (1998)).

The second element of the above test requires that the "claimed loss [be] one for which [Plaintiff]

was not primarily liable." *Id.* "The aim of equitable subrogation is to place the burden for a loss

on the party ultimately liable or responsible for it and by whom it should have been discharged,

and to relieve entirely the insurer or surety who indemnified the loss and who in equity was not

primarily liable therefor." *Fireman's Fund*, 65 Cal. App. 4th at 1296; *see also Maryland*, 81 Cal.

App. 4th at 1090 ("[T]he equitable subrogation doctrine is inapplicable because each insurer

remains primarily responsible for the defense.").

In *Transcontinental Insurance Company*, the California Court of Appeal discussed the

circumstances where an equitable subrogation cause of action can be brought for defense costs

between two insurance companies that cover different risks. *Id.* In that case, a primary insurer

accepted tender of the defense of a third party suit in which certain causes of action were

potentially covered by the primary insurer, but other causes of action were not even potentially

covered by the primary insurer. *Id.* Instead, the latter causes of action were only potentially

covered by the insured's excess insurer. *Id.* The *Transcontinental* court held that the primary

insurer could sue the excess insurer under an equitable subrogation theory "'for defense costs that

17

1   can be allocated *solely* to the claims that are not even potentially covered'" by the primary insurer.

2   *Id.* at 1307 (quoting *Buss v. Superior Court*, 16 Cal. 4th 35, 57 (1997)).

3          Here, unlike the plaintiff in *Transcontinental*, there is no allegation, let alone any evidence,

4   that Plaintiff was not "primarily liable"[4] for defense costs as to both causes of action in the state

5   court action.  Indeed, Plaintiff has never asserted that it has no duty to defend the entire state court

6   action.  The first cause of action against Elite and the Forty Niner Defendants and the second

7   cause of action against the Santa Clara defendants both contain some allegations concerning a

8   failure to adequately screen patrons and to oversee patrons at the Forty Niners Stadium.

9   Underlying Complaint ¶¶ 11, 23.  These responsibilities show that Elite potentially caused part of

10  the harm to Underlying Plaintiffs under both causes of action as the security service hired for the

11  Forty Niners Stadium.  Service Agreement ¶ 2.D.[5]  Therefore, because Plaintiff has a duty to

12  defend as to all of the potentially covered causes of action, Plaintiff is "primarily liable" for the

13  defense costs at issue and fails to satisfy the second element of a cause of action for equitable

14  subrogation.  *See Maryland*, 81 Cal. App. 4th at 1090 ("[T]he equitable subrogation doctrine is

15  inapplicable because each insurer remains primarily responsible for the defense.").  Accordingly,

16  even if Plaintiff's claim for breach of the implied covenant of good faith and fair dealing was

17  procedurally proper, the Court would grant summary judgment against Plaintiff on this cause of

18  action because it fails as a matter of law.

19         Additionally, because Plaintiff's cause of action for breach of the implied covenant of good

20  faith and fair dealing fails, the Court DENIES as moot Plaintiff's request for attorney's fees under

21  this cause of action.

22         **D.      Renewed Motion for Stay**

23

24  [4] The Court notes that the meaning of "primarily liable" here solely refers to the fact that Plaintiff has a duty to defend as to both causes of action in the state court action and thus is responsible for

25  those defense costs.  This differs from the analysis of the "primary and non-contributory" language in Plaintiff's policy, above, which concerned whether the "primary and non-

26  contributory" language precluded contribution to defense costs from all other policies that may be liable for those defense costs.  That holding did not excuse Plaintiff's duty to defend.

27  [5] As discussed above, this potential liability for Plaintiff does not eliminate the potential that Defendant is liable on the second cause of action.

28

18

United States District Court
Northern District of California

1    In a single footnote, Defendant "renews [the] stay request" Defendant made in connection

2    with its prior motion to dismiss.  Great Divide Mot. at 2 n.6.  District courts have broad

3    "discretion to dismiss [or stay] a federal declaratory judgment action when 'the questions in

4    controversy . . . can better be settled in' a pending state court proceeding."  *R.R. St. & Co. Inc. v.*

5    *Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Brillhart v. Excess Ins. Co. of Am.*,

6    316 U.S. 491, 495 (1942)).  To make this determination, the Court applies the three *Brillhart*

7    factors: "a district court should (1) avoid needless determination of state law issues; (2) discourage

8    litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative

9    litigation."[6]  *Id.*  At bottom, "the district court must balance concerns of judicial administration,

10   comity, and fairness to the litigants."  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th

11   Cir. 2005) (internal quotation marks omitted).

12   In this Court's prior order in the instant case, the Court found that the three *Brillhart*

13   factors weighed against a stay.  First, this case did not involve a needless determination of state

14   law issues because "the declaratory judgment claim requires application of settled principles of

15   state law and 'the issues concerning insurance coverage are not particularly complex or novel.'"

16   Prior Order at 13 (quoting *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir.

17   1990)).  Second, this case did not arise from forum shopping because "[t]here [was] no indication

18   in the instant case that Plaintiff seeks to avoid any adverse ruling in state court."  *Id.*  Third, this

19   case was not duplicative of issues in state court because "Defendant's duty to defend is triggered

20   not by the determination of whether Defendant is in fact liable in whole or in part for any resulting

21   judgment or settlement in the state court action, but only by whether the state court action could

22   potentially result in at least partial liability for Defendant."  *Id.* at 13–14.

23

24   [6] In addition, the Ninth Circuit has suggested other considerations that may weigh in favor of a
     district court's decision to dismiss or stay an action for declaratory relief: whether the declaratory

25   action will settle all aspects of the controversy; whether the declaratory action will serve a useful
     purpose in clarifying the legal relations at issue; whether the declaratory action is being sought

26   merely for the purposes of procedural fencing or to obtain a res judicata advantage; whether the
     use of a declaratory action will result in entanglement between the federal and state court systems;

27   the convenience of the parties; and the availability of and relative convenience of other remedies.
     *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir.1998) (en banc)

28
     Case No. 16-CV-02114-LHK
     ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

In Defendant's renewed request for a stay, Defendant argues that a stay is warranted because "the coverage issue here is now logically related to issues of consequence in the underlying Patel action." *Id.* Defendant bases its argument on the fact that the Service Agreement contains an "express indemnity" provision in which Elite agreed to indemnify the Forty Niner Defendants and the Santa Clara Defendants "for liability arising from the acts or omissions of Elite." *Id.*; *see also* FAC ¶ 28. According to Defendant, in the state court action, the Forty Niner Defendants and the Santa Clara Defendants have filed cross-claims against Elite for express indemnity. The express indemnity provision states that Elite will indemnify the Forty Niner Defendants and the Santa Clara Defendants for "any activity, inactivity, work or thing done or permitted by [Elite] or its employees, agents or contractors." Service Agreement ¶ 12. Therefore, if those cross-claims are completely successful, it will show that all of their liability "ar[ose] from the acts or omissions of Elite," which would mean that Plaintiff's additional insured policy, rather than Defendant's policy, would provide coverage. FAC ¶ 28.

However, the existence of these cross-claims does not alter the *Brillhart* determination in this Court's prior order. While Defendant does not specify on which *Brillhart* factor Defendant relies, Defendant's argument that "the coverage issue here is now logically related to issues of consequence in the underlying Patel action" seemingly bases the stay request on the third *Brillhart* factor, whether the "declaratory judgment is duplicative of the issues being litigated in the underlying liability action." *Hanover Ins. Co. v. Paul M. Zagaris, Inc.*, 2016 WL 3443387, at *4 (N.D. Cal. June 23, 2016).

However, Defendant is incorrect. Defendant has a duty to defend so long as there is a *potential* that Defendant will have a duty to indemnify. *See Buss*, 16 Cal. 4th at 47 (holding that an insurer has a duty to defend its insureds in a lawsuit if "some of the claims are at least potentially covered" by the insurance policy). A determination in the state court action that the liability at issue in this case arose from the acts or omissions of Elite would determine whether Defendant has a duty to *indemnify* the Forty Niner Defendants and the Santa Clara Defendants. However, whether or not Defendant eventually is found to have duty to indemnify, there is

20

currently a *potential* that Defendant will have such a duty to indemnify, which triggers Defendant's duty to defend under *Buss*.  Thus, the existence of the cross-claims in the state court action does not alter the result in the instant case.

Therefore, Defendant's new argument does not alter the Court's prior determination that the *Brillhart* factors weigh against a stay.  Accordingly, the Court DENIES Defendant's renewed request for a stay.

### E.   Evidentiary Objections

In Defendant's opposition to Plaintiff's motion for summary judgment, Defendant makes a number of evidentiary objections. The Court addresses each in turn.

First, Defendant requests that the Court strike paragraphs 2 through 5 of the declaration of Raymond Tittman ("Tittman Decl."), ECF No. 37-1, on the bases that they are (a) inappropriate statements about mediation, (b) the truth of the statements is disputed, and (c) the statements are not relevant.  In paragraphs 2 to 5 of the Tittman Declaration, Tittman states that after the Court's prior order on Defendant's motion to dismiss that he, counsel for Plaintiff, proposed entering a "final, appealable judgment based on the Court's Order" that could then be appealed, and that Defendant rejected this offer.  Tittman Decl. ¶¶ 2–5.  The Court addresses each of Defendant's grounds for objection in turn.

(a) As to Defendant's argument that the statements are inappropriate statements about mediation, Defendant provides no basis for this objection.  Although pursuant to ADR Civil Local Rule 6-12(a), statements made in the course of mediation are confidential, the statements in the Tittman Declaration concern proposals made outside the context of mediation, not during the mediation itself.

(b) Defendant's objection that the statements are not true is not a basis to strike those statements.  Indeed, on a motion for summary judgment, the entire point is for both sides to present evidence of facts whose truth the other party may dispute.

(c) Defendant's objection as to relevance also fails.  Relevant evidence means evidence having "any tendency" to make the existence of any "fact [that] is of consequence" to the

United States District Court
Northern District of California

determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.  Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is based on Defendant's continued refusal to contribute to the defense of the underlying action and the increased costs Plaintiff has incurred as a result.  The statement that Defendant refused to stipulate to a judgment is relevant to show that Defendant increased Plaintiff's costs due to Defendant's continued refusal to contribute to the defense in the state court action. Accordingly, the Court OVERRULES Defendant's objection to paragraphs 2 to 5 of the Tittman Declaration.

Second, Defendant objects to paragraph 6 of the Tittman Declaration, which contains a statement of the fees and costs spent in prosecuting the instant case, as not being relevant.  As discussed above, the fees and costs from this action are relevant because they show the potential damages for Defendant's alleged breach of the implied covenant of good faith and fair dealing due to Defendant's failure to contribute to the defense in the underlying action.  Accordingly, the Court OVERRULES Defendant's objection to paragraph 6 of the Tittman Declaration.

Third, Defendant objects to paragraphs 8 and 10 of the declaration of Glenn Kirkness, *see* Kirkness Decl. ¶¶ 8, 10, on the bases that the paragraphs are argumentative, contain legal conclusions, and are irrelevant.  Under Civil Local Rule 7-5(b), "[a]n affidavit or declaration[] may contain only facts . . . and must avoid conclusions and argument."  Paragraph 8 of the Kirkness Declaration indicates that Kirkness sent a letter to Defendant that demanded that Defendant participate in the "defense of the underlying action," which Kirkness said was "consistent with the Court's Order."  Kirkness Decl. ¶ 8.  The statement that participation in the defense in the underlying action is "consistent with the Court's Order" is a legal conclusion. Therefore, the Court SUSTAINS Defendant's objection solely as to that phrase.  The rest of paragraph 8 contains only a statement that Kirkness sent a letter to Defendant that demanded that Defendant participate in the defense of the underlying action, which, as discussed above, is relevant to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. Accordingly, the Court OVERRULES Defendant's objection to the remainder of paragraph 8.

Case No. 16-CV-02114-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

Paragraph 10 of the Kirkness Declaration states "Despite the Court's Order, Great Divide has not contributed to the defense of the Underlying Action of any of the Underlying Defendants or reimburse[d] First Mercury for its defense costs.  I have received no communication or explanation from Great Divide as to why it is not complying with the Court's August 29 Order."  Kirkness Decl. ¶ 10.  The Court agrees with Defendant that this paragraph is argumentative and contains legal conclusions concerning this Court's prior order.  Accordingly, the Court SUSTAINS Defendant's objection.

Finally, Defendant objects to Plaintiff's request for judicial notice and its accompanying exhibits, ECF No. 37-3, on the ground that the exhibits were not properly authenticated by declaration or affidavit.  Pursuant to Civil Local Rule 7-5(a), "[f]actual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record."  Moreover, under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Here, Plaintiff's request for judicial notice is not supported by an affidavit or declaration.  Therefore, the Court SUSTAINS Defendant's objection to the request for judicial notice and its accompanying exhibits.

## IV.     CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment, STRIKES Plaintiff's second cause of action for breach of the implied covenant of good faith and fair dealing, and DENIES as moot Plaintiff's request for attorney's fees under that cause of action.  The Court otherwise GRANTS Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: March 14, 2017

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

23

United States District Court
Northern District of California